## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

KEVIN WILLIAMS and PAT WILLIAMS,

                              Plaintiffs,

        vs.

THE NATIONAL FOOTBALL LEAGUE,
JOHN LOMBARDO, M.D., BRIAN
FINKLE, M.D., and ADOLPHO BIRCH,

Defendants.

## NOTICE OF REMOVAL OF CIVIL ACTION

TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

        PLEASE TAKE NOTICE that defendants The National Football League (the

"NFL"), John Lombardo, M.D., and Adolpho Birch (collectively, "defendants") hereby

notice the removal of this civil action to the United States District Court for the District

of Minnesota from State of Minnesota District Court, County of Hennepin, Fourth

Judicial District, pursuant to 28 U.S.C. §§ 1441 and 1446.  Removal is made pursuant to

28 U.S.C. § 1331, on the basis of federal question jurisdiction.  The grounds for removal

are more particularly stated as follows:

### BACKGROUND

        1.        This Notice of Removal is being filed within 30 days of receipt of an order

or amended pleading "from which it may first be ascertained that the case is one which . .

. has become removable."  28 U.S.C. § 1446(b).  This case is removable in light of

changed circumstances, including amendments to the governing complaint and a state

district court ruling recognizing those amendments for the first time.  In addition, the ruling makes clear that plaintiffs' remaining claims cannot be resolved without interpretation of the NFL Collective Bargaining Agreement and its incorporated policies and provisions.

2.      Plaintiffs Kevin and Pat Williams ("plaintiffs") are professional football players employed by the Minnesota Vikings ("Vikings"), one of the 32 member clubs of the National Football League ("NFL").  All NFL players, including plaintiffs, are subject to the NFL Policy on Anabolic Steroids and Related Substances (the "Policy").  The collectively-bargained Policy is incorporated in the Collective Bargaining Agreement ("CBA") negotiated by the NFL Players Association ("NFLPA"), the sole and exclusive collective bargaining representative of all NFL players, including plaintiffs, and the NFL Management Council ("NFLMC"), the multi-employer bargaining representative of all NFL member clubs, including the Vikings.

3.      On December 3, 2008, plaintiffs filed a verified complaint ("Complaint") in the District Court of the Fourth Judicial District of the State of Minnesota for the County of Hennepin.

4.      In their original Complaint, plaintiffs brought claims grounded in Minnesota tort law, seeking to enjoin an arbitration award affirming their mandatory four-game suspensions for violating the Policy.  Plaintiffs alleged that defendants acted negligently and fraudulently in failing to warn them about the specific weight-loss supplement that allegedly caused them to test positive for a substance banned by the collectively-bargained Policy.

5.     On December 4, 2008, defendants removed the original Complaint to this Court on the ground of complete preemption under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  The case was consolidated with a case brought by the NFLPA under section 301 of the LMRA, on behalf of plaintiffs and three other NFL players, that sought to vacate the arbitration awards affirming the players' suspensions.

6.     On January 2, 2009, plaintiffs filed an amended complaint ("First Amended Complaint") in federal district court and added claims under two Minnesota statutes, the Drug and Alcohol Testing in the Workplace Act ("DATWA") and the Lawful Consumable Products Act ("LCPA").  The First Amended Complaint alleged that defendants had violated plaintiffs' "substantive and procedural rights" under DATWA, but did not specify the basis for their allegation or identify the sections of DATWA implicated by their claims.

7.     On May 22, 2009, this Court granted defendants summary judgment on all claims alleged in plaintiffs' original Complaint, concluding that they were completely preempted by section 301 of the LMRA.  *Nat'l Football League Players Ass'n v. Nat'l Football League*, 654 F. Supp. 2d 960, 967 (D. Minn. 2009) (holding that "[t]here can be no question that the Williamses' common-law claims depend on an analysis of the terms of the Policy [,] are inextricably intertwined with the Policy [, and] are therefore preempted").  The Court held that plaintiffs' DATWA and LCPA claims did not depend upon an analysis of the terms of the Policy, declined to exercise supplemental jurisdiction over those claims, and remanded them to state court.  *Id.* at 972-73.  The Court noted that

3

those claims were "not fully developed" and that it was "more appropriate for a state court to make the sorts of decisions about the applicability of those statutes to the facts at hand." *Id.* at 973.

8. The U.S. Court of Appeals for the Eighth Circuit affirmed this Court's opinion in its entirety. It noted that "it is unclear [from the Amended Complaint] which specific violations of DATWA that the Players are alleging, other than the failure to use certified laboratories." *Williams v. Nat'l Football League*, 582 F.3d 863, 875 (8th Cir. 2009). The Court further concluded that determining whether the NFL employs plaintiffs within the meaning of DATWA did not require an interpretation of the Collective Bargaining Agreement, the collectively-bargained Policy, or the NFL Player Contract. It found the relevant provisions of the CBA and Policy were so clear that the Vikings, and not the NFL, was plaintiffs' employer, that they "require [no] interpretation, only mere consultation." *Id.* at 877.

9. On June 5, 2009, following remand of the DATWA and LCPA claims, plaintiffs attempted to file a Second Amended Complaint in Minnesota state court. The Second Amended Complaint, which was not accompanied by the required motion for leave to file, set forth specific allegations under DATWA and the LCPA and, for the first time, alleged multiple violations of the Policy. Second Am. Compl., ¶¶ 7, 27, 52, Ex. A. In particular, plaintiffs claimed that defendants "wantonly ignored" "the basic tenets of the [Policy]." *Id.*, ¶ 7. Plaintiffs also claimed that "[t]he privacy and confidentiality guaranteed Plaintiffs under the [Policy] and required by Minnesota state law have been repeatedly and overtly breached." *Id.*, ¶¶ 52, 27. The Second Amended Complaint also

included a claim of "retaliation" under DATWA based on actions defendants allegedly took in response to plaintiffs' assertion of DATWA claims in their First Amended Complaint. *Id.*, ¶¶ 51-54, 74(k), 76. Plaintiffs further alleged that the NFL had violated DATWA's requirement that an employer notify an employee of a positive test result within three days of receipt of the test results. *Id.*, ¶¶ 36-40, 74(e)-(f).

10. On July 9, 2009, the Hennepin County District Court issued an order rejecting plaintiffs' Second Amended Complaint and requiring plaintiffs to seek leave of court pursuant to a written motion. Ex. B. Plaintiffs never brought the required motion to file the Second Amended Complaint.

11. On December 7, 2009, the parties filed cross-motions for summary judgment. At oral argument on January 14, 2010, plaintiffs argued that, notwithstanding the Eighth Circuit's determination that the NFL was not their employer, the NFL could still be liable under DATWA as a "joint" or "single" employer of plaintiffs. Plaintiffs had not based their DATWA claim upon a joint employer theory in their papers supporting their motion for summary judgment or opposing defendants' motion for summary judgment.

12. On February 18, 2010, the court issued an order (the "Order") granting summary judgment to defendants on all but two allegations: that defendants violated (1) DATWA's three-day notice requirement and (2) DATWA's confidentiality provisions. Ex. C.

13. In the Order, the state court determined that the NFL was *not* the plaintiffs' employer or the "alter ego" of the Vikings. *Id.* at 15-19. But the court nonetheless

observed for the first time that the NFL could be subject to liability under DATWA's

requirements for employers because the NFL does "assert some degree of control over

Plaintiffs' employment . . . *through the terms agreed upon in the CBA*" and thus, based on

that control, "could, perhaps, be a joint employer of Plaintiffs." *Id.* at 20 (emphasis

supplied).  More specifically, the court noted:

> Plaintiffs state that the NFL exerts control over
> players' work conditions, schedules, rules, regulations,
> structure of compensation, drug testing, and discipline.
> *Using this analysis*, it appears that the NFL could,
> perhaps, be a joint employer of Plaintiffs.

*Id.* (emphasis supplied).  The court found that "[t]he record is incomplete" on these

issues, and that more fact-finding was necessary to determine, *inter alia*, "whether the

NFL or the individual teams pay players' pensions or pay players who participate in the

ProBowl and in the Super Bowl." *Id.* at 23.

14.    The Order also accepted – for the first time – plaintiffs' Second Amended

Complaint as the operative pleading. *Id.* at 10.  Without acknowledging its prior rejection

of plaintiffs' attempt to file a Second Amended Complaint, and without plaintiffs filing

the required motion for leave, the court noted that "Plaintiffs [] filed a 'Second Amended

Complaint' on June 11, 2009" alleging "the NFL violated Plaintiffs' rights under DATWA

by (1) denying their right to explain the positive test result; (2) failing to give due

consideration to Plaintiffs' explanation of their unknowing ingestion of Bumetanide; (3)

failing to use properly certified laboratories; (4) failing to provide Plaintiffs timely and

proper notice; and (5) failing to protect Plaintiffs' rights to confidentiality." *Id.*  The court

also adjudicated plaintiffs' retaliation claim – a claim that is found only in the second, not

the first, amended complaint. *See id.* at 33-34 (holding defendants did not retaliate against plaintiffs based on their assertion of claims under DATWA in their First Amended Complaint).

## THE LAW

15.     The Minnesota state court's February 18, 2010 summary judgment opinion constitutes an order and an acceptance of an amended pleading "from which it may first be ascertained that the case . . . has become removable." 28 U.S.C. § 1446(b).  In particular, the Order, for the first time:  (1) accepts plaintiffs' Second Amended Complaint asserting a breach of a labor contract as the operative pleading, and (2) makes clear that resolution of the remaining DATWA claims requires an interpretation of the CBA.

16.     The basis for removal of this action arises under 28 U.S.C. § 1331 because this Court has subject matter jurisdiction to adjudicate claims arising under the Constitution, laws or treatises of the United States.  A defendant may remove an action to federal court under 28 U.S.C. § 1441(a) if the plaintiff's complaint presents a federal question, such as a federal cause of action. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

17.     Federal question jurisdiction exists in this case based on the complete preemption of plaintiffs' claims by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) for at least two independent reasons.

18.     First, the state court's acceptance for the first time of plaintiffs' Second Amended Complaint as the operative pleading provides a clear basis for removal.  Ex. C.

Prior to its February 18, 2010 Order, the state court expressly rejected plaintiffs' attempt

to file the Second Amended Complaint.  However, the Order states that plaintiffs "filed"

the Second Amended Complaint and based its summary judgment Order on that

complaint as the operative pleading.  The court's consideration of plaintiffs' DATWA

retaliation claim in the Order as well as its reliance on the alleged violations as set forth

in the Second Amended Complaint further demonstrate the court's acceptance of the

Second Amended Complaint as the operative pleading.  Because the Second Amended

Complaint specifically alleges for the first time that defendants breached the terms of the

collectively-bargained Policy, the claims arising therefrom must "be decided according to

the precepts of federal labor policy" under Section 301 of the LMRA.  *Teamsters v. Lucas

Flour Co.*, 369 U.S. 95, 103 (1962); *Allis Chalmers*, 471 U.S. at 210 ("a suit in state court

alleging a violation of a provision of a labor contract must be brought under § 301 and be

resolved by reference to federal law"); *Oberkramer v. IBEW-NECA Serv. Ctr.*, 151 F.3d

752, 756 (8th Cir. 1998) (finding plaintiff's breach of collective bargaining agreement

claim "clearly preempted under § 301").

19.    Where, as here, "an amended pleading, motion, order or other paper" is one

"from which it may first be ascertained" that a case has become removable, 28 U.S.C. §

1446(b), a federal court may properly exercise jurisdiction even if the case has been

remanded previously, *Fritzlen v. Boatmen's Bank*, 212 U.S. 364, 372 (1909) ("the right to

[remove again] is not controlled by the previous order remanding the cause"); *Neal v.

Bank of Am.*, 2007 WL 1821386, Civ. No. 06-6044 (W.D. Ark., June 25, 2007)

(permitting second removal where a new basis for jurisdiction became apparent after

remand); *Jordan v. Equity Group*, 648 F. Supp. 2d 1246, 1251-52 (M.D. Ala. 2009) (exercising jurisdiction over previously remanded case where plaintiff filed amended complaint alleging breach of a collective bargaining agreement that gave rise to complete preemption under section 301 of the LMRA).

20.    Second, by interpreting DATWA to permit an analysis of "joint" and "single employer" factors to determine the statute's definition of "employer," the February 18, 2010 Order establishes that plaintiffs' claims are "inextricably intertwined" with, and will necessarily require an interpretation of, multiple collectively-bargained agreements:  the CBA, the Policy, plaintiffs' NFL Player Contracts, and the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Retirement Plan").  Indeed, the Order expressly relies upon and interprets the CBA to conclude that a fact dispute exists regarding the NFL's joint employer status under DATWA.  Ex. C at 20.

21.    While the Eighth Circuit indicated that the CBA and Policy were dispositive in determining that the Vikings, not the NFL, employs plaintiffs within the meaning of DATWA, the state court's Order adopted plaintiffs' claim, raised for the first time at the summary judgment hearing, that DATWA requires a determination of whether the NFL constitutes an employer under the joint and single employer theories.  The court found that these claims require analyses of multiple factors, including the extent of the NFL's "control" "over players' work conditions, schedules, rules, regulations, structure of compensation, drug testing, and discipline . . . ." *Id.*  The state court recognized that any

control the NFL may exercise over NFL players necessarily derives from "the terms agreed upon in the CBA." *Id.*[1]

22.     Accordingly, under the Minnesota state court's Order, a determination of whether the NFL is an "employer" for purposes of DATWA requires an interpretation of the CBA, the NFL Player Contract, the Policy, and the Retirement Plan.  Where, as here, resolution of a state law claim depends on an interpretation of a collective bargaining agreement, or is "inextricably intertwined" with a labor contract, the claim is preempted under the LMRA.  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212-13 (1985); *Schuver v. Mid-American Energy Co.*, 154 F.3d 795, 798-99 (8th Cir. 1998).

---

[1] *See also, e.g.*, CBA Art. II (reserving to the NFL Clubs the "right to manage and direct their operations in any manner whatsoever, except as specifically limited by" the CBA); Art. XI (setting forth the parameters of the NFL Commissioner's authority to discipline players); Art. XLIII (setting forth amount and timing of compensation for participation in Pro Bowl); Art. XXIV (setting forth rules and requirements regarding NFL Salary Cap system); Art. XLVII (incorporating collectively-bargained Retirement Plan and explaining that "a contribution will be made to the Retirement Plan on behalf of each NFL Club"); Art. XXIV (explaining eligibility for and amounts of severance pay and providing that such payments "will be paid in a single lump sum payment by the NFL Club with which the player last earned a Credited Season"); Art. LV (prohibiting the NFL and NFL Clubs from "prohibiting or limiting the type of footwear or gloves which may be worn by players on the field" unless such prohibitions "are agreed to by the NFLPA"); App. C (NFL Player Contract) ¶ 4 (setting forth terms of "Publicity and NFLPA Group Licensing Program" whereby players authorize their Club, the League, and the NFLPA to use their names and likenesses for certain purposes); App. C ¶ 14 (requiring player to "comply with and be bound by all reasonable Club rules and regulations" as well as any League "rules and procedures"); App. C ¶ 18 (giving Commissioner right to disapprove NFL Player Contracts under certain circumstances); *see also, e.g.*, Policy at 1 (providing NFL Commissioner with the authority to discipline "all persons, including players" for violation of the Policy or laws related to possession of prohibited substances); Policy at 14 (prohibiting a Club from requiring a player to undergo reasonable cause testing without agreement of team physician and Independent Administrator).

23.     Thus, plaintiffs' two remaining claims are inextricably intertwined with, and dependent upon the interpretation of, the terms of collectively-bargained documents, or are based upon an alleged breach of a collective bargaining agreement. Accordingly, section 301 of the LMRA completely preempts Plaintiff's claims, meriting removal on the basis of federal question jurisdiction. *Schuver v. Mid-American Energy Co.*, 154 F.3d 795, 798-99 (8th Cir. 1998).

24.     Pursuant to 28 U.S.C. § 1446(a), removal to the United States District Court for the District of Minnesota is proper because this is the federal district court for the district and division embracing the place where the state court suit is pending.

25.     As required by 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings and orders served upon the NFL are being filed with this Notice of Removal.

26.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given to plaintiffs, and a copy of this Notice of Removal will be filed with the clerk of the District Court of the Fourth Judicial District of the State of Minnesota for the County of Hennepin, to effect the removal of this civil action.

27.     The defendants reserve all substantive and procedural claims, counterclaims and defenses, including but not limited to defenses respecting service of process, venue, and personal jurisdiction.

WHEREFORE, the defendants respectfully request that all proceedings in the state court action be discontinued, and that this action proceed in the United States District Court for the District of Minnesota as an action properly removed to it.

DATED: _3/3_____, 2010

Respectfully submitted,

_____

| Joseph G. Schmitt | Reg. No. 231447 |
| David H. Wright | Reg. No. 213895 |
| Peter Gray | Reg. No. 25809X |

NILAN JOHNSON LEWIS, PA
400 One Financial Plaza
120 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 305-7500
Facsimile: (612) 305-7501

Daniel L. Nash (*pro hac vice application to be filed*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
(202) 887-4000

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March 2010, I caused a true and correct copy of this Notice of Removal of Civil Action to be served by mail on plaintiffs' attorneys at the following address:

Peter R. Ginsberg
Ginsberg & Burgos
12 East 49th Street, 30th Floor
New York, NY  10017

Steven E. Rau
Flynn Gaskins Bennett, LLP
333 South Seventh Street, Suite 2900
Minneapolis MN 55402

_____
Joseph G. Schmitt