# EXHIBIT B

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Judge Gary Larson

Kevin Williams, Pat Williams,

                  Plaintiffs,

v.

The National Football League, John Lombardo, M.D., Brian Finkle, and Adolpho Birch,

                  Defendants.

Court File No. 27-CV-08-29778

**ORDER**

    The above-entitled matter came for a hearing before the Honorable Gary Larson, Judge of Hennepin County District Court, on June 2, 2009. Ronn Kreps, Esq., Peter Ginsberg, Esq., and Christina Burgos, Esq., appeared for and on behalf of Plaintiffs, Kevin and Pat Williams. Joseph Schmitt, Esq., and Daniel Nash, Esq., appeared for and on behalf of Defendants, The National Football League, John Lombardo, M.D., Brian Finkle, and Adolpho Birch. The parties submitted memoranda to Amend Plaintiffs' Second Complaint, for a temporary injunction, and to stay proceedings. Based upon all files, records, and proceedings herein, together with the arguments of counsel,

### IT IS HEREBY ORDERED:

1. Pursuant to Judge Paul Magnuson's remand order, this Court has jurisdiction to hear the above-mentioned issues.
2. Plaintiffs must bring a motion to amend their Complaint for the second time.
3. Plaintiffs' Motion for a Temporary Restraining Order ("TRO") is **GRANTED**. The TRO prevents Defendants from suspending Plaintiffs or subjecting them to reasonable cause testing pending the outcome of adjudication of this case on the merits.

2

4.  All parties shall appear for oral argument on Defendants' Motion to Stay Proceedings before this Court on Wednesday, July 22, 2009 at 8:00 a.m. in Courtroom 1655, Hennepin County Government Center.  Each party may submit a supplemental brief, exceeding no more than 3 pages, by Monday, July 20, 2009 at 4 p.m.

5.  The attached memorandum is incorporated herein.

BY THE COURT:

Dated:  July 9, 2009

_____
Gary Larson
Judge of District Court
C-1655 Government Center
Minneapolis, MN 55487
(612) 348-6102

# MEMORANDUM

## I. FACTS

Kevin and Pat Williams ("Plaintiffs") are both players on the Minnesota Vikings football team ("Vikings") and members of the National Football League Players Association ("NFLPA"). The National Football League ("NFL") is an unincorporated association of NFL member clubs. The Vikings are one of the NFL's member clubs. The NFL Management Council is the exclusive collective bargaining representative of the NFL member clubs. The NFLPA and NFL Management Council are parties to a comprehensive collective bargaining agreement that governs the terms and conditions of employment for all NFL players and established the NFL Policy on Anabolic Steroids and Related Substances ("Policy").

The Policy bans a variety of prohibited substances, including steroids and diuretics which can mask the detection of banned substances. John Lombardo, M.D. ("Lombardo") is the Policy's Administrator. The NFL and the NFLPA jointly selected Lombardo to administer the Policy. Lombardo reports directly to Adolpho Birch ("Birch") the NFL's Vice President of Law and Labor Policy, and answers to, is paid by, and directs information about the Policy to the NFL. Lombardo has sole discretion to determine the testing method that players are subjected to, select which players are tested each week, decide when tests are administered, analyze test results, and certify violations for disciplinary or administrative action.

Lombardo is also responsible for consulting with players and club physicians, overseeing the development of educational materials, and participating in steroid research. Every week during the pre-season and regular season, ten players on each team are tested. Plaintiffs are routinely and randomly tested for prohibited substances. Neither Plaintiff has ever tested

3

positive for steroid use, nor has he been suspected of diluting or masking his urine to avoid a positive result.

On August 27, 2008, Plaintiffs were notified that they had tested positive for bumetanide, a diuretic banned under the Policy because it may mask the presence of steroids. The Policy states that the first time a player tests positive for a banned substance, he will be suspended without pay for a minimum of four regular and/or post-season games. Consequently, the NFL suspended each Plaintiff for four games. Plaintiffs were also told that they would be subject to ongoing "reasonable cause testing," or increased testing, which is required by the Policy for any player who tests positive for a prohibited substance.

Plaintiffs appealed their suspensions to the NFL's chief legal officer, Jeffrey Pash. At the hearing, Plaintiffs stated that they had taken StarCaps. Although bumetanide is not listed as an ingredient in StarCaps, the evidence established that the StarCaps Plaintiffs took contained bumetanide. Generally, the unknowing ingestion of a banned substance will not justify a violation of the Policy. Players are warned that they are strictly liable for what is in their bodies, and that a positive test result will not be excused because a player was unaware that he was taking a banned substance.

Plaintiffs argued, however, that Lombardo and the NFL knew, in 2006, that at least some StarCaps capsules contained bumetanide. Indeed, when several players tested positive for bumetanide after taking StarCaps in 2006, Lombardo and the NFL asked an independent laboratory to analyze StarCaps. The laboratory found bumetanide in StarCaps and informed Birch and Lombardo of the results. The laboratory published the test results in the November/December 2007 Journal of Analytical Toxicology. Birch did not inform the NFLPA about StarCaps, but did inform it that players were prohibited from providing endorsements for

Balanced Health Products, the distributor of StarCaps. Birch also sent a memorandum to each team's president, general manager, and head athletic trainer stating that players were not to endorse Balanced Health Products.

On December 2, 2008, the arbitrator denied Plaintiffs' appeals and upheld their four-game suspensions. The arbitrator found that the Policy in no way imposed a duty on Lombardo to issue warnings about specific products. The arbitrator further found that Lombardo and the NFL made additional disclosures in response to their knowledge about StarCaps that went beyond the general warnings. Because Plaintiffs tested positive for bumetanide, Defendants immediately placed them on reasonable cause testing.

On December 3, 2008, the day after their appeals to the NFL were denied, Plaintiffs filed suit in this Court alleging common-law causes of action and seeking injunctive relief. This Court issued a temporary restraining order ("TRO") blocking Plaintiffs' suspensions. The next day, the NFLPA, on behalf of Plaintiffs and three other players, brought suit in federal court. The NFL removed Plaintiffs' state lawsuit to federal court. The Honorable Paul Magnuson, Judge of the United States District Court for the District of Minnesota, granted the NFLPA's motion for a preliminary injunction and declined to overturn the TRO entered in state court, thus allowing Plaintiffs to continue playing until the end of the NFL's season. *Nat'l Football League Players Ass'n v. Nat'l Football League*, 598 F.Supp.2d 971 (D. Minn. 2008) ("*NFL I*").

Defendants never answered the initial complaint. Rather, Defendants filed a notice of their intent to file a motion to dismiss, which was subsequently denied on January 27, 2009. On January 2, 2009, Plaintiffs filed an amended complaint ("First Amended Complaint"), which added causes of action for violations of Minnesota Drug and Alcohol Testing in the Workplace Act ("DATWA"), Minn. Stat. § 181.950-57, and the Consumable Products Act ("CPA"), Minn.

5

Stat. § 181.938. Defendants never answered the First Amended Complaint, and again filed a notice of their intention to file a motion to dismiss on January 28, 2009. All parties moved for summary judgment. On May 22, 2009, Judge Magnuson dismissed Plaintiffs' common law claims on the ground of preemption, and remanded Plaintiffs' DATWA and CPA claims back to this Court. *Nat'l Football League Players Ass'n v. Nat'l Football League*, Civ. No. 08-6254, 2009 WL 1457007 (D. Minn. May 22, 2009) ("*NFL II*").

Following remand to this Court, Plaintiffs filed a Motion for a Temporary Injunction on June 5, 2009. Plaintiffs then filed a "Second Amended Complaint" on June 11, 2009. Plaintiffs' Second Amended Complaint alleges that the NFL violated Plaintiffs' rights under DATWA by (1) denying their right to explain the positive test result; (2) failing to give due consideration to Plaintiffs' explanation of unknowingly ingesting bumetanide; (3) failing to use properly certified laboratories; (4) failing to provide Plaintiffs timely and proper notice; and (5) failing to protect Plaintiffs' right to confidentiality. Plaintiffs further assert that the NFL violated their rights under the CPA, which prohibits the imposition of discipline for an employee's consumption of lawful consumable products when that consumption occurs off the employer's premises during non-working hours.

On June 19, 2009, Defendants filed a Motion in this Court to Stay Proceedings and to Strike or Dismiss Plaintiffs' Second Amended Complaint. Both Plaintiffs and Defendants have appealed portions of Judge Magnuson's May 22, 2009 Order to the Eighth Circuit Court of Appeals.

## II. LEGAL ANALYSIS

### A. This Court has jurisdiction to hear the issues on remand.

United States District Court Judge Magnuson's May 22, 2009 Order stated that the federal court did not have jurisdiction over Count II of Plaintiffs' amended complaint and remanded Plaintiffs' remaining state statutory claims to this Court. *NFL II*, 2009 WL 1457007 at *10. In a remand setting, jurisdiction is transferred to the state court when the federal court clerk mails a certified copy of the remand order to the state court clerk. *See e.g. Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 531, n.1 (6th Cir. 1999); *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 225 (3d Cir. 1995); *Seedman v. U.S. Dist. Ct. for the Cent. Dist. of Florida*, 837 F.2d 413, 414 (9th Cir. 1988); *Browning v. Navarro*, 743 F.2d 1069, 1078 (5th Cir. 1984). Here, the federal court clerk mailed a certified copy of Judge Magnuson's remand order on May 26, 2009. By that act, jurisdiction was transferred to this Court.

Moreover, when a case removed to federal court is remanded back to state court, the state court receives that case in the posture it was in when remanded. *See Doerr v. Warner*, 76 N.W.2d 505, 512 (Minn. 1956) (concluding that when a case is removed to federal court and subsequently remanded to state court, the state court has continuous, though dormant, jurisdiction while the case is in federal court, and jurisdiction is revived on remand). Filing a notice of appeal in federal court does not divest this Court of jurisdiction. *See e.g., Patel v. Del Taco, Inc.*, 446 F.3d 996, 1000 (9th Cir. 2006); *Fosdick v. Dunwoody*, 420 F.2d 1140, 1141 n. 1 (1st Cir. 1970); *Migis v. AutoZone, Inc.*, Civ. No. 08-1394, 2009 WL 690627, at *2 (D. Or. Mar. 6, 2009). In *Patel*, the 9th Circuit rejected the plaintiffs' claims, finding no authority to support the Patels' "proposition that this court had sole and exclusive jurisdiction once the notice of appeal was filed" and that the Patels could not "cite to any authority that suggests that the state

court could not assert jurisdiction over the removal action once the district court issued its remand order. In fact, what little authority exists on this issue suggests the contrary." *Patel*, 446 F.3d at 1000.

Judge Magnuson unambiguously ordered that Plaintiff's state statutory claims be remanded to this Court. The federal court clerk took the necessary steps to complete the transfer of jurisdiction by mailing a certified copy of Judge Magnuson's order to this Court. Plaintiffs' state law claims are properly before this Court.

### B.    Plaintiffs must bring a motion to file a second amended complaint.

Minnesota Rule of Civil Procedure 15 governs the process of amending pleadings. Minn. R. Civ. P. 15.01 states that,

> A party may amend a pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend a pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

In this case, Plaintiffs already amended their complaint "as matter of course" before Defendants filed a responsive pleading when they served and filed their First Amended Complaint on January 2, 2009. Therefore, Plaintiffs no longer have the right to amend their complaint "as a matter of course." If Plaintiffs intend to assert the claims and allegations contained in their Second Amended Complaint, then they must first seek and obtain the Court's leave.

Plaintiffs must bring a motion seeking leave of the Court to file their Second Amended Complaint.

### C. A temporary restraining order is necessary to maintain the status quo pending a decision on the merits.

This Court need not delve into a discussion about whether its prior TRO is still in effect. A TRO may be granted when a party will suffer immediate and irreparable injury. Minn. R. Civ. P. 65.01. A TRO maintains the status quo pending adjudication on the merits. *Metro. Sports Facilities Comm'n v. Minn. Twins P'ship*, 638 N.W.2d 214, 220 (Minn. Ct. App. 2002), *rev. denied*, (Minn. Feb. 4, 2002). There are five factors which must be weighed by a court when considering granting a TRO. These factors include: (1) the nature and relationship of the parties; (2) balancing of relative harms; (3) likelihood of success on the merits; (4) public policy; and (5) administrative burdens. *Dahlberg Bros. v. Ford Motor Co.*, 137 N.W.2d 314, 321-22 (Minn. 1965); *Metro. Sports*, 638 N.W.2d at 220-21. In this case, these factors weigh in favor of granting a TRO.

#### 1. *Relationship of the parties.*

Relationships that support a TRO are longstanding or formalized in some way. *See Dahlberg*, 137 N.W.2d at 322 (40-year relationship); *Metro. Sports Facilities*, 638 N.W.2d at 221 (existing contractual relationship). Here, granting a TRO would not create a new legal relationship between the parties, but would maintain an existing relationship. The parties in this case already have a direct and formalized relationship. Both Plaintiffs have a continuing relationship with Defendants. Pat Williams has played for the NFL for 12 years, and Kevin Williams has played for 6 years. Both, moreover, are under contract to continue their NFL football careers. These formalized, contractual relationships weigh in favor of granting a TRO.

#### 2. *Balance of harms.*

Without a TRO, Plaintiffs would suffer greater harm than Defendants would suffer with a TRO. Courts have found that loss of NFL playing time is sufficient to constitute irreparable

9

harm. *See Jackson, et. al. v. Nat'l Football League*, 802 F.Supp. 226, 231 (D. Minn. 1992) (finding that "[t]he existence of irreparable injury is underscored by the undisputed brevity and precariousness of the players' careers in professional sports, particularly in the NFL"); *Bowman v. Natl'l Football League*, 402 F.Supp. 754, 756 (D. Minn. 1975) (stating that, without injunctive relief, a professional football player would "suffer irreparable harm, not compensable in terms of damages, and that the court's capacity to do justice will thereby be rendered futile"); *Denver Rockets v. All-Pro Mgmt., Inc.*, 325 F.Supp. 1049, 1057 (C.D. Cal. 1971) (stating that relative harm to a professional basketball player would be greater than that of the NBA, because "a substantial part of his playing career will have been dissipated, his physical condition, skills and coordination will deteriorate from lack of high-level competition, his public acceptance as a super star will diminish to the detriment of his career, [and] his self-esteem and his pride will have been injured"). In this case, because the NFL playing season is relatively short, Plaintiffs would suffer a significant loss of playing time without the benefit of a TRO.

On the other hand, Defendants argue that they will and have already suffered irreparable harm. Defendants claim that a TRO would interfere with their need to establish uniform rules and procedures to govern the sport and to effectively combat the use of prohibited substances. However, a TRO would only affect Defendants' ability to immediately sanction Plaintiffs and would not affect the general enforceability its anti-doping policy. Based on the relative harms that the parties will suffer, the equities tip in Plaintiffs' favor.

   *3.*  *Likelihood of success on the merits.*

If a plaintiff can show no likelihood of prevailing on the merits, the district court errs as a matter of law in granting a TRO. *Sanborn Mfg. Co. v. Currie*, 500 N.W.2d 161, 165 (Minn. Ct. App. 1993). If, however, a plaintiff can make even a doubtful showing as to the likelihood of

prevailing on the merits, a court may consider issuing a TRO to preserve the status quo until trial on the merits. *Dahlberg*, 137 N.W.2d at 321 n. 13 (upholding a temporary injunction despite finding that plaintiff may have serious obstacles to overcome before establishing its right to what in effect amounts to specific performance of the franchise agreement).

To succeed on their claims, Plaintiffs would have to show that the NFL deprived them of their rights in violation of DATWA or the CPA. DATWA places limitations on drug and alcohol testing in the work place and protects employees from retaliation by an employer for asserting their rights under this act. *See* Minn. Stat. §§ 181.951; 181.956(5). DATWA specifically states that it applies to collective bargaining agreements. Minn. Stat. § 181.955.

Plaintiffs claim that Defendants violated a number of their rights under DATWA. Specifically, Plaintiffs allege that Defendants failed to provide Plaintiffs proper notice of their right to explain their positive tests, making clear that even an innocent explanation would be irrelevant; violated their rights by placing them on reasonable cause testing without the benefit of a second confirmatory test; failed to provide them with timely statutory notices; and failed to notify them within three days of their positive confirmatory test. Plaintiffs further allege that Defendants failed to afford them the right to a third test, that the laboratory conducting the tests was not certified, accredited, or licensed under DATWA, and that Defendants failed to maintain the confidentiality of Plaintiffs' test results. Finally, Plaintiffs claim that Defendants violated the CPA by disciplining them for their consumption of a lawfully consumable product off their employer's premises during non-working hours.

Defendants claim that Plaintiffs have no likelihood of succeeding on the merits because their common law claims were dismissed. However, the determination of Plaintiffs' common law claims are not dispositive to the outcome of their statutory claims because DATWA and the

11

CPA establish rights independent from the NFL's Policy on prohibited substances. *NFL II*, 2009 WL 1457007 at *4. "[P]arties to a collective-bargaining agreement [do not have] the ability to contract for what is illegal under state law. . ... [Therefore] it would be inconsistent with congressional intent . . . to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *NFL II*, 2009 WL 1457007 at *4 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985).

Plaintiffs have shown some likelihood of prevailing on the merits of their state law claims. While Plaintiffs may face some obstacles in overcoming the existing fact issues to prevail on their statutory claims, they can make at least some showing as to the likelihood of prevailing on the merits. *See Dahlberg*, 137 N.W.2d at 321. Therefore, this Court will issue a TRO to preserve the status quo until trial on the merits.

    *4.*  *Public policy considerations.*

DATWA and the CPA are statutes reflecting the public policy of the State of Minnesota. *NFL II*, 2009 WL 1457007 at *10. "Public policy, where the legislature has spoken, is what it has declared that policy to be. So far as the question of policy is concerned, [the] statute settles the matter." *Thompson v. Allstate Ins. Co.*, 412 N.W.2d 386, 388-89 (Minn. Ct. App. 1987). Entering a TRO pending adjudication on the merits will allow the Court to ensure the legislative will and public policy is served as best as possible.

    *5.*  *Administrative burden.*

Courts must evaluate the administrative burden associated with issuing a TRO. Here, administrative considerations weigh neither in favor nor against granting the TRO. There will always be some administrative burden, but the requested relief is limited in scope and duration and is not a significant factor.

6.  *Scope of the temporary restraining order.*

Plaintiffs claim that Defendants are engaging in retaliatory behavior in violation of DATWA by subjecting Plaintiffs to reasonable cause testing. The Policy, however, expressly requires that a player undergo reasonable cause testing whenever he tests positive for a prohibited substance. Moreover, there is a genuine fact issue regarding when the increased testing commenced and whether it can be categorized as a reprisal.

The purpose of a TRO is to prevent immediate and irreparable injury and to maintain the status quo pending adjudication on the merits. Partial protection from immediate and irreparable injuries runs contrary to the purpose of a TRO. Therefore, as long as the TRO remains in effect, Plaintiffs should not be subjected to reasonable cause testing. Plaintiffs must, however, submit to the normal testing procedures required of any NFL player in good standing.

**D.   A hearing is needed to determine any stay of proceedings.**

All parties in this case have appealed portions of Judge Magnuson's May 22, 2009 Order to the Eighth Circuit. Defendants appealed Judge Magnuson's decision that the LCPA and DATWA claims were not preempted. Plaintiffs appealed Judge Magnuson's denial of their summary judgment motion, including their state statutory claims. The power to stay proceedings pending appeal is inherent in the courts. *State v. N. Pac. Ry. Co.*, 22 N.W.2d 569, 575 (Minn. 1946).

A stay is appropriate when an appellant's need to preserve the status quo is greater than the appellee's interests in enforcing the decision and receiving the benefits of the decision being appealed while the appeal is pending. *DJR, Inc. v. City of St. Paul*, 741 N.W.2d 141, 144-45 (Minn. Ct. App. 2007). The district court "must [also] assess the possibility of multiple determinations of the same dispute." *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d

13

438, 449 (Minn. Ct. App. 2001). However, "by itself, the possibility of multiple determinations is not enough to establish that the district court abused its discretion by not staying the proceedings." *Bjorklund v. Bjorklund Trucking, Inc.*, 753 N.W.2d 312, 318 (Minn. Ct. App. 2008).

Oral argument is needed by the Court to determine if a stay of proceedings is appropriate in this case. Such hearing shall take place on Wednesday, July 22, 2009, at 8:00 a.m. Plaintiffs and Defendants shall submit simultaneous briefs by Monday, July 20, 2009, at 4:00 p.m.

## III. CONCLUSION

This Court has jurisdiction to hear the issues currently before it on remand from the U.S. District Court for the District of Minnesota. Plaintiffs must bring a motion before this Court for consideration of their Second Amended Complaint.

Plaintiffs' Motion for a TRO is granted and prevents Defendants from suspending Plaintiffs or subjecting them to reasonable cause testing, pending the outcome of adjudication on the merits. Defendants' Motion to Stay Proceedings merits oral arguments. The parties shall appear before this Court on Wednesday, July 22, 2009, at 8:00 a.m. to address the issues raised in Defendants' motion. Each party may submit a supplemental brief concerning Defendants' Motion to Stay Proceedings, exceeding no more than 3 pages, by Monday, July 20, 2009, at 4 p.m.