subject to the right of any party to seek protections against public disclosure from the Court.

12.     Any party may request a change in the designation of any information designated "Confidential" and/or "Confidential - Attorneys' Eyes Only". Any such document shall be treated as designated until the change is completed.  If the requested change in designation is not agreed to, the party seeking the change may move the Court for appropriate relief, providing notice to any third party whose designation of produced documents as "Confidential" and/or "Confidential - Attorneys' Eyes Only" in the action may be affected.  The party asserting that the material is Confidential shall have the burden of proving that the information in question is within the scope of protection afforded by Fed. R. Civ. P. 26(c).

13.     Within 60 days of the termination of this action, including any appeals, each party shall either destroy or return to each other party all documents designated by the other party as "Confidential" , and all copies of such documents, and shall destroy all extracts and/or data taken from such documents.  Each party shall provide a certification as to such return or destruction as within the 60-day period.  Attorneys shall be entitled to retain, however, a set of all documents filed with the Court and all correspondence generated in connection with these actions.

14.     Any party may apply to the Court for a modification of the Protective Order, and nothing in the Protective Order shall be construed to prevent

Dockets.Justia.com

a party from seeking such further provisions enhancing or limiting confidentiality as may be appropriate.

15.    No action taken in accordance with the Protective Order shall be construed as a waiver of any claim or defense in these actions or of any position as to discoverability or admissibility of evidence.

16.    The obligations imposed by the Protective Order shall survive the termination of these actions.  Within 60 days following the expiration of the last period for appeal from any order issued in connection with these actions, the parties shall remove any materials designated "Confidential" from the office of the Clerk of Court.  Following that 60-day period, the Clerk of Court shall destroy all "Confidential" materials.

SO ORDERED:

Dated:  March 20, 2009

 s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

**EXHIBIT A**
**WRITTEN ASSURANCE**

_____ declares that:

I reside at _____ in the city of _____ ,

county _____ , state of _____ ;

I am currently employed by _____ located at

_____ and my current job title is

_____.

I have read and believe I understand the terms of the Protective Order dated

_____ , filed in Civil Action No. _____, pending in the United States District

Court for the District of Minnesota. I agree to comply with and be bound by the

provisions of the Protective Order. I understand that any violation of the

Protective Order may subject me to sanctions by the Court.

I shall not divulge any documents, or copies of documents, designated

"Confidential" or "Confidential - Attorneys' Eyes Only" obtained pursuant to such

Protective Order, or the contents of such documents, to any person other than

those specifically authorized by the Protective Order. I shall not copy or use such

documents except for the purposes of this action and pursuant to the terms of the

Protective Order.

As soon as practical, but no later than 30 days after final termination of this

action, I shall return to the attorney from whom I have received them, any

documents in my possession designated "Confidential" or "Confidential -

Attorneys' Eyes Only", and all copies, excerpts, summaries, notes, digests, abstracts, and indices relating to such documents.

I submit myself to the jurisdiction of the United States District Court for the District of Minnesota for the purpose of enforcing or otherwise providing relief relating to the Protective Order.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on _____     _____
                    (Date)                              (Signature)

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

NATIONAL FOOTBALL LEAGUE PLAYERS
ASSOCIATION,

                 Plaintiff,

v.

NATIONAL FOOTBALL LEAGUE and
NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL,

                 Defendants.

COURT MINUTES – CIVIL
BEFORE: JEANNE J. GRAHAM
U.S. Magistrate Judge

| | |
|---|---|
| Case No: | CV 08-6254 (PAM/JJG) |
| Date: | March 27, 2009 |
| Courtroom: | Courtroom 3B |
| Court Reporter: | N/A |
| Recording: | CD-Rom |
| Time Commenced: | 10:05 AM |
| Time Concluded: | 10:40 AM |
| Time in Court: | 35 Minutes |

KEVIN WILLIAMS and PAT WILLIAMS,

                 Plaintiffs,

v.

THE NATIONAL FOOTBALL LEAGUE,
JOHN LOMBARDO, M.D.,
BRIAN FINKLE, and ADOLPHO BIRCH,

                 Defendants.

CIVIL NO. 08-6255 (PAM/JJG)

Hearing on: **IDR CONFERENCE**

## APPEARANCES:

Plaintiffs:    David G. Feher, Molly Donovan, Ian Pappendick, Christopher Clark, and Mark
                   Jacobson for plaintiff National Football League Players Association
                   Peter R. Ginsberg, Christina Burgos and Ronn B. Kreps for plaintiffs Kevin and
                   Pat Williams

Defendants:   Joseph G. Schmitt, Marla Axelrod

## PROCEEDINGS:

             By telephone (dial-in teleconference by Conference Bridge)

        IDR conference on discovery issues, placed on the record.

**Other Remarks:**

The NFL has twenty-four (24) hours --- until 10:20 a.m. on Saturday, March 28, 2009 --- to produce documents and answers to interrogatories responsive to the discovery requests served by the NFLPA and the Williams Plaintiffs.  The NFL must also produce a privilege log to the NFLPA and Williams Plaintiffs by Monday, March 30, 2009.

The Court will hold a formal hearing on Wednesday, April 1, 2009, at 2:30 p.m., on the issues raised in the parties' position letters of March 26, 2009.  Those letters must be filed on ECF.  The deadline for filing supplementation on the March 26, 2009 letters, is 12:00 p.m. on Tuesday, March 31, 2009.  Each side is limited to twenty (20) pages, double-spaced.

For those attorneys wishing to appear by telephone, the Court shall set up a conference call using the Court's Conference Bridge.  All parties will call at the designated time.  To access the conference/hearing, dial **800-516-9896.  You will receive prompts and when appropriate, enter the following access code:  1099783283#.**  You will then be asked to state your name, followed by the # sign.  Once you enter the conference call, you will hear music until Magistrate Judge Graham joins the call.

 s/ Judith M. Kirby
Judicial Assistant

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

### CIVIL HEARING

National Football League Players Association,

       Plaintiff,

v.

National Football League and National Football
League Management Council,

       Defendants.

Kevin Williams and Pat Williams,

       Plaintiffs,

v.

National Football League, John Lombardo, Brian
Finkle, and Adolpho Birch,

       Defendants.

### COURT MINUTES
BEFORE: Jeanne J. Graham
U.S. Magistrate Judge

| | |
|---|---|
| Case Nos: | Civ. No. 08-6254 (PAM/JJG) |
| | Civ. No. 08-6255 (PAM/JJG) |
| Date: | April 1, 2009 |
| Court Reporter: | n/a |
| Courtroom: | 3B |
| Time Commenced: | 14:38 |
| Time Concluded: | 16:26 |
| Time in Court: | 1 hour and 48 minutes |

**APPEARANCES:**

For National Football League Players Association: David Feher, Mark Jacobson, David Greenspan, Christopher Clark, Ian Papendick, and Molly Donovan

For Kevin Williams and Pat Williams: Peter Ginsberg, Ronn Kreps, and Christina Burgos

For National Football League, John Lombardo, Brian Finkle, and Adolpho Birch: Joseph Schmitt, Daniel Nash, and Marla Axelrod

**PROCEEDINGS:**

The Court held a hearing on discovery matters. A written order will issue.

                                  s/Adrienne Meyers
                                   Signature of Law Clerk

## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| National Football League Players Association, | Civ. No. 08-6254 (PAM/JJG) |
| Plaintiff, | |
| v. | O R D E R |
| National Football League and National Football League Management Council, | |
| Defendants. | |

| | |
|---|---|
| Kevin Williams and Pat Williams, | Civ. No. 08-6255 (PAM/JJG) |
| Plaintiffs, | |
| v. | O R D E R |
| National Football League, John Lombardo, Brian Finkle, and Adolpho Birch, | |
| Defendants. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came before the Court on April 1, 2009, for a hearing on several discovery disputes. For the most part, the Court ruled orally on the disputes and stated its reasons on the record. The purpose of this Order is to provide those rulings in a written format.

**1.   The Deposition of Jeffrey Pash**

This Court previously ordered that the NFLPA may depose Jeffrey Pash on its claims of (1) arbitrator bias and (2) public policy violations. This ruling was based on earlier determinations by the Honorable Paul A. Magnuson, United States District Court, in the context

of a preliminary injunction motion, that Mr. Pash was "a partial arbitrator"; that a substantial question existed regarding whether his partiality prejudiced the arbitration awards; that the NFLPA had raised a substantial question as to whether the NFL, Dr. Lombardo, and Mr. Birch owed the players a fiduciary duty to communicate information about banned substances; and that because the arbitration awards did not acknowledge the fiduciary breaches, they "sanctioned" the breaches, which violated a public policy to protect health and safety.  (Order at 11-12, 14-16; Dec. 11, 2008) (Magnuson, J.).

Although the Williams Plaintiffs have not alleged a claim of arbitrator bias, they have brought claims for breach of fiduciary duty.  Both the Williams Plaintiffs and the NFLPA are alleging that Defendants' failure to advise NFL players that StarCaps contained bumetanide violated certain fiduciary duties.  This subject is central to both the NFLPA's case and the Williams Plaintiffs' case, and Judge Magnuson has found there is "a substantial question" on the issue (id. at 15).  Accordingly, based on the similar nature of the claims, Judge Magnuson's earlier determinations, and because the NFLPA will already be deposing Mr. Pash on this topic, the Court will allow the Williams Plaintiffs to depose Mr. Pash, but only as to whether "the NFL, Lombardo, and Birch owed the players a fiduciary duty with respect to communicating information about banned substances" (id.) and whether that duty was breached.

Ordinarily, an "apex" employee such as Mr. Pash may not be deposed unless (1) he has unique and personal knowledge of the subject matter, and (2) subordinate employees are deposed first.  See Baine v. Gen. Motors Corp., 141 F.R.D. 332, 334 (M.D. Ala. 1991).  But the Court is not basing its decision on the Baine factors, and in fact, the Williams Plaintiffs have not met either prong of the test.  They have offered only speculation that Mr. Pash has unique or personal knowledge concerning a wide variety of topics about which they seek to depose Mr. Pash.

2

Moreover, they have not yet taken depositions of key subordinate employees such as the NFL's Rule 30(b)(6) designee, Mr. Birch, whose deposition will cover many of the broad topics about which the Williams Plaintiffs would like to ask Mr. Pash.

To be clear, the Court is allowing the Williams Plaintiffs to depose Mr. Pash on the limited fiduciary duty topic only because they have claims for breach of fiduciary duty similar to the NFLPA's claim; Judge Magnuson has found the existence of a substantial question concerning whether certain fiduciary duties were breached; and the NFLPA has already been granted permission to depose Mr. Pash on this topic. There is little to no prejudice in allowing the Williams Plaintiffs a similar opportunity on the same day the NFLPA will depose Mr. Pash.

**2.     Defendant Brian Finkle's Deposition**

Defendant Brian Finkle was deposed on Tuesday, March 31, 2009. At the motion hearing the next day, the NFLPA argued that the NFL should be sanctioned for its conduct at the deposition. The Court ordered the NFLPA to produce the relevant excerpts of the deposition transcript to the Court by 12:00 p.m. on Friday, April 3, 2009.

**3.     Documents Designated as Privileged by the NFL**

All of the parties agreed at the hearing to an *in camera* review of documents designated as privileged by the NFL. Accordingly, by 12:00 p.m. on Friday, April 3, 2009, the NFL must deliver to this Court's chambers *two copies* of the following: the privilege log, bates-stamped copies of the privileged documents, and for each document a concise paragraph of the factual and legal bases for the asserted privilege. Any other party may also file a short memorandum or letter setting forth its reasons for believing the documents are or are not privileged.

3

**4.     Depositions**

The parties must go forward with depositions as noticed, regardless of the Court's availability to hear disputes immediately as they arise. For any dispute brought to the Court during a deposition, the Court may order the losing party to pay the prevailing party's fees.

**5.     Interrogatories**

The NFLPA and Williams Plaintiffs believe the NFL's responses to Interrogatories No. 1 and 2 remain insufficient because the NFL has only identified individuals who may have received information that StarCaps contained bumetanide, but is refusing to disclose certain details such as how the person received the information and what specific information was received, asserting such information is privileged. The NFLPA and Williams Plaintiffs emphasize that they are not asking for privileged communications, only factual information.

The NFL must supplement its answers to Interrogatories No. 1 and 2 so that their answers reveal (1) how the identified individual received information about bumetanide in StarCaps, (2) what the person did with the information in terms of communicating it to the players, and (3) why did the person act or not act on the information. If the answers to these what, how, and why questions are indeed privileged, the NFL must provide more specificity in its answers regarding the basis of the privilege. The NFL must provide the supplementation by Wednesday, April 8, 2009. Given the exigencies of this case, the NFL must produce the responsive information by this date, regardless of any possible objection or appeal. (*See* Order at 1, Jan. 28, 2009) (Magnuson, J.) ("[D]iscovery should proceed regardless of the pendency of appeals . . . ."). If this Court is reversed on appeal, the NFL can seek to regain, strike, or otherwise exclude the evidence.

4

6.      **Sanctions**

The NFLPA's and Williams Plaintiffs' requests for sanctions against the NFL remains under advisement.


Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the parties shall proceed with discovery as provided herein.


Dated this 2nd day of April, 2009.                    s/ *Jeanne J. Graham*
                                                      _____
                                                      JEANNE J. GRAHAM
                                                      United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **National Football League Players Association,** | Civ. No. 08-6254 (PAM/JJG) |
| **Plaintiff,** | |
| **v.** | **O R D E R** |
| **National Football League and National Football League Management Council,** | |
| **Defendants.** | |

| | |
|---|---|
| **Kevin Williams and Pat Williams,** | Civ. No. 08-6255 (PAM/JJG) |
| **Plaintiffs,** | |
| **v.** | **O R D E R** |
| **National Football League, John Lombardo, Brian Finkle, and Adolpho Birch,** | |
| **Defendants.** | |

JEANNE J. GRAHAM, United States Magistrate Judge

    This matter is before the Court for an *in camera* review of eighty-one[1] documents designated as privileged or protected work product on the NFL's privilege log. When a party asserts a privilege or protection under the work product doctrine, that party has the burden to show that it so qualifies. *Pepsico, Inc.* v. *Kurtz & Dobson LLC*, 305 F.3d 813, 817 (8th Cir.

---

[1] The Defendants submitted 82 documents, but withdrew their objections to producing one such document (#44). Some of the documents were duplicates or e-mail chains. A few are designated as such on the log, but some are not. To be clear, the following are duplicates of one another or involve an e-mail chain to parties for which the claimed protection is maintained, as discussed below: 1, 7; 9, 12; 14, 15; 21, 22; 23, 26, 29, 34, 43; 24, 25, 27, 28, 35, 36, 45; 61, 69; 64-66, 70.

2002): *Hollins* v. *Powell*, 773 F.2d 191,196 (8th Cir. 1985); *Triple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523, 527-28 (Minn. 2002).

The attorney-client privilege protects confidential communications between an attorney and client, which are made for the purpose of rendering legal advice, as long as the communications are kept confidential. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) (quoting *Wonneman v. Stratford Sec. Co.*, 23 F.R.D. 281, 285 (S.D.N.Y. 1959)).

> The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* at 601-02 (quoting *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)). The privilege applies equally to in-house and outside counsel. *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1326 n.3 (8th Cir. 1986) (citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)).

However, "[a] communication is not privileged simply because it is made by or to a person who happens to be a lawyer." *Id.* at 602 (citations omitted). Moreover, the privilege does not apply if the attorney acts as a mere scrivener or business advisor. *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984) (citations omitted).

The work product doctrine protects documents that are prepared in anticipation of litigation and disclose the theories or mental impressions of an attorney or a party's representative. Fed. R. Civ. P. 26(b)(3); *Diversified Indus.*, 572 F.2d at 603. Prior to the

2

codification of Rule 26(b)(3), the Supreme Court described the rationale for the protection as

follows.

> Historically, a lawyer is an officer of the court and is bound to work for the
> advancement of justice while faithfully protecting the rightful interests of his
> clients. In performing his various duties, however, it is essential that a lawyer
> work with a certain degree of privacy, free from unnecessary intrusion by
> opposing parties and their counsel. Proper preparation of a client's case demands
> that he assemble information, sift what he considers to be the relevant from the
> irrelevant facts, prepare his legal theories and plan his strategy without undue and
> needless interference. That is the historical and the necessary way in which
> lawyers act within the framework of our system of jurisprudence to promote
> justice and to protect their clients' interests. This work is reflected, of course, in
> interviews, statements, memoranda, correspondence, briefs, mental impressions,
> personal beliefs, and countless other tangible and intangible ways-aptly though
> roughly termed . . . as the 'Work product of the lawyer.'

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).

Work product protection extends to documents prepared in a prior case, even if the two

proceedings are unrelated, *In re Murphy*, 560 F.2d 326, 335 (8th Cir. 1977), as well as to

documents prepared in anticipation of arbitration proceedings and other adversarial proceedings.

*See Pac. Gas & Elec. Co. v. United States*, 69 Fed. Cl. 784, 792 (2006) (quotation and citations

omitted). The doctrine also applies to a lawyer's collation or categorization of facts. *Marvin

Lumber v. PPG Indus., Inc.*, 168 F.R.D. 641, 646 (D. Minn. 1996) (citing *Shelton*, 805 F.2d at

1326). Work product includes the legal opinions and theories of not only a party's lawyer but

also the party's agent and other representatives of the party. Fed. R. Civ. P. 26(b)(3)(A) and

advisory committee's note (1970).

Not all written materials a lawyer prepares in anticipation of litigation are protected,

however. A party may discover "such documents and tangible things" on "a showing of

'substantial need and an inability to secure the substantial equivalent of the items through

alternate means without undue hardship' for ordinary work product (such as photographs and

raw information), and 'only in rare and extraordinary circumstances' for opinion work product (containing mental impressions, conclusions, opinions, or legal theories regarding the litigation)." *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997) (citing *In re Murphy*, 560 F.2d at 333-36 & n.20). Furthermore, documents prepared in the ordinary course of business are not protected by the work product doctrine, even though litigation may have been anticipated. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987) (citations omitted).

With these principles in mind, the Court has reviewed the 81 documents, consisting of about 530 pages, designated as privileged. In addition, defendants submitted the accompanying privilege log, and, as ordered, a factual and legal explanation for each asserted privilege, along with affidavits supporting such assertions. The court also reviewed and considered all related submissions from the NFPLA and Williams Plaintiffs. Upon this careful review, the Court finds that defendants have properly asserted their respective attorney-client privilege and work product objections to each of the documents. The Court will not engage in document-by-document written findings, as all of the privilege claims have been substantiated. Moreover, due to the large number of documents involved, the expeditious nature of these proceedings, and because revealing more than what was indicated on the privilege log might jeopardize the privileged nature of the documents, the Court simply orders that the documents need not be produced.

However, one designation, Document #49 "Arbitrator Work Product", does require a note of explanation. Basically, these are Jeffrey Pash's notes detailing the evidence presented at the arbitration hearings. This Court has already ordered that the scope of discovery is bound by the alleged bias and public policy violations as described in Judge Magnuson's Order of December 11, 2008 (Doc. #24). On March 11, 2009, this Court specifically ordered that the general thought process of the arbitrator is not properly within that scope. The Court reviewed these

4

notes in their entirety. Nothing in his notes is relevant to the scope of discovery in this case. The Court does rule on the viability of an arbitrator work product standard per se, (*see Carman v. McDonnell Douglas Corp.*, 114 F.3d 790 (8th Cir. 1997), but in this case the arbitrator's notes of the hearing are not relevant or reasonably calculated to lead to admissible evidence and, therefore, need not be produced.

Any party who intends to appeal this ruling must do so by April 9, 2009. Responses may be submitted by April 13, 2009. The currently and imminently scheduled depositions for April 13 and 14, 2009 shall go forward. If any reversal of this order requires a continued deposition, we will cross that bridge when and if necessary.

Dated this 7th day of April, 2009.            *s/ Jeanne J. Graham*

                                             JEANNE J. GRAHAM
                                             United States Magistrate Judge

## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

KEVIN WILLIAMS and PAT WILLIAMS,   )   Case No. 08-CV-6255-PAM-JJG
   )
         Plaintiffs,   )
   )
v.   )
   )   STIPULATION OF
THE NATIONAL FOOTBALL LEAGUE,   )   DISMISSAL
JOHN LOMBARDO, M.D., BRYAN FINKLE, )   WITHOUT PREJUDICE
and ALDOPHO BIRCH,   )
   )
         Defendants.   )
   )

WHEREAS, on December 3, 2008, Plaintiffs Kevin Williams and Pat Williams

(collectively "Plaintiffs" or "Williamses") filed an action in the District Court of the Fourth

Judicial District of the State of Minnesota for the County of Hennepin against the National

Football League, John Lombardo, Bryan Finkle, and Adolpho Birch (collectively "Defendants");

WHEREAS, on December 4, 2008, Defendants removed the matter from the state court

to this District Court;

WHEREAS, a temporary restraining order issued by the State court was continued by the

District Court and continues in effect;

WHEREAS, discovery has proceeded on the merits in this action; and

WHEREAS, Plaintiffs have agreed to dismiss Dr. Finkle from this action without

prejudice on the condition that he be available as a witness at trial in this matter, as well as in the

companion matter brought by the National Football League Players Association, Docket No. 08-

cv-6254 (PAM/JJG); now therefore

IT IS HEREBY STIPULATED AND AGREED BY THE UNDERSIGNED PARTIES
THAT:

    1.    Dr. Finkle is hereby dismissed as a party in this action without prejudice.

    2.    Dr. Finkle's dismissal from this action shall have no effect on Plaintiffs'
claims against the National Football League, Dr. Lombardo, or Mr. Birch, all of which are
hereby reserved.

    3.    Dr. Finkle will be available as a witness at trial in this matter, as well as in
the companion matter brought by the National Football League Players Association, Docket No.
08-cv-6254 (PAM/JJG).

Dated:  April 14, 2009                            CROWELL & MORING LLP


By:     /s/ Peter R. Ginsberg

Peter R. Ginsberg
590 Madison Avenue – 20th Floor
New York, New York  10022
Telephone:  (212) 223-4000
Facsimile:  (212) 223-4134


*Attorneys for Plaintiffs Kevin Williams and Pat Williams*

2

Dated:  April 14, 2009                    AKIN GUMP STRAUSS HAUER FELD LLP


                                          By:      /s/  Daniel Nash _____

                                             Daniel Nash
                                             1333 New Hampshire Avenue, N.W.
                                             Washington, DC  20036-1564
                                             Telephone:  (202) 887-4067
                                             Fascimile:  (202) 887-4288


                                          *Attorneys for Defendants National Football*
                                          *League, John Lombardo, Bryan Finkle, and*
                                          *Adolpho Birch*



          SO ORDERED:


          _____

          Paul A. Magnuson, U.S.D.J.


                                     3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

## CIVIL HEARING

National Football League Players Association,

        Plaintiff,

v.

National Football League and National Football
League Management Council,

        Defendants.

Kevin Williams and Pat Williams,

        Plaintiffs,

v.

National Football League, John Lombardo, Brian
Finkle, and Adolpho Birch,

        Defendants.

**COURT MINUTES**
BEFORE: Jeanne J. Graham
U.S. Magistrate Judge

| | |
|---|---|
| Case Nos.: | Civ. No. 08-6254 (PAM/JJG) |
| | Civ. No. 08-6255 (PAM/JJG) |
| Date: | April 15, 2009 |
| Court Reporter: | n/a |
| Courtroom: | 3B |
| Time Commenced: | 10:13 a.m. |
| Time Concluded: | 11:24 a.m. |
| Time in Court: | 1 hour and 11 minutes |

**APPEARANCES:**

For National Football League Players Association: David Feher, Mark Jacobson, Christopher Clark, and Ian
Papendick

For Kevin Williams and Pat Williams: Peter Ginsberg, Ronn Kreps, and Christina Burgos

For National Football League, John Lombardo, Brian Finkle, and Adolpho Birch: Joseph Schmitt, Daniel Nash, and
Marla Axelrod

**PROCEEDINGS:**

The Court held a hearing on discovery issues.

For the reasons stated on the record, the Court denied the requests for sanctions made by National Football League
Players Association, Kevin Williams, and Pat Williams.

The Court reserved Thursday, April 23, 2009, at 3:00 p.m., as a potential time for a discovery status conference. The parties must meet and confer before bringing an issue to the Court for resolution.  Any party wishing to be heard must submit a short position letter by 5:00 p.m. on Wednesday, April 22, 2009.

The parties were reminded of their continuing obligations to meet and confer on discovery disputes and to supplement their discovery responses.

   s/Adrienne Meyers   
Signature of Law Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

### CIVIL HEARING

National Football League Players Association,

       Plaintiff,

v.

National Football League and National Football
League Management Council,

       Defendants.

Kevin Williams and Pat Williams,

       Plaintiffs,

v.

National Football League, John Lombardo, Brian
Finkle, and Adolpho Birch,

       Defendants.

### COURT MINUTES AND ORDER
BEFORE: Jeanne J. Graham
U.S. Magistrate Judge

| | |
|---|---|
| Case Nos.: | Civ. No. 08-6254 (PAM/JJG) |
| | Civ. No. 08-6255 (PAM/JJG) |
| Date: | April 23, 2009 |
| Court Reporter: | n/a |
| Courtroom: | 3B |
| Time Commenced: | 3:05 p.m. |
| Time Concluded: | 4:35 p.m. |
| Time in Court: | 1 hour and 30 minutes |

**APPEARANCES:**

For National Football League Players Association: David Feher, Mark Jacobson

For Kevin Williams and Pat Williams: Peter Ginsberg, Ronn Kreps, and Christina Burgos

For National Football League, John Lombardo, Brian Finkle, and Adolpho Birch: Joseph Schmitt, Daniel Nash, and Marla Axelrod

**PROCEEDINGS:**

The Court held a hearing on discovery issues and ruled as follows for the reasons stated fully on the record. The NFL need not produce documents and information in the possession of NFL teams or the Resource Exchange Center. The NFL must respond to the NFLPA's requests for admission on April 29, 2009. The NFLPA must produce all final, prepared documents and information, whether responsive to discovery requests or interrogatories, by April 24, 2009, or as soon thereafter as they are prepared. Documents relating to depositions must be produced

by April 24, 2009, or as soon as possible, but under no circumstances later than one day prior to the relevant deposition. Any remaining categories of documents must be produced no later than April 29, 2009. The Williams Plaintiffs must answer all interrogatories, including contention interrogatories, by 10:00 p.m. on Saturday, April 25, 2009. The summary judgment briefing schedule remains the same, with the addition of May 7, 2009, for supplemental supporting memoranda.


                                                    s/Adrienne Meyers
                                                    Signature of Law Clerk

**Full docket text:**

TEXT ONLY ENTRY - ORDER granting [124] Amended Motion for Admission Pro Hac Vice of attorney Marla S. Axelrod for John Lombardo, M.D., Brian Finkle, Adolpho Birch and The National Football League. Fee paid; receipt number 4-034302. Approved by Magistrate Judge Jeanne J. Graham on 5/5/09. (MMC)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/03/2010 14:17:03 | | | |
| **PACER Login:** | hl0164 | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

National Football League Players
Association,

          Plaintiff,

v.

National Football League and National
Football League Management Council,

          Defendants.

Kevin Williams and Pat Williams,

          Plaintiffs,

v.

National Football League, John
Lombardo, Brian Finkle, and Adolpho
Birch,

          Defendants.

Civil No. 08-6254 (PAM/JJG)

**O R D E R**

Civil No. 08-6255 (PAM/JJG)

District of Minnesota Local Rule 16.5(a)(2) mandates that every civil case shall be

set for a settlement conference before a magistrate judge within forty-five days of trial.

Rule 16.5(b)(2) permits a judge to order parties to engage in alternate dispute resolution

before a non-judicial mediator.

Accordingly, **IT IS HEREBY ORDERED** that the parties in these two cases,

Civil No. 08-6254 and Civil No. 08-6255, shall either (1) attend a settlement conference

before Magistrate Judge Jeanne J. Graham on Tuesday, June 2, 2009, or (2) engage in a form of alternative dispute resolution before a mutually acceptable, non-judicial mediator on or before Friday, May 29, 2009.

Magistrate Judge Graham will issue a separate Notice of Settlement Conference with specific instructions to the parties.

Dated:   May 6, 2009

s/Paul A. Magnuson
Paul A. Magnuson
United States District Judge

2

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kevin Williams and Pat Williams,                    Civil No. 08-6255 (PAM/JJG)

                    Plaintiffs,

v.                                                          **ORDER**

National Football League, John
Lombardo, M.D., Brian Finkle,
and Adolpho Birch,

                    Defendants.

_____

This matter is before the Court on Plaintiffs' Motion to Increase the Word Limit for

their reply memorandum.  Plaintiffs seek leave to file a memorandum that exceeds the word

limit by 776 words.

**IT IS HEREBY ORDERED** that Plaintiffs' Motion (Docket No. 142) is

**GRANTED**.

Dated: Tuesday, May 12, 2009

                                   *s/ Paul A. Magnuson*
                                   Paul A. Magnuson
                                   United States District Court Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

National Football League                                    Civil No. 08-6254 (PAM/JJG)
Players Association,

                        Plaintiff,

v.

National Football League, and
National Football League
Management Council

                        Defendants.                    **MEMORANDUM AND ORDER**
_____

Kevin Williams and Pat Williams,                           Civil No. 08-6255 (PAM/JJG)

                        Plaintiffs,

v.

National Football League, John
Lombardo, M.D., Brian Finkle,
and Adolpho Birch,

                        Defendants.
_____

        This matter is before the Court on cross-Motions for Summary Judgment filed by all

parties in these related cases.

## BACKGROUND

        In July and August 2008, players in the National Football League ("NFL") submitted

to random testing for steroids and other substances in accordance with the NFL's Policy on

Anabolic Steroids and Related Substances (the "Policy").   (Greenspan Decl. Ex. 1

(hereinafter "Policy") at 4 ("Each week during the preseason and regular season, ten (10) players on every team will be tested.").)  The Policy's testing regimen is administered by Defendant Dr. John Lombardo, who is denominated the "Independent Administrator" of the Policy.  (Id. at Appx. B.)  As the Independent Administrator, Lombardo has "the sole discretion to make determinations regarding the method by which players will be subjected to testing each week; selecting which players will be tested each week; deciding when tests will be administered; . . . analyzing test results; . . . and certifying violations for disciplinary or administrative action."  (Id. ¶ 2.)  He is also responsible for "consult[ing] with players and Club physicians, oversee[ing] the development of educational materials, [and] participat[ing] in research on steroids . . . ."  (Id.)

In late September and early October 2008, five players—Kevin Williams and Pat Williams of the Minnesota Vikings and Charles Grant, Deuce McAllister, and Will Smith of the New Orleans Saints—were informed that their samples had tested positive for bumetanide, a prescription diuretic that is banned under the Policy because it may mask the presence of steroids.[1]  The Policy provides that "[t]he first time a player violates this Policy by testing positive [for a banned substance] . . . he will be suspended without pay for a minimum of four regular and/or postseason games."  (Id. ¶ 6 (emphasis in original).)  Thus, the NFL suspended the players for four games.

The players appealed their suspensions.  Under the terms of the Policy, appeals are

---

[1]  There is no allegation that any of the players tested positive for any steroid.

2

presented at a hearing before the Commissioner or his designee at which the player may be represented by counsel and may present evidence. (Id. ¶ 10.) The Policy further provides that the Hearing Officer's written decision "will constitute a full, final, and complete disposition of the appeal" and "will be binding on all parties." (Id.) The Commissioner designated Defendant Jeffrey Pash, the NFL's chief legal officer, to be the Hearing Officer in the appeals.[2]

At the hearing, the players presented evidence that they took an over-the-counter dietary supplement called "StarCaps," which ostensibly provides weight-loss benefits. Although bumetanide is not listed as an ingredient in StarCaps, the evidence established that the StarCaps the players took contained bumetanide. Thus, the players all unknowingly ingested bumetanide.

Under normal circumstances, the unknowing ingestion of a banned substance will not excuse a violation of the Policy. The Policy warns repeatedly that players are responsible for what is in their bodies, and states that "a positive test result will not be excused because a player was unaware that he was taking a [banned substance]." (Id. ¶ 3.E.) The players argued, however, that theirs was not a normal circumstance. The evidence established that Lombardo and the NFL knew in 2006 that at least some StarCaps capsules contained bumetanide. Indeed, after several players tested positive for bumetanide after taking

_____

[2] The Vikings players' appeal was heard together and the Saints players' appeal was heard together. Thus, there are two hearings and arbitration records at issue. However, because the parties stipulated that the evidence presented at one hearing would be available for consideration at the other hearing, the Court will discuss a single "hearing."

3

StarCaps in 2006, Lombardo and the NFL asked an independent laboratory to analyze StarCaps for the presence of bumetanide.[3] The laboratory found bumetanide in StarCaps and informed Birch and Lombardo of the results. The laboratory also published the results of the tests in the November/December 2007 Journal of Analytical Toxicology. After this testing, Defendant Adolpho Birch, the NFL's Vice President of Law and Labor Policy, informed the National Football League Players Association ("NFLPA" or "Union") that players were prohibited from providing endorsements for Balanced Health Products, the distributor of StarCaps. (Saints players Arbitration R. Ex. 53.) Birch also sent a memorandum to each team's president, general manager, and head athletic trainer that players were not to endorse Balanced Health Products. (Id. Ex. 52.) Neither Lombardo nor Birch, however, told the teams, trainers, agents, or players that StarCaps contained bumetanide or any banned substance. Moreover, despite the lab director's request that the NFL report the information about StarCaps to the Food & Drug Administration ("FDA"), Birch declined to do so. (Vikings players Appeal Hr'g T. at 238 (Lombardo Test.).)

In decisions dated December 2, 2008, Mr. Pash upheld the suspensions of all five players. (Saints players Arbitration R. Ex. 1; Vikings players Arbitration R. Ex. 1.) He discussed the Policy's position on dietary supplements, noting that players received repeated warnings that over-the-counter supplements might contain ingredients not listed on the label and that a positive test would not be excused because the supplement's ingredient list did not

---

[3] Lombardo did not refer for discipline any players who tested positive for bumetanide in 2006. (Lombardo Dep. at 38.)

4

disclose the presence of a banned substance. (See, e.g., Vikings players Arbitration R. Ex.

1 at ¶¶ 7-9 (discussing numerous memoranda to players regarding supplements).)  Mr. Pash

then turned to the language of the Policy as applied to the facts at hand:

> There is no question that the policy embodies a collectively-bargained rule of strict liability—a rule that players alone are responsible for what is in their bodies; that inadvertent or unknowing use of a prohibited substance will not excuse a positive test; and that supplements are used at the player's own risk.  Similarly, there is no question that at the time that he used StarCaps as well as at the time of the hearing, each player clearly understood that rule and what it means.

(Id. at 6.)

None of the players contested their positive test results.  They instead argued that

those positive results should be excused "because the NFL and Dr. Lombardo were aware

that StarCaps contained an undisclosed banned substance, bumetanide, but did not

specifically advise NFL players of this fact." (Id.) As Mr. Pash put it in his decisions on the

appeals, "even though [none of the] player[s] contacted Dr. Lombardo about StarCaps (as the

Policy directs them to do), they contend that where specific evidence is available about a

particular product, a specific warning is required, and the failure to extend such a warning

should excuse any violation of the Policy associated with that product." (Id.)  Mr. Pash

found that the players' position "flies in the face of nearly two decades of history" because

the Policy has always adhered to the "fundamental principle" of strict liability that "puts the

burden on players to be responsible and accountable for what is in their bodies." (Id. at 7)

Mr. Pash thus concluded that the language of the Policy required that the suspensions be

upheld. (Id. at 9.)

5

Kevin Williams and Pat Williams filed suit in Minnesota state court the day after Mr. Pash issued his decision. The state-court judge issued a temporary restraining order ("TRO") blocking the suspensions. The next day, the NFLPA, on behalf of the Saints players and the Williamses, brought suit in federal court and the NFL removed the Williamses' state lawsuit to federal court. This Court ultimately granted the NFLPA's motion for a preliminary injunction and declined to overturn the TRO entered in state court, thus allowing the players to continue playing until the end of the NFL's season. The Court found that the players and Union had shown a "substantial question" on the merits of their claim that Mr. Pash was biased and on their claim that Mr. Pash's decision was contrary to public policy (Order of Dec. 11, 2008, at 12, 16), but that the players and Union had failed to show a substantial question on the merits of their claim that the decisions did not draw their essence from the Policy. (Id. at 14.) These determinations were necessarily preliminary, however, and do not constitute law of the case for the purposes of the instant Motions. SEC v. Zahareas, 272 F.3d 1102, 1105 (8th Cir. 2001).

After granting the preliminary relief the players and Union requested, the Court ordered the parties to engage in expedited discovery and thereafter to submit dispositive motions, if appropriate. Despite the Court's clear guidance that discovery was necessary, the parties (and the NFL in particular) engaged in what can only be called gamesmanship, requiring the Magistrate Judge to extend far greater oversight of the discovery process than should otherwise have been required. Not only are such obstructive litigation tactics unnecessary and expensive, but they were contrary to the explicit dictates of the Court. The

parties are fortunate that the Magistrate Judge so ably shepherded discovery and mediated the parties' disputes. This Court would not have looked favorably on the parties' conduct should it have had occasion to consider the consequences of that conduct.

Discovery revealed additional facts not found in the arbitration record. After the Williamses were informed of their positive test results, they threatened to bring a lawsuit claiming, among other things, a violation of the Americans with Disabilities Act. In response to these threats, Mr. Pash, in his role as the NFL's chief legal officer, gave legal advice to the NFL and to the Vikings. According to the NFLPA and the Williamses, Mr. Pash's early involvement in the subject matter of the arbitrations further bolsters their claim that Mr. Pash was biased and should not have arbitrated the appeals.

Discovery also revealed a memorandum from the NFLPA to players' agents regarding the distributor of StarCaps. In that memorandum, the NFLPA informed the agents that "Balanced Health Products, which distributes StarCaps, has been added to the list of prohibited dietary supplement companies. Players are prohibited from participating in any endorsement agreement with this company or using any of their products." (12/20/2006 Robinson memo (emphasis added).) The NFL contends that this memorandum eviscerates the players' claims that they were not informed about StarCaps prior to their positive tests.

The final relevant evidence surrounds the first "cluster" of positive bumetanide tests in 2006. These positive tests and the tested players' statements that they took StarCaps prior to the positive tests gave rise to Lombardo's request that a laboratory analyze StarCaps for the presence of bumetanide, as discussed above. As noted, Lombardo did not refer for

discipline any player who tested positive for bumetanide in 2006.  Sometime in late 2006 or 2007, Birch communicated with Lombardo about Lombardo's duties under the Policy. (Lombardo Dep. at 114-15, 118; Birch Dep. at 45-46.)  Birch told Lombardo that Lombardo did not have the discretion under the Policy to determine whom to refer for discipline, but only to determine whom to test.  (Lombardo Dep. at 114-15; Birch Dep. at 45-46.)  In other words, Birch told Lombardo that if a player tested positive for a banned substance then, assuming the player had no therapeutic reason to be taking the banned substance, the player must be referred to the NFL for discipline.  (See Birch Dep. at 65 ("I advised [Lombardo] that if this situation comes up, he is to refer those matters for discipline.").)  The players contend that this communication between Birch and Lombardo constitutes interference with Lombardo's discretion and is specifically prohibited by the Policy.

**B.   Claims**

The NFLPA raises a single claim in its Complaint, seeking to vacate the arbitration award under a theory of breach of contract.  The NFLPA contends that the arbitration awards must be overturned because they are contrary to public policy, condone the NFL's breaches of fiduciary duty to the players, are contrary to the essence of the Policy, and were rendered by a biased arbitrator.

The Williamses' Amended Complaint contains thirteen counts, all brought under Minnesota common law or statutes.  Count I seeks an injunction against the Williamses' suspensions.  Count II alleges a breach of fiduciary duty.  Count III contends that the NFL aided and abetted breaches of fiduciary duty.  Count IV raises a violation of public policy.

8

Counts V and VI are claims of fraud and constructive fraud. Counts VII, VIII, and IX raise negligent misrepresentation, negligence, and gross negligence claims. Count X alleges intentional infliction of emotional distress ("IIED"). Count XI contends that the NFL is vicariously liable for the torts committed by the individual Defendants. Count XII asserts that Defendants violated Minnesota's Drug and Alcohol Testing in the Workplace Act ("DATWA"), Minn. Stat. § 181.950 et seq., and Count XIII contends that Defendants violated Minnesota's Consumable Products Act ("CPA"), Minn. Stat. § 181.938. The Amended Complaint claims damages in excess of $10 million. (Am. Compl. ¶ 105.)

## C.   Standard of Review

### 1.   Preemption

The NFLPA's claims arise under § 301 of the Labor Management Relations Act ("LMRA"), which provides for federal court jurisdiction over all actions for the breach of a labor contract such as the Policy. 29 U.S.C. § 185(a). Likewise, the Williamses' common-law claims arise under § 301, although they are brought as state-law claims.

Section 301 preempts nearly every state cause of action involving a collective bargaining agreement. See Oberkramer v. IBEW-NECA Serv. Ctr., Inc., 151 F.3d 752, 756 (8th Cir. 1998) (noting that claims that "are 'substantially dependent' upon an analysis of the terms or provisions of a collective bargaining agreement or are 'inextricably intertwined' with consideration of the terms or provisions of a collective bargaining agreement" are preempted by § 301) (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213, 220 (1985)). There can be no question that the Williamses' common-law claims depend on an

9

analysis of the terms of the Policy and are inextricably intertwined with the Policy. They are therefore preempted and the Court will construe these claims as § 301 claims. See Allis-Chalmers, 471 U.S. at 220 (holding that where state-law claim requires analysis of terms of labor agreement, court may either treat claim as a § 301 claim or dismiss claim as preempted).

However, the Williamses' statutory claims are different from the common-law claims. The statutory claims exist independently of the Policy, because even if the NFL was acting pursuant to the Policy, those actions may still violate state law. "Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. . . . [Therefore] it would be inconsistent with congressional intent . . . to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Allis-Chalmers, 471 U.S. at 212. Both DATWA and the CPA proscribe conduct or establish rights and obligations that exist independently of the Policy, and thus those claims are not preempted.

### 2.   Federal Arbitration Act

The collectively bargained-for Policy requires the parties to submit appeals of discipline decisions to arbitration. Thus, this Court's review of the arbitrator's decision is circumscribed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, which allows a court to set aside an arbitration award only if that award "was procured by fraud, corruption, or undue means," § 10(a)(1), or when "there was evident partiality in the arbitrators." Id. § 10(a)(2). Both the NFLPA and the Williamses argue that the Court should set aside the

10

arbitration awards at issue because of the NFL's alleged bad conduct in not informing players about the presence of bumetanide in StarCaps and because of arbitrator Pash's alleged partiality. They contend that public policy mandates that arbitration awards that condone breaches of fiduciary duties be vacated. They also argue that the awards violate the essence of the Policy and must be set aside on that basis.

The Court's review of the arbitration decision is extremely limited. The Court must afford the arbitrator "an extraordinary level of deference" and must confirm the award as long as "the arbitrator was even arguably construing or applying the contract and acting within the scope of his authority." Stark v. Sandberg, Phoenix & von Gontard, P.C., 381 F.3d 793, 798 (8th Cir. 2004). Further, the Court may vacate the decisions "only for the reasons enumerated in the FAA." Crawford Group, Inc. v. Holekamp, 543 F.3d 971, 976 (8th Cir. 2008) (citing, inter alia, Hall St. Assocs., L.L.C. v. Mattel, Inc., 128 S. Ct. 1396, 1403 (2008)).

**D.   Merits**

**1.   Essence of the CBA**

As the Court noted in the Order granting the preliminary injunction, an arbitration award that does not "draw[] its essence from the collective bargaining agreement" is not entitled to deference from the reviewing Court. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987). The Court's authority to reverse an arbitration award for failure to comply with the Policy is "exceptionally narrow." Coca-Cola Bottling Co. of St. Louis v. Teamsters Local Union No. 688, 959 F.2d 1438, 1440 (8th Cir. 1992). "[A]s long as the

11

arbitrator is even arguably construing or applying the [Policy] and acting within the scope of his authority," the Court's determination that the arbitrator "committed serious error does not suffice to overturn his decision." <u>Misco</u>, 484 U.S. at 38.

The NFLPA has abandoned the arguments it raised unsuccessfully in the preliminary injunction hearing on this point. (<u>See</u> Order of Dec. 11, 2008, at 13-14.) It now contends that Birch's alleged interference with Lombardo's discretion means that the awards violate the essence of the Policy. Essentially, the Union's argument is that, if Birch had not interfered with Lombardo's ability to exercise his discretion to refer players for discipline, Lombardo would not have referred these players for discipline. They maintain that the Policy requires that neither the NFL nor the NFLPA influence Lombardo's determination to refer players for discipline. (<u>See</u> Policy at 2-3.)

The provision prohibiting any influence on Lombardo was added in 2008, at least one year after Birch's alleged interference with Lombardo. Thus, it is difficult to ascertain how Mr. Pash's decision sanctioned any violation of the Policy when what Birch did was not in contravention of the Policy at the time he did it.

However, even if Birch impermissibly interfered with Lombardo's discretion, and even if absent that interference the players here would not have been disciplined, Mr. Pash's decision still draws its essence from the Policy. The Policy is unequivocal: players are responsible for what is in their bodies, and inadvertent ingestion of a banned substance will not excuse a positive test result. Thus, although it may have been Lombardo's personal, unofficial policy not to refer positive bumetanide tests for discipline prior to his conversation

12

with Birch, that unofficial policy is not at issue here. What is at issue is the Policy itself. There can be no doubt that Mr. Pash's decision construed the language in the Policy, applied the language of the Policy, and that Mr. Pash acted within the scope of his discretion under the Policy. Thus, his decisions do not fail to draw their essence from the collective bargaining agreement.

## 2.    Partiality of Hearing Officer

The FAA provides specifically that an arbitration award may be set aside "where there was evident partiality or corruption in the arbitrator[]." 9 U.S.C. § 10(a)(2); see also Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1358-59 (6th Cir. 1989) (applying FAA's "evident partiality" standard to arbitration award involving collective bargaining agreement); Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds, 748 F.2d 49 (2d Cir. 1984) (same). Because the NFLPA agreed in the Policy that either the Commissioner or his designee would preside over appeal hearings, the NFLPA agreed to a certain amount of partiality in the arbitrator. Thus, "the award should be confirmed unless the objecting party proves that the arbitrator's partiality prejudicially affected the award." Winfrey v. Simmons Foods, Inc., 495 F.3d 549, 551 (8th Cir. 2007).

In the Order granting the preliminary injunction, the Court determined that the players had established a substantial question as to Mr. Pash's partiality. (Order of Dec. 11, 2008, at 12.) The Court's determination rested on two factual bases: first, counsel's representation that at one appeal hearing Mr. Pash refused to allow questioning of Birch, his subordinate, as to Mr. Pash's (or his office's) involvement in the StarCaps investigation and its aftermath;

13

and second, the fact that Mr. Pash did not discuss Lombardo's testimony that if he had been asked about StarCaps, he would have merely warned the player away from supplements in general but would not have told the player about the presence of bumetanide in StarCaps. Further discovery has established that neither basis is borne out by the record.

The Court has reviewed Birch's testimony from the appeal hearings. There is nothing in that testimony or in Mr. Pash's rulings regarding that testimony that in any way evidences bias on the part of Mr. Pash. The objection noted by counsel in the preliminary injunction hearing simply does not exist.

Similarly, a full reading of Lombardo's hearing testimony establishes that he was willing to tell players about the presence of bumetanide in StarCaps. In the Saints players' hearing, Lombardo was asked why he would not tell a player that StarCaps contains bumetanide. He responded, "I would tell them that they have been found to have Bumetanide in it." (Saints players Hr'g T. 114.) He reiterated, "I would tell them that they were found to have a diuretic in them, which is banned." (Id. at 115.) Mr. Pash's discussion of Lombardo's testimony is therefore full and fair, and the players and the Union cannot establish bias on this basis.

The players and the Union now argue that additional evidence establishes Mr. Pash's bias. They claim that Mr. Pash "secretly" gave legal advice to the NFL and to the Vikings regarding the subject matter of the appeals, and that he was therefore disqualified from acting as a hearing officer. Mr. Pash is the NFL's chief legal officer. As such, he will undoubtedly be asked to give legal advice to the NFL or to its member teams when a player threatens legal

14

action. The fact that Mr. Pash gave advice in this situation was clearly foreseeable, and having not objected to Mr. Pash serving as the arbitrator, the players and the Union cannot now complain about his service. Moreover, the evidence shows that not only did the players and the Union know that Mr. Pash was giving legal advice to the NFL, but they requested that he serve as Hearing Officer specifically because of his involvement. Even if Mr. Pash's involvement could somehow establish bias, which is doubtful, the players and the Union have waived any such claim. Kiernan v. Piper Jaffray Cos., 137 F.3d 588, 593 (8th Cir. 1988).

Mr. Pash was not a partial arbitrator and the Court will not set aside his decision on this basis.

**3.    Public policy**

The NFLPA argues that Mr. Pash's decisions must be set aside because they sanction Lombardo's and the NFL's breaches of fiduciary duty. Specifically, the NFLPA contends that once Lombardo and the NFL knew that StarCaps contained bumetanide, they owed a duty under New York law to give the players that information. The Williamses' fiduciary duty claims arise under Minnesota law, but otherwise are similar to the NFLPA's claims. Both the Union and the players argue that there is an explicit public policy against breaches of fiduciary duties and that the decisions should be overturned because they are contrary to this public policy.

Where, as here, the decisions at issue draw their essence from the parties' collectively bargained agreement, the Court must treat those decisions as if they represented an

15

agreement between the NFLPA and the NFL as to whether the Policy requires the disclosure

the Union and the players contend was required here. Eastern Assoc. Coal Cos. v. United

Mine Workers of Am., 531 U.S. 57, 62 (2000). Put differently, the decisions are "not

distinguishable from the contractual agreement." Id. The Court must then decide whether

the Policy as interpreted by Mr. Pash "violates some explicit public policy" that is "well

defined and dominant" and can be "ascertained by reference to the laws and legal precedents

and not from general considerations of supposed public interests." W.R. Grace & Co. v.

Local Union 759, 461 U.S. 757, 766 (1983). The question is not whether any behavior by

the parties to the Policy violates public policy, but rather whether the Policy itself violates

public policy. MidAm. Energy Co. v. Int'l Bhd. of Elec. Workers Local 499, 345 F.3d 616,

620 (8th Cir. 2003). If the Policy does violate an explicit public policy, the Court is "obliged

to refrain from enforcing it." W.R. Grace, 461 U.S. at 766. To prevail on this claim the

Union and the players must therefore show that a fiduciary duty exists and was breached, that

fiduciary duties are an explicit public policy, and that the Policy as interpreted by Mr. Pash

violates that public policy by condoning the breach of fiduciary duties.

   The NFLPA and the players argue that Defendants breached their duties to the players

in two ways. First, they contend that Lombardo's statement that he would not have told a

player inquiring about StarCaps that StarCaps contains bumetanide breached not only

Lombardo's fiduciary duties to the players but also Lombardo's duties as a physician.

Second, they claim that the NFL Supplement Hotline (the "Hotline")[4] gave incorrect information to players about StarCaps and that the NFL, acting through Birch, did nothing to correct the Hotline's actions.

As discussed above, Lombardo's testimony establishes that, had a player called him to inquire about StarCaps, Lombardo would have told the player that StarCaps contained bumetanide. There can be no claim of breach of fiduciary duty arising out of Lombardo's alleged refusal to divulge that information. In addition, Lombardo's decision not to publish specific warnings about StarCaps does not violate his duties to players. Lombardo testified that he decided to send a general warning about weigh-loss supplements rather than about StarCaps in particular because "the problem is the whole area of weigh reduction products." (Lombardo Dep. at 161.) Thus, as Mr. Pash found, Lombardo exercised his discretion under the Policy to educate players, and did so in a general way because he believed that all weigh-reduction products, not just StarCaps, carried risks. The NFLPA and the players may disagree with Lombardo's conclusion, but under the terms of the Policy, the decision on this issue was his to make. Absent a showing that the decision was outrageous or without any foundation, the Union and the players cannot establish that the decision constituted a violation of whatever fiduciary duties Lombardo may have had.

The NFLPA also contends that the Hotline gave inaccurate information to players regarding StarCaps, that Birch knew the Hotline was giving inaccurate information and did

---

[4] The NFL and the NFLPA created the Hotline to provide players "with confidential and accurate information about" supplements. (Greenspan Decl. Ex. 19.)

17

nothing to correct the situation, and that this constitutes a breach of the NFL's fiduciary duties to the players.

The evidence shows that Birch communicated with the Hotline in 2006 regarding StarCaps, asking whether the Hotline had received inquiries about this particular substance. The Hotline informed Birch that one player had inquired and had been told that, while StarCaps was not banned, the player should avoid taking any supplement because the label might not be accurate and it might in fact contain a banned substance. (Birch Dep. at 106.) Birch testified that he did not ask the Hotline to give any more specific information to players about StarCaps. (Id. at 110.)

The information the Hotline gave the player is undisputedly accurate. The NFLPA and the players contend that the Hotline should have informed players about the presence of bumetanide in StarCaps once the NFL was aware that StarCaps contained bumetanide. While this specific warning might have been preferable, it is not a breach of fiduciary duties to tell players that all supplements are risky and that players should not rely on any supplement's list of ingredients because that list might be incomplete. The NFL's decision regarding the warnings to give players is not unreasonable.

The administration of the Hotline presents squarely the troubling issues brought forward by this case. There is no doubt that it would have been preferable for the NFL to communicate with players specifically about the presence of bumetanide in StarCaps. The NFL's failure to do so is baffling, but it is not a breach of the NFL's duties to its players. It is clear that this situation arose because the parties to these cases do not trust each other. The

18

NFL does not trust the Union or the players. The players and the Union do not trust the NFL. No one believes that the opposing parties have any common interests. The situation is deplorable and leads to suspicion and the sort of no-holds-barred litigation tactics so clearly on view here.

Unlike the parties, the Court does not view each party's actions through the lens of suspicion. Through the Hotline, the NFL was attempting to tell players what they already knew: they should not take dietary supplements. NFL players are adults. They are warned repeatedly not to take dietary supplements and that such supplements may cause a positive test for a banned substance. (Greenspan Decl. Exs. 17-20; Policy Appx. F.) It is no doubt true that none of the players here would have taken StarCaps if the NFL had issued a memo saying that StarCaps contained bumetanide. It is also likely that those players, having been warned not to take StarCaps in particular, would have turned to a different supplement to accomplish their weight-loss goals. There is certainly no guarantee that another supplement is any less likely to have a banned substance than is StarCaps, but despite the NFL's and Lombardo's repeated warnings about supplements, players continue to use them.

Mr. Pash determined that the Policy makes players responsible for what is in their bodies. He noted that, if the Union disagreed with this apportionment of liability, it is free to bargain for a different Policy. (Viking players Arbitration R. at 8.) The Union is, in fact, free to bargain for a clause that requires the NFL to inform players specifically when a supplement is found to contain a banned substance. The Policy as written does not contain such a requirement, however. More importantly, the absence of such a requirement does not

sanction any breach of fiduciary duties on the part of the NFL or Lombardo.

Having failed to establish that a genuine issue of material fact exists as to whether the NFL or Lombardo breached any fiduciary duties, the NFLPA and the Williamses cannot succeed on their claim that the appeal decisions must be set aside as contrary to public policy. Thus, the NFLPA's Complaint must be dismissed. The Williamses, however, raise claims under Minnesota law that, as noted above, are not preempted by § 301. The claims are discussed below.

### 4.    DATWA and CPA

DATWA sets forth explicit guidelines regarding when and how Minnesota employers can require their employees to submit to drug testing. See Minn. Stat. § 181.951, subd. 1 ("An employer may not request or require an employee or job applicant to undergo drug and alcohol testing except as authorized in this section."). Among other things, DATWA provides that an employee may not be disciplined on the basis of an initial positive test and requires the employer to allow the employee the right to explain a positive test. Id. § 181.953(6) and (10)(a). The NFL concedes that its steroid testing procedures do not comply with the letter of Minnesota law, but argues that the differences are negligible and do not require the Court to invalidate the Williamses' positive tests for bumetanide. The NFL argues that DATWA allows for collective bargaining agreements to provide for protections that exceed DATWA's protections, and further contends that, whatever the merits of the Williamses' DATWA claims, they have failed to exhaust their administrative remedies and thus are precluded from bringing claims under DATWA.

20

The CPA prohibits a Minnesota employer from taking an adverse action against an employee because the employee "has engaged in the use or enjoyment of lawful consumable products, if the use or enjoyment takes place off the premises of the employer during nonworking hours." Minn. Stat. § 181.938, subd. 2. The Williamses argue that the CPA prohibits the NFL from disciplining them for taking StarCaps, which are a lawful product and were consumed outside of working hours. The NFL responds that the CPA allows employers to restrict the consumption of lawful products if that restriction is related to a bona fide occupational requirement, id. subd. 3(a)(1), and that the Policy's restrictions on the use of steroids and masking agents clearly falls within this exception.

Because the Williamses' state-law DATWA and CPA claims are the only claims remaining in the case, the Court must determine whether it has jurisdiction to consider the merits of the claims. The Williamses' Complaint was removed to this Court on the basis of the federal question jurisdiction provided by the preemption provision of the LMRA. The Court has determined, however, that all § 301 claims must be dismissed. Therefore, the Court does not have federal question jurisdiction over the Williamses' Amended Complaint. In addition, jurisdiction may not be founded on diversity of citizenship. The Williamses are residents of the state of Minnesota (Am. Compl. ¶¶ 2-3), and the NFL, as an unincorporated association of the member teams, is a citizen of each state in which its members are citizens. Iowa Ins. Guar. Ass'n v. New England Ins. Co., 701 F. Supp. 177, 179 (S.D. Iowa 1988). One of the member teams of the NFL is the Minnesota Vikings, which has Minnesota citizenship. Thus, there is not complete diversity.

21

The Williamses urge this Court to exercise supplemental jurisdiction over their state-law claims.  See 28 U.S.C. § 1367(c) (allowing but not requiring the Court to decline to exercise supplemental jurisdiction over a state law claim when it "has dismissed all claims over which it has original jurisdiction").  While the Court agrees with the Williamses that the case is not in a preliminary stage and that the exercise of jurisdiction is within the Court's discretion, it is also true that, with respect to the state-law claims, the issues are not fully developed and, at least in this Court's opinion, genuine issues of material fact remain to be resolved.  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("When federal claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction . . . .").  Perhaps most important, however, is the fact that both DATWA and the CPA are statutes reflecting the public policy of the state of Minnesota.  As such, it is more appropriate for a state court to make the sorts of decisions about the applicability of those statutes to the facts at hand.  See, e.g., Ankenbrandt v. Richards, 504 U.S. 689, 705-706 (1992) (federal court may decline to hear a case when it "presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.'") (quoting Colorado River Conservation Dist. v. United States, 424 U.S. 800, 814 (1976)).  The Court therefore declines to exercise supplemental jurisdiction over the Williamses' DATWA and CPA claims and will remand those claims to state court.

**CONCLUSION**

No genuine issues of material fact remain as to whether Defendants violated § 301 of

22

the LMRA. Thus, the NFLPA's claims and the Williamses' common-law claims must be dismissed. The Court declines to exercise supplemental jurisdiction over the Williamses' state statutory claims.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment in Civ. No. 08-6254 (Docket No. 128) is **GRANTED**;

2. Defendants' Motion for Summary Judgment in Civ. No. 08-6255 (Docket No. 111) is **GRANTED in part** and **DENIED in part**;

3. Plaintiff's Motion for Summary Judgment in Civ. No. 08-6254 (Docket No. 123) is **DENIED**;

4. Plaintiffs' Motion for Summary Judgment in Civ. No. 08-6255 (Docket No. 105) is **DENIED**;

5. In Civ. No. 08-6255, Plaintiffs' common-law claims are **DISMISSED with prejudice**, and the remaining claims are **REMANDED** to Minnesota state court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   May  22, 2009

s/*Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION,                          CIVIL NO. 08-6254 (PAM/JJG)

      Plaintiff,

v.                                                            **ORDER**

NATIONAL FOOTBALL LEAGUE and
NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL,

      Defendants.

---

KEVIN WILLIAMS and PAT WILLIAMS,
                               Civil No. 08-6255 (PAM/JJG)

      Plaintiffs,

v.

THE NATIONAL FOOTBALL LEAGUE,
JOHN LOMBARDO, M.D.,
BRIAN FINKLE, and ADOLPHO BIRCH,

      Defendants.

---

On May 22, 2009, the order on the cross Motions for Summary Judgment (Doc. Nos. 163 and 152, respectively) was issued.  Based on the findings in that order,

**IT IS HEREBY ORDERED** that the settlement conference scheduled for June 2, 2009 has been **STRICKEN**.

Dated:  May 27, 2009                      s/ *Jeanne J. Graham*

                               JEANNE J. GRAHAM
                               U.S. Magistrate Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| National Football League Players Association, | Civ. No. 08-6254 (PAM/JJG) |
| **Plaintiff,** | |
| v. | O R D E R |
| National Football League and National Football League Management Council, | |
| **Defendants.** | |

| | |
|---|---|
| Kevin Williams and Pat Williams, | Civ. No. 08-6255 (PAM/JJG) |
| **Plaintiffs,** | |
| v. | O R D E R |
| National Football League, John Lombardo, Brian Finkle, and Adolpho Birch, | |
| **Defendants.** | |

JEANNE J. GRAHAM, United States Magistrate Judge

This Court has received an informal request from Brian Murphy, a reporter with the St. Paul Pioneer Press, to unseal certain documents. The request concerns Documents 106, 107, 108, 109, 113, 125, 126, 130, 131, 132, 136, 144, and 145 in Civil Case No. 08-6254.

All of the requested documents were filed under seal pursuant to the protective order entered in the case. The placeholders for Documents 106, 107, 108, and 109 do not reveal the subject matter of those documents, and doing so now could compromise the protected nature of the documents. It is sufficient to note that the information contained in those documents was

determined to be privileged by this Court in an Order dated April 7, 2009. Although the placeholder for Document 113 does not disclose the letter's contents, its subject matter may be inferred from the letter filed in response the following day. The placeholders for Documents 125, 126, 130, 131, 132, 136, 144, and 145 indicate that these documents relate to summary judgment motions.

In the District of Minnesota, the typical practice for a nonparty seeking to obtain documents filed under seal is to file a formal motion for intervention under Federal Rule of Civil Procedure 24(b) for the purpose of modifying the protective order. *See In re Guidant Corp. Implant. Defib. Prods. Liab. Litig.*, 245 F.R.D. 632, 635 (D. Minn. 2007); *In re Baycol Prods. Litig.*, 214 F.R.D. 542, 543 (D. Minn. 2003). This is true even after a case is closed. *See Cardiac Pacemakers, Inc. v. Aspen II Holding Co.*, Civil No. 04-4048 (DWF/FLN), 2006 WL 3079410, at *3 (D. Minn. Oct. 24, 2006) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1047 (D.C. Cir. 1998)). If intervention is permitted, the nonparty must make some showing why the protective order should be modified, but the burden to show why the documents should remain sealed may shift to the parties, depending on the nature of the documents and proceedings. *See, e.g., In re Guidant Corp.*, 245 F.R.D. at 636. In any case, the parties will have an opportunity to respond to both requests.

If Mr. Murphy opts to proceed by formal motion, the Honorable Paul A. Magnuson, United States District Judge, will decide whether to hear the matter or refer it to this Court.


Dated: September 18, 2009                    s/ *Jeanne J. Graham*
                                            _____
                                            JEANNE J. GRAHAM
                                            United States Magistrate Judge

# UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

## APPEAL BRIEFING SCHEDULE ORDER

Appeal No.    08-3974  Kevin Williams, et al v. National Football League, et al

Date:        December 24, 2008

## APPEAL REQUIREMENTS

1. Complete and file immediately:
   A. Appeal Information Form. See 8ᵗʰ Cir. R. 3B.
   B. Corporate Disclosure Statement. See 8ᵗʰ Cir. R. 26.1A.
   C. Entry of Appearance Form.
      Appeal Information Forms and Appearance Forms are available at:
      www.ca8.uscourts.gov/newcoa/forms.htm

2. Prepare the Record on Appeal:
   A. Within 10 days, confer with opposing counsel and determine the method of Appendix
      preparation. See FRAP 30 and 8ᵗʰ Cir. R. 30A.
   B. Within 10 days, order any transcripts required for the appeal and arrange for payment.
      If no transcript is required, file a certificate of waiver. See FRAP 10(b). Appellee
      should order any additional transcripts within 10 days of appellant's order.
   C. Review the "Record on Appeal" at:  www.ca8.uscourts.gov/newcoa/appealInfo.htm .

3. Review "Briefing Checklist" and "Pointers on Preparing Briefs" at:
   www.ca8.uscourts.gov/newcoa/appealInfo.htm .

## GENERAL INFORMATION

The following filing dates are established for the appeal. The dates will only be extended upon the filing of a timely motion establishing good cause for an extension of time. An extension of time automatically extends the filing date for the responding or replying party's brief. Dates are advanced if a party files its brief before the due date. Please refer to FRAP 25, FRAP 26 and FRAP 31 for provisions governing filing and service, as well as computing and extending time.

The Federal Rules of Appellate Procedure and the Eighth Circuit's Local Rules may be found at www.ca8.uscourts.gov/newcoa/publs/publs.htm

The Practitioner's Handbook and the Court's Internal Operating Procedures may also be found at the same address.

## APPEAL BRIEFING SCHEDULE
### FILING DATES:

Method of Appendix Preparation Notification. . . . . . . . . . . . . . . . . . . . . . **10 days from today**

Designation & Statement of Issues-Appellant . . . . . . . . . . . . . . . . . . . . . **10 days from today**

Designation of Record-Appellee. . . . . . . . . **10 days from service of appellant's designation**

Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **02/02/2009**
   **( Ron Moen )**

Appendix (3 copies) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **02/12/2009**
   **( Adolpho Birch, Brian Finkle, John Lombardo, National Football League )**

Appellant Brief with addendum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **02/12/2009**
   **( Adolpho Birch, Brian Finkle, John Lombardo, National Football League )**

Appellee Brief. . . . . . . . . . . . . . . . . . . . . . . . . . . .**30 days from service of Appellant Brief**

Reply Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**14 days from service of Appellee Brief**

### ALL BRIEFS AND APPENDICES SHOULD BE
### FILED WITH THE ST. LOUIS OFFICE

# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

### APPEAL BRIEFING SCHEDULE ORDER

Appeal No.    08-3974   Kevin Williams, et al v. National Football League, et al
              09-1008   National Football League Players v. National Football League, et al

Date:         January 05, 2009

### APPEAL REQUIREMENTS

1. Complete and file immediately:
   A. Appeal Information Form. See 8th Cir. R. 3B.
   B. Corporate Disclosure Statement. See 8th Cir. R. 26.1A.
   C. Entry of Appearance Form.
      Appeal Information Forms and Appearance Forms are available at:
      www.ca8.uscourts.gov/newcoa/forms.htm

2. Prepare the Record on Appeal:
   A. Within 10 days, confer with opposing counsel and determine the method of Appendix preparation. See FRAP 30 and 8th Cir. R. 30A.
   B. Within 10 days, order any transcripts required for the appeal and arrange for payment. If no transcript is required, file a certificate of waiver. See FRAP 10(b). Appellee should order any additional transcripts within 10 days of appellant's order.
   C. Review the "Record on Appeal" at:  www.ca8.uscourts.gov/newcoa/appealInfo.htm .

3. Review "Briefing Checklist" and "Pointers on Preparing Briefs" at:
   www.ca8.uscourts.gov/newcoa/appealInfo.htm .

### GENERAL INFORMATION

The following filing dates are established for the appeal. The dates will only be extended upon the filing of a timely motion establishing good cause for an extension of time. An extension of time automatically extends the filing date for the responding or replying party's brief. Dates are advanced if a party files its brief before the due date. Please refer to FRAP 25, FRAP 26 and FRAP 31 for provisions governing filing and service, as well as computing and extending time.

The Federal Rules of Appellate Procedure and the Eighth Circuit's Local Rules may be found at www.ca8.uscourts.gov/newcoa/publs/publs.htm

The Practitioner's Handbook and the Court's Internal Operating Procedures may also be found at the same address.

## APPEAL BRIEFING SCHEDULE
### FILING DATES:

Method of Appendix Preparation Notification . . . . . . . . . . . . . . . . . . . . . . **10 days from today**

Designation & Statement of Issues-Appellant . . . . . . . . . . . . . . . . . . . . . . **10 days from today**

Designation of Record-Appellee . . . . . . . . . **10 days from service of appellant's designation**

Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **02/17/2009**
    **( Ron Moen )**

Appendix (3 copies) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **02/24/2009**
**(Adolpho Birch, Brian Finkle, John Lombardo,  National Football League, National Football League Management Council, National Football League Players Association)**

Appellant Brief with addendum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **02/24/2009**
 **(Adolpho Birch, Brian Finkle, John Lombardo, National Football League, National Football League Management Council , National Football League Players Association)**

Appellee Brief . . . . . . . . . . . . . . . . . . . . . . . . . . .**30 days from service of Appellant Brief**

Reply Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**14 days from service of Appellee Brief**


### ALL BRIEFS AND APPENDICES SHOULD BE
### FILED WITH THE ST. LOUIS OFFICE

# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

## APPEAL BRIEFING SCHEDULE ORDER

Appeal No.   09-2247  Kevin Williams, et al v. National Football League, et al
             09-2249  Nat. Football League Players v. National Football League, et al

Date:        May 29, 2009

## APPEAL REQUIREMENTS

1. Complete and file immediately:
   A. Appeal Information Form. See 8th Cir. R. 3B.
   B. Corporate Disclosure Statement. See 8th Cir. R. 26.1A.
   C. Entry of Appearance Form.
      Appeal Information Forms and Appearance Forms are available at:
      www.ca8.uscourts.gov/newcoa/forms.htm

2. Prepare the Record on Appeal:
   A. Within 10 days, confer with opposing counsel and determine the method of Appendix
      preparation. See FRAP 30 and 8th Cir. R. 30A.
   B. Within 10 days, order any transcripts required for the appeal and arrange for payment.
      If no transcript is required, file a certificate of waiver. See FRAP 10(b). Appellee
      should order any additional transcripts within 10 days of appellant's order.
   C. Review the "Record on Appeal" at:  www.ca8.uscourts.gov/newcoa/appealInfo.htm .

3. Review "Briefing Checklist" and "Pointers on Preparing Briefs" at:
   www.ca8.uscourts.gov/newcoa/appealInfo.htm .

## GENERAL INFORMATION

        The following filing dates are established for the appeal. The dates will only be extended
upon the filing of a timely motion establishing good cause for an extension of time. An extension
of time automatically extends the filing date for the responding or replying party's brief. Dates
are advanced if a party files its brief before the due date. Please refer to FRAP 25, FRAP 26 and
FRAP 31 for provisions governing filing and service, as well as computing and extending time.

        The Federal Rules of Appellate Procedure and the Eighth Circuit's Local Rules may be
found at www.ca8.uscourts.gov/newcoa/publs/publs.htm

        The Practitioner's Handbook and the Court's Internal Operating Procedures may also be
found at the same address.

## APPEAL BRIEFING SCHEDULE
### FILING DATES:

Method of Appendix Preparation Notification. . . . . . . . . . . . . . . . . . . . **10 days from today**

Designation & Statement of Issues-Appellant . . . . . . . . . . . . . . . . . . . . **10 days from today**

Designation of Record-Appellee. . . . . . . . . **10 days from service of appellant's designation**

Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/08/2009**
    **( Ron Moen )**

Appendix (3 copies) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/20/2009**
    **( Adolpho Birch, John Lombardo, National Football League )**

    **( National Football League Players Association )**

Appellant Brief with addendum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/20/2009**
    **( Adolpho Birch, John Lombardo, National Football League )**

    **( National Football League Players Association )**

Appellee Brief. . . . . . . . . . . . . . . . . . . . . . . . . . . **30 days from service of Appellant Brief**

Reply Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14 days from service of Appellee Brief**


### ALL BRIEFS AND APPENDICES SHOULD BE
### FILED WITH THE ST. LOUIS OFFICE

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 09-2249

National Football League Players Association,

Appellant

v.

National Football League and National Football League Management Council,

Appellees

No: 09-2247

Kevin Williams and Pat Williams,

Appellees

v.

National Football League and John Lombardo, M.D.,

Appellants

Brian Finkle,

Adolpho Birch,

Appellant

---

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06254-PAM)
(0:08-cv-06255-PAM)

---

## ORDER

Appellant's motion to expedite the briefing and submission of this appeal is granted, and

the following briefing schedule is established:

| | |
|---|---|
| Appellant's Brief and separate Appendix | June 26, 2009 |
| Appellees' Brief and Separate Appendix | July 20, 2009 |
| Appellant's Reply Brief | August 2, 2009 |

    The court will advise the parties of the date, time and place of the oral argument after the filing of appellees' brief.  The decision on the date for any argument will take into consideration the need for an expedited decision based on the NFL season's starting date.

June 19, 2009

Order Entered Under Rule 27B(a):
Clerk, U.S. Court of Appeals, Eighth Circuit.
_____
    /s/ Michael E. Gans

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 09-2247

Kevin Williams and Pat Williams,

Appellees

v.

National Football League and John Lombardo, M.D.,

Appellants

Brian Finkle,

Adolpho Birch,

Appellant

No: 09-2249

National Football League Players Association,

Appellant

v.

National Football League and National Football League Management Council,

Appellees

---

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06255-PAM)
(0:08-cv-06254-PAM)

---

## ORDER

Upon consideration of the unopposed motion for extension of the expedited briefing schedule, the motion is granted in part.  In the event the court deems oral argument warranted, such argument will be held in St. Paul, Minnesota on Tuesday, August 18, 2009, at 9:00 a.m. Counsel will be advised at a future date if it requests oral argument.

Accordingly, the following amended briefing schedule will be strictly enforced.

|                          |                 |
|--------------------------|-----------------|
| Appellant's brief -      | July 1, 2009    |
| Appellee's brief -       | July 24, 2009   |
| Appellant's reply brief -| August 3, 2009  |

June 23, 2009

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

_____

/s/ Michael E. Gans

# UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

## CONSOLIDATED APPEAL BRIEFING SCHEDULE ORDER

Appeal No.    09-2247   Kevin Williams, et al v. National Football League, et al
              09-2249   Nat. Football League Players v. National Football League, et al

Date:         June 24, 2009

## APPEAL REQUIREMENTS

1. Complete and file immediately:
   A.  Appeal Information Form. See 8th Cir. R. 3B.
   B.  Corporate Disclosure Statement. See 8th Cir. R. 26.1A.
   C.  Entry of Appearance Form.
       Appeal Information Forms and Appearance Forms are available at:
       www.ca8.uscourts.gov/newcoa/forms.htm

2. Prepare the Record on Appeal:
   A.  Within 10 days, confer with opposing counsel and determine the method of Appendix
       preparation. See FRAP 30 and 8th Cir. R. 30A.
   B.  Within 10 days, order any transcripts required for the appeal and arrange for payment.
       If no transcript is required, file a certificate of waiver. See FRAP 10(b). Appellee
       should order any additional transcripts within 10 days of appellant's order.
   C.  Review the "Record on Appeal" at:  www.ca8.uscourts.gov/newcoa/appealInfo.htm .

3. Review "Briefing Checklist" and "Pointers on Preparing Briefs" at:
   www.ca8.uscourts.gov/newcoa/appealInfo.htm .

## GENERAL INFORMATION

The following filing dates are established for the appeal. The dates will only be extended
upon the filing of a timely motion establishing good cause for an extension of time. An extension
of time automatically extends the filing date for the responding or replying party's brief. Dates
are advanced if a party files its brief before the due date. Please refer to FRAP 25, FRAP 26 and
FRAP 31 for provisions governing filing and service, as well as computing and extending time.

The Federal Rules of Appellate Procedure and the Eighth Circuit's Local Rules may be
found at www.ca8.uscourts.gov/newcoa/publs/publs.htm

The Practitioner's Handbook and the Court's Internal Operating Procedures may also be
found at the same address.

## APPEAL BRIEFING SCHEDULE
### FILING DATES:

Appendix (3 copies) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/01/2009**
  ( Adolpho Birch )
Appendix (3 copies) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/01/2009**
  ( John Lombardo )
Appendix (3 copies) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/01/2009**
  ( National Football League )

Appellant Brief with addendum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/01/2009**
  ( Adolpho Birch )
Appellant Brief with addendum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/01/2009**
  ( John Lombardo )
Appellant Brief with addendum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/01/2009**
  ( National Football League )

Appellee Brief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/24/2009**
  ( Kevin Williams and Pat Williams )

Reply Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **08/03/2009**
  ( Adolpho Birch, et al )

### ALL BRIEFS AND APPENDICES SHOULD BE
### FILED WITH THE ST. LOUIS OFFICE

### THIS SCHEDULE WILL BE STRICTLY ENFORCED AND NO EXTENSIONS WILL
### BE GRANTED

# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

### CROSS-APPEAL BRIEFING SCHEDULE ORDER

Appeal No.    09-2247  Kevin Williams, et al v. National Football League, et al
              09-2462  Kevin Williams, et al v. National Football League, et al

Date:    June 25, 2009

### APPEAL REQUIREMENTS

1. Complete and file immediately:
   A. Appeal Information Form. See 8th Cir. R. 3B.
   B. Corporate Disclosure Statement. See 8th Cir. R. 26.1A.
   C. Entry of Appearance Form.
      Appeal Information Forms and Appearance Forms are available at:
      www.ca8.uscourts.gov/newcoa/forms.htm

2. Prepare the Record on Appeal:
   A. Within 10 days, confer with opposing counsel and determine the method of Appendix
      preparation. See FRAP 30 and 8th Cir. R. 30A.
   B. Within 10 days, order any transcripts required for the appeal and arrange for payment.
      If no transcript is required, file a certificate of waiver. See FRAP 10(b). Appellee
      should order any additional transcripts within 10 days of appellant's order.
   C. Review the "Record on Appeal" at:  www.ca8.uscourts.gov/newcoa/appealInfo.htm .

3. Review "Briefing Checklist" and "Pointers on Preparing Briefs" at:
   www.ca8.uscourts.gov/newcoa/appealInfo.htm .

### GENERAL INFORMATION

The following filing dates are established for the cross-appeals. The dates will only be
extended upon the filing of a timely motion establishing good cause. An order granting extension
of time automatically extends the filing date for the responding or replying party's brief. Dates
are advanced if a party files its brief before the due date. Please refer to FRAP 25, FRAP 26 and
FRAP 31 for provisions governing filing and service, as well as computing and extending time.

The Federal Rules of Appellate Procedure and the Eighth Circuit's Local Rules may be
found at www.ca8.uscourts.gov/newcoa/publs/publs.htm

The Practitioner's Handbook and the Court's Internal Operating Procedures may also be
found at the same address.

**The following briefing schedule has been established for these cross-appeals.
This schedule supersedes all other schedules.**

**Please refer to Federal Rule of Appellate Procedure 28.1
for the procedures governing cross-appeals.**

Joint Appendix or Appellant's
Separate Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/01/2009**
 **( Adolpho Birch, et al )**

Brief of Appellant with Addendum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/01/2009**
  **( Adolpho Birch, John Lombardo and National Football League )**

Brief of Appellees/Cross-Appellants
(with Separate Appendix, if applicable). . . . . . . . . . . . . . . . . . . . . . . . . . . **07/24/2009**
 **( Pat Williams and Kevin Williams )**

Reply Brief of
Appellants/Cross-Appellees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **08/03/2009**
 **( Adolpho Birch, John Lombardo and National Football League )**

Reply Brief of
Cross-Appellants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **08/07/2009**
 **( Pat Williams and Kevin Williams )**

**ALL BRIEFS AND APPENDICES SHOULD BE
FILED WITH THE ST. LOUIS OFFICE**

**THIS SCHEDULE WILL BE STRICTLY ENFORCED AND NO EXTENSIONS WILL
BE GRANTED.**

# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

### APPEAL BRIEFING SCHEDULE ORDER

Appeal No.     09-2247   Kevin Williams, et al v. National Football League, et al

Date:         June 03, 2009

### APPEAL REQUIREMENTS

1. Complete and file immediately:
   A. Appeal Information Form. See 8th Cir. R. 3B.
   B. Corporate Disclosure Statement. See 8th Cir. R. 26.1A.
   C. Entry of Appearance Form.
      Appeal Information Forms and Appearance Forms are available at:
      www.ca8.uscourts.gov/newcoa/forms.htm

2. Prepare the Record on Appeal:
   A. Within 10 days, confer with opposing counsel and determine the method of Appendix
      preparation. See FRAP 30 and 8th Cir. R. 30A.
   B. Within 10 days, order any transcripts required for the appeal and arrange for payment.
      If no transcript is required, file a certificate of waiver. See FRAP 10(b). Appellee
      should order any additional transcripts within 10 days of appellant's order.
   C. Review the "Record on Appeal" at:  www.ca8.uscourts.gov/newcoa/appealInfo.htm .

3. Review "Briefing Checklist" and "Pointers on Preparing Briefs" at:
   www.ca8.uscourts.gov/newcoa/appealInfo.htm .

### GENERAL INFORMATION

   The following filing dates are established for the appeal. The dates will only be extended
upon the filing of a timely motion establishing good cause for an extension of time. An extension
of time automatically extends the filing date for the responding or replying party's brief. Dates
are advanced if a party files its brief before the due date. Please refer to FRAP 25, FRAP 26 and
FRAP 31 for provisions governing filing and service, as well as computing and extending time.

   The Federal Rules of Appellate Procedure and the Eighth Circuit's Local Rules may be
found at www.ca8.uscourts.gov/newcoa/publs/publs.htm

   The Practitioner's Handbook and the Court's Internal Operating Procedures may also be
found at the same address.

## APPEAL BRIEFING SCHEDULE
## FILING DATES:

Method of Appendix Preparation Notification. . . . . . . . . . . . . . . . . . . . . . **10 days from today**

Designation & Statement of Issues-Appellant . . . . . . . . . . . . . . . . . . . . . **10 days from today**

Designation of Record-Appellee. . . . . . . . . **10 days from service of appellant's designation**


Appendix (3 copies)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/20/2009**
   **( Adolpho Birch, John Lombardo, National Football League )**

Appellants' Brief with addendum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **07/20/2009**
   **( Adolpho Birch, John Lombardo, National Football League )**

Appellees' Brief. . . . . . . . . . . . . . . . . . . . . . . . . . .**30 days from service of Appellant Brief**

Reply Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**14 days from service of Appellee Brief**


## ALL BRIEFS AND APPENDICES SHOULD BE
## FILED WITH THE ST. LOUIS OFFICE

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 09-2247

Kevin Williams and Pat Williams,

Appellees

v.

National Football League and John Lombardo, M.D.,

Appellants

Brian Finkle,

Adolpho Birch,

Appellant

---

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06255-PAM)

---

## ORDER

The motion of the appellants for leave to file confidential appendix under seal is granted.

July 02, 2009

Order Entered Under Rule 27B(a):
Clerk, U.S. Court of Appeals, Eighth Circuit.

---

/s/ Michael E. Gans

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 09-2247

Kevin Williams and Pat Williams,

Appellees

v.

National Football League and John Lombardo, M.D.,

Appellants

Brian Finkle,

Adolpho Birch,

Appellant

------------------------------

National Basketball Association, et al.,

Amici on behalf of Appellant

No: 09-2249

National Football League Players Association,

Appellant

v.

National Football League and National Football League Management Council,

Appellees

No: 09-2462

Kevin Williams and Pat Williams,

Appellants

v.

National Football League and John Lombardo, M.D.,

Appellees

Brian Finkle,

Adolpho Birch,

Appellee

------------------------------

Major League Baseball, et al.,

Amici on behalf of Appellant

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06255-PAM)
(0:08-cv-06254-PAM)
(0:08-cv-06255-PAM)

## ORDER

These appeals are hereby set for oral argument at 9:00 a.m., on Tuesday, August 18,

2009, in St. Paul, Minnesota, before Judge Diana E. Murphy, Judge Duane Benton, and Judge

Bobby E. Shepherd.  Each side is allotted 30 minutes for oral argument.  The parties on each side

should consult among themselves and divide the time allotted to their side.  The parties are

directed to inform the clerk by August 11, 2009 of the names of the attorneys who will be

arguing and how they intend to divide the time.

July 29, 2009

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

/s/ Michael E. Gans

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 09-2247

Kevin Williams and Pat Williams,

Appellees

v.

National Football League and John Lombardo, M.D.,

Appellants

Brian Finkle,

Adolpho Birch,

Appellant

No: 09-2462

Kevin Williams and Pat Williams,

Appellants

v.

National Football League and John Lombardo, M.D.,

Appellees

Brian Finkle,

Adolpho Birch,

Appellee

---

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06255-PAM)

---

## ORDER

The appellee-cross appellants' are directed to file a response to the motion of Major League Baseball, The National Basketball Association and The National Hockey League and the motion of The United States Anti-Doping Agency for leave to file an amicus brief.

The appellee-cross appellants' response is due July 27, 2009.

July 15, 2009

Order Entered Under Rule 27B(a):
Clerk, U.S. Court of Appeals, Eighth Circuit.

_____
         /s/ Michael E. Gans

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 09-2247/09-2462

Kevin Williams and Pat Williams,

Appellee/Cross-Appellants

v.

National Football League and John Lombardo, M.D.,et al.,

Appellant/Cross-Appellees

---

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06255-PAM)

---

## ORDER

The motions of the United States Anti-Doping Agency and Major League Baseball,

The National Basketball Association and The National Hockey League for leave to file amicus

briefs on behalf of the appellants have been considered by the court and are hereby granted.

July 29, 2009

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

---

/s/ Michael E. Gans

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 09-2247

Kevin Williams and Pat Williams,

Appellees

v.

National Football League and John Lombardo, M.D.,

Appellants

Brian Finkle,

Adolpho Birch,

Appellant

-------------------------------

National Basketball Association, et al.,

Amici on behalf of Appellant

No: 09-2249

National Football League Players Association,

Appellant

v.

National Football League and National Football League Management Council,

Appellees

No: 09-2462

Kevin Williams and Pat Williams,

Appellants

v.

National Football League and John Lombardo, M.D.,

Appellees

Brian Finkle,

Adolpho Birch,

Appellee

------------------------------

Major League Baseball, et al.,

Amici on behalf of Appellant

---

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06255-PAM)
(0:08-cv-06254-PAM)
(0:08-cv-06255-PAM)

---

## ORDER

Counsel for the parties have submitted letters to the clerk concerning the order of argument and the division of time for the oral arguments scheduled for Tuesday, August 18, 2009.  After considering the briefs and these letters, the court has determined that the National Football League will present its argument first.

The cases have been allotted 30 minutes of argument time per side, and the League may divide its time between opening and rebuttal in any fashion it desires.  The Association and the Williams plaintiffs are encouraged to discuss the matter and determine the order in which they will present their arguments.  The Association and the Williams plaintiffs may each reserve up to five minutes of their allotted time for sur-rebuttal.

The order of argument is as follows:

(1) The National Football League's opening argument;

(2) The Players Association and the Williams Plaintiffs' Response and Cross-appeal arguments (in such order as these parties determine);

(3) The National Football League's rebuttal argument; and

(4) The Players Association and the Williams Plaintiffs' Sur-rebuttal argument.

August 13, 2009

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

_____
        /s/ Michael E. Gans

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 09-2247/09-2462

Kevin Williams and Pat Williams,

Appellee/Cross-Appellants

v.

National Football League , John Lombardo, M.D.,

Adolpho Birch,

Appellant/Cross-Appelles

---

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06255-PAM)

---

## ORDER

The motions of Appellant/Cross-Appellees for leave to seal their reply brief and file an overlength addendum and Appellee-Cross-Appellants for leave to seal their reply brief have been considered by the court and are hereby granted.

August 13, 2009

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

---

/s/ Michael E. Gans

# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

Nos. 09-2247/2462

| | | |
|---|---|---|
| Kevin Williams; Pat Williams, | * | |
| | * | |
| Plaintiffs - Appellees/ | * | |
| Cross Appellants, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the District |
| National Football League; | * | of Minnesota. |
| John Lombardo, M.D., | * | |
| | * | |
| Defendants - Appellants/ | * | |
| Cross Appellees, | * | |
| | * | |
| Brian Finkle, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Adolpho Birch, | * | |
| | * | |
| Defendant - Appellant/ | * | |
| Cross Appellee. | * | |
| | * | |
| | * | |
| National Basketball Association; | * | |
| National Hockey League; | * | |
| United States Anti-Doping Agency; | * | |
| Major League Baseball, | * | |
| | * | |
| Amici on behalf of | * | |
| Appellant. | * | |

_____

No. 09-2249

_____

National Football League Players      *
Association,                          *
                                      *
            Plaintiff - Appellant,    *
                                      *
     v.                               *
                                      *
National Football League; National    *
Football League Management Counsel,   *
                                      *
            Defendants - Appellees.   *
                                      *

_____

Submitted: August 18, 2009
Filed:  September 11, 2009

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

In these consolidated appeals, the National Football League (NFL), Dr. John Lombardo, Independent Administrator of the Policy on Anabolic Steroids and Related Substances, and Adolpho Birch, the NFL's Vice President of Law and Labor Policy, appeal the district court's[1] order, concluding that the Minnesota statutory claims alleged by Kevin Williams and Pat Williams of the Minnesota Vikings (collectively,

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

-2-

"the Players") are not preempted by section 301 of the Labor Management Relations Act ("section 301" or "LMRA"), 29 U.S.C. § 185. The Players cross-appeal the district court's order concluding that their Minnesota common law claims are preempted by section 301. In addition, the National Football League Players Association (the "Union"), the certified collective bargaining representative of all NFL players, appeals the district court's order confirming the arbitration awards which upheld the Players' suspensions. We affirm in all respects.

I.

The NFL is an unincorporated association of member clubs which own and operate professional football teams. The NFL promotes, organizes, and regulates professional football in the United States. Players in the NFL enter into a contract with a member club, not the NFL. NFL Players Association, NFL Collective Bargaining Agreement 2006-2012, App. C at 248 (2006) [hereinafter CBA]. On March 8, 2006, the National Football League Management Council (NFLMC), which is the sole and exclusive bargaining agent of the member clubs, and the Union entered into the NFL Collecting Bargaining Agreement 2006-2012 (the "CBA"). The CBA expressly incorporates the Policy on Anabolic Steroids and Related Substances (the "Policy").[2]  Id. art. XLIV, § 6(b). The CBA provides that "all players, Clubs, the [Union], the NFL and the [NFLMC] will be bound hereby." Id. art. II, § 1.

The Policy "is conducted under the auspices of the [NFLMC]." NFL Players Association, National Football League Policy on Anabolic Steroids and Related Substances, § 2 (2008) [hereinafter Policy]. It is "directed" by Dr. Lombardo as "Independent Administrator." Id. The Policy also provides for a "Consulting Toxicologist," Dr. Bryan Finkle. Id. The Policy bans NFL players from using a

_____

[2]The Policy was amended in 2007 and 2008. Hereinafter, "the Policy" refers to the 2008 version. References to 2006 version of the Policy are so noted.

-3-

number of "Prohibited Substance[s]," including "'blocking' or 'masking' agents[,]" such as "diuretics or water pills, which have been used in the past by some players to reach an assigned weight." Id. § 8. The Policy addresses the consequences of a player's "[u]nknowing [a]dministration of [p]rohibited [s]ubstances." Id. § 3(E). It adopts a rule of strict liability under which "[p]layers are responsible for what is in their bodies," and explains that "a positive test result will not be excused because a player was unaware he was taking a Prohibited Substance." Id. Section eight of the Policy, entitled "Masking Agents and Supplements," states that "a positive test result will not be excused because it results from the use of a dietary supplement, rather than from intentional use of a Prohibited Substance." Id. § 8.

"Players with a confirmed positive test result will be subject to discipline by the Commissioner as outlined in the Policy . . . ." Id. § 6. "The first time a player violates this Policy by testing positive [for a banned substance] . . . he will be suspended without pay for a minimum of four regular and/or postseason games." Id. Players subject to disciplinary action may appeal to an arbitrator, who is "either the Commissioner or his designee," and whose decision "constitute[s] a full, final, and complete disposition of the appeal" that is "binding on all parties." Id. § 10.

Appendix F to the Policy, a joint letter from the Union and the NFL entitled "Use of Supplements," warns that, because dietary "supplements are not regulated . . . by the government," there is "no way to be sure" that supplements "contain the ingredients listed on the packaging[.]" Id. App. F. The letter "strongly encourage[s] [players] to avoid the use of supplements altogether," and warns that, "if you take these products, you do so AT YOUR OWN RISK!" Id. The letter advises that "several players have been suspended even though their positive test result may have been due to the use of a supplement" and that "**if you test positive or otherwise violate the Policy, you *will* be suspended**" because "[y]ou and you alone are responsible for what goes into your body." Id. Appendix G to the Policy, entitled "Supplements," is a memorandum from Dr. Lombardo which states, "If you take

-4-

supplements that contain a substance that violates the [P]olicy it will subject you to discipline[,]" and, "[m]ore importantly, you run the risk of harmful health effects associated with their use." Id. App. G.

Players may contact the "NFL Dietary Supplement Hotline" to obtain "confidential and accurate information about these products, including their ingredients, effects[,] and adverse reactions." (No. 09-2249, Defs.-Appellees' Supp. App. 5.) The memorandum announcing the hotline provides: "Although we strongly discourage the use of supplements for many reasons, we understand that an informed decision is the best one." (Id.) The memorandum goes on to caution players, stating, "*You and you alone are still responsible for what goes into your body.* Using the Hotline will not excuse a positive test result." (Id.)

In 2006, several NFL players tested positive for bumetanide,[3] a prescription diuretic and masking agent that is banned under the Policy. Policy App. A(II)(A). When Dr. Lombardo was alerted to a possible connection between the positive results for bumetanide and StarCaps, a dietary supplement, he informed Dr. Finkle. The StarCaps label does not disclose bumetanide as an ingredient. Dr. Finkle asked Dennis Crouch, Director of the Sports Medicine Research Testing Laboratory, to analyze StarCaps. On November 14, 2006, Crouch emailed Dr. Finkle and Dr. Lombardo, informing them that StarCaps contained bumetanide. Birch was also made aware of this.

On December 19, 2006, the NFLMC sent a memorandum to the presidents, general managers, and head athletic trainers of all NFL teams entitled "Dietary

---

[3]Bumetanide is a "loop diuretic used in treatment of edema associated with congestive heart failure or hepatic or renal disease, treatment of hypertension, usually in combination with other drugs, and as an adjunct in treatment of acute pulmonary edema" that is "administered orally, intramuscularly, or intravenously." Dorland's Illustrated Medical Dictionary 263 (31st ed. 2007).

Supplement Endorsement Prohibition." (<u>Id.</u> at 6.)  The memorandum provides: "Effective immediately, please be advised that **Balanced Health Products**, which distributes **StarCaps**, has been added to the list of companies with which player endorsements or other business relationships are prohibited." (<u>Id.</u>) The memorandum does not state StarCaps was banned under the Policy, that StarCaps contained bumetanide, or that StarCaps contained any banned substance. (<u>See</u> <u>id.</u>)

On December 20, 2006, Stacy Robinson, the Union's Director of Player Development, sent a memorandum to all NFL agents. (<u>Id.</u> at 7.) The memorandum states: "Please be advised that effective immediately **Balanced Health Products**, which distributes **StarCaps**, has been added to the list of prohibited dietary supplement companies. Players are prohibited from participating in any endorsement agreements with this company or using any of their products." (<u>Id.</u>)

Dr. Lombardo did not refer any player who tested positive for bumetanide in 2006 for discipline.  Sometime in late 2006 or 2007, Birch communicated with Dr. Lombardo about Dr. Lombardo's duties under the Policy.  Birch informed Dr. Lombardo that if a player tested positive for a banned substance then, assuming the player had no therapeutic reason to be taking the banned substance, the player must be referred to the NFL for discipline.

In July and August 2008, players in the NFL submitted to random testing for steroids and other substances in accordance with the Policy.  In total, five players—Kevin Williams and Pat Williams of the Minnesota Vikings, and Charles Grant, Deuce McAllister, and Will Smith of the New Orleans Saints—tested positive for bumetanide.  In late September and early October 2008, all of the players were advised by letter that their positive results were a violation of the Policy and that a suspension without pay of four games was being imposed for the violations.  Pursuant to the Policy, all five players appealed their suspensions, and their appeals were consolidated.

-6-

Beginning on October 23, 2008, Jeffrey Pash, Vice President and General Counsel of the NFL, met with representatives of the Vikings three times "in the context of what [he] understood to be . . . threats of litigation" arising out of the suspensions and providing legal advice. (Id. at 234.) Although "at the very first" Pash did not know that Pat Williams and Kevin Williams were involved, he learned of this via letters from Peter R. Ginsberg, the Players' counsel. (Id.) On October 30, 2008, Ginsberg contacted Pash and Birch via letter.  In the letter, Ginsberg acknowledges that "several veteran NFL players recently have tested positive for a banned diuretic during random League-sponsored drug testing." (Id. at 23.) Ginsberg states that "we believe [the current NFL testing procedure] is unfair and violative of the players' fundamental and guaranteed rights . . . ." (Id.) Ginsberg notes that three of his clients have "clinical weight problems," two of whom have had to add "weight clauses into their contracts." (Id. at 23-24.) He also identifies "this [a]s a further complicating factor since a person who has a weight condition falls within a protected class" under the Americans with Disabilities Act.[4] (Id. at 24 n.1.) Ginsberg suggests that the NFL should employ a new drug test procedure, including the addition of an alternative test.[5] (Id. at 24-25.) Ginsberg concludes by stating, "We appreciate your

---

[4]42 U.S.C. § 12101 et seq.

[5]Ginsberg states:

The current test should be used in the first instance. If there is a positive test for a banned diuretic, the alternative test, we submit, should then be used.  If it yields a positive test, of any amount, for steroids, then the player should be punished according to the current guidelines. On the other hand, if the test does not yield a reading of even a trace of a banned steroid, the player then should be given a fair warning letter that a second detection of a banned diuretic would result in punishment as currently set forth in the Policy.

(No. 09-2249, Defs.-Appellees' Supp. App. 25.) The alternative test "uses a larger sample of a player's specimen and, unlike the test currently used by the NFL, is significantly more reliable in determining whether banned steroids are in a person's

consideration of this correspondence and hope that appropriate parties can arrange to meet with the Commissioner and you in advance of a hearing regarding the proposed punishment of the players involved." (Id. at 26.)

Pash had several discussions with Ginsberg, including a telephone conversation on November 3, 2008, and at least one meeting. (Id. at 235, 238.) On November 7, 2008, Ginsberg again contacted Pash via letter. (Id. at 28-30.) The letter: (1) answers Pash's request for information with regard to the Dilute Sample Reflex Test, (2) requests the NFL administrative record regarding Ginsberg's clients, (3) notes Ginsberg's "concern[] that the laboratory used by the NFL may not have all the documents we need in order to perform a complete evaluation of the tests" which will be necessary "if a hearing ultimately is necessary [and] that any further delay in receiving the administrative record will require us to seek to adjourn the hearing," and (4) includes an article which Ginsberg characterizes as demonstrating "that the sports world seems to be in the process of reevaluating the breadth of banned substances considered to be 'masking agents.'" (Id. at 28.) Ginsberg concludes by requesting that "[i]f there is any medical indication that the substance allegedly involved with my clients, in the amounts detected, presents any objective medical concern, we hope that the NFL will provide such information in advance of the hearing." (Id. at 29.)

Between November 10 and 13, 2008, Roger Goodell, the Commissioner of the NFL ("the Commissioner"), designated Pash as the Hearing Officer for the five players' appeals of their suspensions. (Id. at 239.) Also, in that same time period, Pash learned that StarCaps contained bumetanide. (Id. at 237.) The arbitration hearing took place on November 20, 2008. Each player testified that he was taking StarCaps around the time of his positive bumetanide test and that he did not know that StarCaps contained bumetanide. The players admitted that they were aware of the warnings regarding supplements, the supplement hotline, and the Policy's rule that

---

system, and thus provides a far more accurate gauge of the reason why the detected diuretic has been used." (Id. at 24.)

-8-

each player is responsible for what is in his body. However, the players argued that their positive results should be excused because Dr. Lombardo and the NFL knew, as of November 2006, that at least some StarCaps capsules contained bumetanide—an undisclosed banned substance—and did not specifically advise NFL players of this fact. After the hearing but before issuing his decisions, Pash communicated with the Commissioner regarding "the threat of litigation that [Pash] thought hung over these proceedings." (Id. at 239.)

In decisions dated December 2, 2008, Pash determined that the language of the Policy required that the suspensions of all five players be upheld. As arbitrator, he observed:

> Notwithstanding the rule of strict liability, each player contends that his violation should be excused because the NFL and Dr. Lombardo were aware that StarCaps contained an undisclosed banned substance, bumetanide, but did not specifically advise NFL players of this fact. The players do not contend that the NFL, [the Union,] or Dr. Lombardo is obligated to test supplements for banned substances and inform players of the result of those tests. But where, as here, the testing process leads to specific information about a specific product, the players argue that the league and Dr. Lombardo have a duty to inform NFL players of the specific threat of the specific product . . . . [T]hey contend that where specific evidence is available about a particular product, a specific warning is required, and that the failure to extend such a warning should excuse any violation of the Policy associated with that product.

(Id. at 164.) Pash rejected the players' argument in light of: (1) the rule of strict liability embodied in the Policy, (2) the 20-year history of the application of the Policy, (3) the "repeated[] warn[ings] that if [players] take supplements, they do so at their own risk," (4) the "repeated warnings about the risks inherent in using supplements in general and weight loss products in particular," and (5) the fact that the players took StarCaps "knowing that a positive test would result in suspension and would not be excused based on a claim of unintentional or inadvertent use." (Id. at

165.) Pash further noted that "[t]he Policy does not articulate or impose an obligation to issue specific warnings about specific products, and nothing in the record suggests that the bargaining parties have ever contemplated imposing such a requirement on Dr. Lombardo." (Id.)

On December 3, 2008, the Players filed suit against the NFL, Dr. Lombardo, Dr. Finkle, and Birch in Minnesota District Court for the Fourth District,[6] alleging numerous violations of Minnesota common law.[7] That same day, the state court issued a temporary restraining order ("TRO") blocking the suspensions. Following entry of the TRO, the NFL removed the case to federal district court.

On December 4, 2008, the Union, on behalf of all five players, initiated a separate suit in federal court against the NFL and NFLMC, alleging breach of contract under section 301. The Union sought to have the arbitration awards upholding the suspensions vacated as contrary to the essence of the CBA/Policy, as a violation of public policy, and as being rendered by a biased arbitrator. On January 2, 2009, the Players filed an amended complaint in federal court, adding two counts. Count XII asserted a violation of Minnesota's Drug and Alcohol Testing in the Workplace Act (DATWA), Minn. Stat. §§ 181.950-957, and Count XIII asserted a violation of Minnesota's Consumable Products Act (CPA), Minn. Stat. § 181.938.

---

[6]We note that both of the Players' contracts with the Vikings, in effect at the time of their positive test results, state that Minnesota law governs the contracts.

[7]The Players' Complaint contains 11 counts: Count I seeks injunctive relief; Count II alleges a breach of fiduciary duty by the NFL; Count III contends that the NFL aided and abetted breaches of fiduciary duty; Count IV raises a violation of public policy; Counts V and VI are claims of fraud and constructive fraud; Counts VII, VIII, and IX raise negligent misrepresentation, negligence, and gross negligence claims; Count X alleges intentional infliction of emotional distress; and Count XI contends that the NFL is vicariously liable for the torts committed by the individual defendants.

On December 5, 2008, the district court granted the Union's motion for a preliminary injunction and declined to overturn the TRO entered in state court prior to removal, which allowed the players to continue playing until the end of the NFL's 2008-09 season. Following expedited discovery, the parties filed cross-motions for summary judgment. The district court granted the NFL's motion for summary judgment in part and denied it in part. The court denied the Union and the Players' motion for summary judgment. First, the district court concluded that the Players' common law claims were preempted by section 301 such that they must be construed as section 301 claims. Second, the court determined that the arbitration awards did not fail to draw their essence from the CBA/Policy because the arbitrator's decision construed and applied the language of the Policy. Also the arbitrator acted within the scope of his discretion under the Policy. Third, the court concluded that the Union's argument—that the NFL and Dr. Lombardo violated public policy by failing to disclose that StarCaps contained bumetanide—failed because Dr. Lombardo warned players about weight-loss supplements in general and testified that had a player asked him about StarCaps he would have disclosed that it contained bumetanide. The court determined that Dr. Lombardo's decision not to provide an ingredient-specific warning was within his discretion. The court further decided that the NFL had no duty to specifically inform players when a supplement is found to contain a banned substance. Finally, the court determined that Pash was not a partial arbitrator and, even if Pash's involvement could somehow establish bias, the Players and the Union had waived any such claim. Therefore, the court dismissed the Union's section 301 breach of contract claim and the Players' common law claims (which the court had already determined were actually § 301 claims).

With respect to the Players' DATWA and CPA claims, the court found that the claims were not preempted because the rights and obligations under the statutes existed independently of the CBA/Policy. Having dismissed all of the federal claims, the district court declined to exercise supplemental jurisdiction over the DATWA and CPA claims, concluding that the statutes are a reflection of Minnesota public policy

-11-

and, thus, it was more appropriate for a Minnesota state court to resolve the claims. The NFL, the Players, and the Union each appeal portions of the district court's summary judgment order.

## II.

The NFL appeals the district court's partial denial of its motion for summary judgment. Specifically, the NFL appeals the district court's decision that the Players' Minnesota statutory claims are not preempted by section 301. Conversely, the Players appeal the district court's determination that their Minnesota common law claims are preempted by section 301. We review the preemption issues de novo. Bogan v. Gen. Motors Corp., 500 F.3d 828, 832 (8th Cir. 2007).

## A.

We first consider the DATWA claim. The NFL asserts that the DATWA claim is preempted because: (1) the claim turns on analysis of the Policy in order to determine whether it "meets or exceeds" DATWA's requirements, (2) the claim requires interpretation of the Policy in order to determine whether the NFL qualifies as an employer under DATWA such that the statute's protections extend to the Players, and (3) uniform interpretation of the CBA/Policy is necessary to preserve the integrity of the NFL's business as a national organization.

We begin our analysis by reviewing the section 301 preemption doctrine. Section 301 applies to "[s]uits for violation of contracts between an employer and a labor organization," 29 U.S.C. § 185(a), or, in other words, suits for breaches of CBAs. The Supreme Court has held that federal law exclusively governs suits for breach of a CBA, see Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456 (1957), and that "the pre-emptive force of [section] 301 extends beyond state-law contract actions[,]" United Steelworkers v. Rawson, 495 U.S. 362, 369 (1990); see

-12-

Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985). Section 301 preempts state-law claims that are "substantially dependent upon analysis" of a CBA, Lueck, 471 U.S. at 220, because "the application of state law . . . might lead to inconsistent results since there could be as many state-law principles as there are States . . . [,]" Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 406 (1988). Rather, "federal labor-law principles—necessarily uniform throughout the nation—must be employed to resolve the dispute." Id. However, the Court has established that section 301 does not preempt state law claims merely because the parties involved are subject to a CBA and the events underlying the claim occurred on the job. See Lueck, 471 U.S. at 211 ("Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 . . . ."); see also Graham v. Contract Transp., Inc., 220 F.3d 910, 913 (8th Cir. 2000) (providing that "a claim is not preempted simply because it relates to a dispute in the workplace").

In applying the section 301 preemption doctrine, we begin with "the claim itself," see Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc., 450 F.3d 324, 331 (8th Cir. 2006), and apply a two-step approach in order to determine if the claim is sufficiently "independent" to survive section 301 preemption, see Bogan, 500 F.3d at 832. First, a "state-law claim is preempted if it is 'based on' [a] . . . provision of the CBA[,]" meaning that "[t]he CBA provision at issue" actually sets forth the right upon which the claim is based. Id. Second, section 301 preemption applies where a state-law claim "is 'dependent upon an analysis' of the relevant CBA," meaning that the plaintiff's state-law claim requires interpretation of a provision of the CBA. Id.

DATWA governs drug and alcohol testing in the Minnesota workplace by imposing "minimum standards and requirements for employee protection" with regard to an employer's drug and alcohol testing policy. Minn. Stat. § 181.955 subdiv. 1.

DATWA lists minimum informational requirements for the contents of drug policies.[8]
Id. § 181.952 subdiv. 1. DATWA sets forth the criteria that a testing laboratory must
meet in order for an employer to use its services. Id. § 181.953 subdiv. 1.

DATWA also requires that an employer provide an employee, who tests
positive for drug use, with "written notice of the right to explain the positive test[,]"
Id. § 181.953 subdiv. 6(b), an opportunity "to explain that result," Id. § 181.953
subdiv. 6(c), and the ability to "request a confirmatory retest of the original sample at
the employee's or job applicant's own expense . . . [,]" id. DATWA precludes an
employer from "discharg[ing] [or] disciplin[ing] . . . an employee on the basis of a
positive result . . . that has not been verified by a confirmatory test." Id. § 181.953
subdiv. 10(a). Specifically, with respect to first-time offenders, an employer cannot
discharge such an employee unless the employee is first given the opportunity to
participate in treatment and refuses to participate or fails to successfully complete the
program. Id. § 181.953 subdiv. 10(b)(1)-(2).

DATWA expressly addresses CBAs. Subdivision two of section 181.955
mandates that DATWA applies to all CBAs in effect after passage of the law in 1987.
See id. § 181.955 subdiv. 2. However, subdivision one of section 181.955 provides

---

[8]Pursuant to DATWA, the drug policies of Minnesota employers must provide:

(1) the employees or job applicants subject to testing under the policy;
(2) the circumstances under which drug or alcohol testing may be
requested or required; (3) the right of an employee or job applicant to
refuse to undergo drug and alcohol testing and the consequences of
refusal; (4) any disciplinary or other adverse personnel action that may
be taken based on a confirmatory test verifying a positive test result on
an initial screening test; (5) the right of an employee or job applicant to
explain a positive test result on a confirmatory test or request and pay for
a confirmatory retest; and (6) any other appeal procedures available.

Minn. Stat. § 181.952 subdiv. 1(1)-(6).

-14-

that DATWA "shall not be construed to limit the parties to a collective bargaining agreement from bargaining and agreeing with respect to a drug and alcohol testing policy that meets or exceeds, and does not otherwise conflict with, the minimum standards and requirements for employee protection . . . ." Id. § 181.955 subdiv. 1.

We note that it is unclear which specific violations of DATWA that the Players are alleging, other than the failure to use certified laboratories.[9] The amended complaint does not flesh out the claim but generally states that the "[d]efendants have violated the Players' substantive and procedural rights under the Minnesota Drug and Alcohol Testing in the Workplace Act." (Am. Compl. ¶ 98.) The district court, in discussing the DATWA claim, noted that "[a]mong other things, DATWA provides that an employee may not be disciplined on the basis of an initial positive test and requires the employer to allow the employee the right to explain a positive test[,]" and that "[t]he NFL concedes that its steroid testing procedures do not comply with the letter of Minnesota law, but argues that the differences are negligible and do not require the Court to invalidate the Williamses' positive tests for bumetanide." (Dist. Ct. Summ. J. Order 20.)

First, the NFL contends that, because the Players were tested pursuant to a collectively bargained-for drug policy, DATWA liability hinges on whether the Policy affords protections that are equivalent to or greater than DATWA's mandatory protections. The NFL asserts that DATWA creates two paths to compliance such that an employer may conduct its drug testing either: (1) in compliance with DATWA or (2) pursuant to a CBA providing employees with equivalent or greater protections than DATWA. The NFL argues that this will necessarily require a court to construe the terms of the Policy in order to determine whether its protections for players "meets or exceeds" DATWA's protections such that any DATWA claim alleged by the Players is preempted by section 301. See Minn. Stat. § 181.055 subdiv. 1. Thus, the

---

[9]At oral argument, the Players' counsel indicated that their DATWA claim was premised, at least in part, on the NFL's conceded failure to use certified laboratories.

-15-

NFL is essentially arguing that an employee has no DATWA claim if he or she is a party to a CBA that is at least as protective of the employee as DATWA. We disagree.

DATWA does not state that an employee who is a party to such a CBA cannot bring a claim under DATWA. Rather, where there is a CBA that is at least as protective of employees as DATWA, the number of possible claims an employee has against his or her employer will be affected. Where the employer complies with DATWA but not with its CBA that provides greater protection, the employee could have a only a claim for breach of contract. Where the employer does not comply either with DATWA or its CBA that provides equivalent or greater protection than DATWA, the employee could potentially have two claims, a claim for breach of contract and a DATWA claim.

Here, a court would have no need to consult the Policy in order to resolve the Players' DATWA claim. Rather, it would compare the facts and the procedure that the NFL actually followed with respect to its drug testing of the Players with DATWA's requirements for determining if the Players are entitled to prevail. Such a claim is not preempted. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 261, 266 (1994) ("'[P]urely factual questions' about an . . . employer's conduct . . . do not 'requir[e] a court to interpret any term of a [CBA].'" (quoting Lingle, 486 U.S. at 407)); see also Thompson v. Hibbing Taconite Holding Co., No. 08-868, 2008 WL 4737442, *1, *4 (D. Minn. Oct. 24, 2008) (unpublished) (holding that a terminated employee's multiple DATWA claims alleged "violat[ions] [of] such non-negotiable state law rights [which] d[id] not require an interpretation of the CBA, and would not be preempted under the LMRA"). The Tenth Circuit considered an analogous fact situation in Karnes v. Boeing Co., 335 F.3d 1189 (10th Cir. 2003). There, a former employee brought an action against Boeing under Oklahoma's Standards for Workplace Drug and Alcohol Testing Act. Id. at 1192. Although the plaintiff did not identify the specific sections of the Act that Boeing violated, the court observed that

-16-

"within the sections he cite[d]" was a provision providing that "[n]o disciplinary action, except for a temporary suspension or a temporary transfer to another position, may be taken by an employer against an employee based on a positive test result unless the test result has been confirmed by a second test." Id. at 193 (quotation omitted). The court observed that "[i]n order to establish a violation of this section, [the plaintiff] must show that Boeing (1) discharged him based on his drug test, and (2) failed to confirm the result through a second test. Neither inquiry requires a court to interpret, or even refer to, the terms of a CBA." Id. Therefore, the court found that the state statutory claim was "clearly independent of the CBA and . . . not subject to § 301 preemption." Id. at 1194.

Second, the NFL contends that, because DATWA provides employees with a cause of action against their employers, interpretation of the CBA/Policy is required in order to determine if the NFL qualifies as an employer under DATWA.[10] Section 301 preempts a state law claim if its "resolution . . . *depends upon the meaning* of a collective-bargaining agreement." Lingle, 486 U.S. at 405-06 (emphasis added). "[T]he Supreme Court has distinguished those which require interpretation or construction of the CBA from those which only require reference to it." Trustees, 450 F.3d at 330; see Livadas v. Bradshaw, 512 U.S. 107, 124-25 (1994) (holding there was no section 301 preemption because a wage rate provision of the CBA only had to be referenced to compute the proper damages). "An otherwise independent claim will not be preempted if the CBA need only be consulted during its adjudication." Trustees, 450 F.3d at 330. In sum, section 301 does not preempt every employment

---

[10]DATWA defines an employer as "a person or entity located or doing business in this state and having one or more employees . . . ." Minn. Stat. § 181.950 subdiv.7. An employee is "a person, independent contractor, or person working for an independent contractor who performs services for compensation, in whatever form, for an employer." Id. § 181.950 subdiv.6. The NFL maintains that the Minnesota Vikings, not the NFL and the individual defendants, are the Players' employer such that DATWA does not apply. Although the NFL conceded that it does business within Minnesota, it did not concede that it has one or more employees there.

dispute, and it does not preempt all other disputes concerning CBA provisions. <u>Miner v. Local 373</u>, 513 F.3d 854, 865 (8th Cir. 2008). "Rather, the crucial inquiry is whether 'resolution of a state-law claim depends upon the meaning of a [CBA].'" <u>Id.</u> (quoting <u>Lingle</u>, 486 U.S. at 405-06).

The NFL does not point to a specific provision of either the CBA or the Policy which must be interpreted. The CBA's Preamble provides that NFL players are "employed by a member club of the National Football League[.]" CBA, Preamble. Appendix C to the CBA contains the "NFL Player Contract,"[11] which provides that the contract "is between . . . [the] 'Player,' and . . . 'Club,' . . . as a member of the National Football League." <u>Id.</u> App. C at 248. The contract further states: "Club employs Player as a skilled football player. Player accepts such employment." <u>Id.</u> None of these references require interpretation, only mere consultation, which is insufficient to warrant preemption of an otherwise independent state law claim. <u>See</u> <u>Livadas</u>, 512 U.S. at 124-25; <u>Trustees</u>, 450 F.3d at 330. Furthermore, the Players' contracts, likely dispositive in determining who their employer is, are actually separate documents from the CBA such that there is no need to reference the form contract contained in Appendix C of the CBA to examine them.[12]

---

[11]The CBA states that the form contract contained in Appendix C "will be used for all player signings" and "cannot be amended without the approval of the [NFLMC] and the [Union]." CBA art. XIV, § 1.

[12]We note that the matter of who is the employer of an NFL player was addressed in <u>Brown v. Nat'l Football League</u>, 219 F. Supp. 2d 372 (S.D.N.Y. 2002). There, a former NFL player brought a personal injury action in state court against the NFL, seeking damages for a career-ending eye injury he sustained during a game when a referee threw a penalty flag that struck the player in the eye. <u>Id.</u> at 375. The district court observed, "At the time of his injury, Brown worked not for the NFL, but for the Cleveland Browns Football Company, a Delaware limited partnership and an entirely separate entity which happens to be a member of the NFL." <u>Id.</u> at 383. The owners of NFL teams "own franchises in the NFL and employ the [U]nion members as football players." <u>Id.</u>; <u>see also</u> <u>Clarett v. Nat'l Football League</u>, 369 F.3d 124, 138

Finally, the NFL argues that denying preemption and subjecting the Policy to divergent state regulations would render the uniform enforcement of its drug testing policy, on which it relies as a national organization for the integrity of its business, nearly impossible. The Ninth Circuit, sitting en banc, has rejected a similar argument. See Cramer v. Consolidated Freightways, Inc., 255 F.3d 683, 695 n.9 (9th Cir. 2001) (en banc). In Cramer, the employer, a large trucking company, "argue[d] that the terms of CBAs affecting employees in multiple states should supersede inconsistent state laws." Id. at 688, 695 n.9. The Ninth Circuit observed, "This contention overreaches, however, because the LMRA certainly did not give employers and unions the power to displace any state regulatory law they found inconvenient." Id. at 695 n.9. We think this is the proper result in light of the Supreme Court's observation that:

> [T]here [is not] any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. *Clearly, § 301 does not grant the parties to a [CBA] the ability to contract for what is illegal under state law.* In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with

---

(2d Cir. 2004) ("Because the NFL players have unionized and have selected the NFLPA as its exclusive bargaining representative, labor law prohibits Clarett from negotiating directly the terms and conditions of his employment with any NFL club[.]"); White v. Nat'l Football League, 41 F.3d 402, 406 (8th Cir. 1994), abrogated on other grounds by Amchem Prods. v. Windsor, 521 U.S. 591 (1997) ("The settlement agreement [at issue] purports to end a six-year dispute between the NFL member teams and their player-employees."); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1269 (3d Cir. 1979) ("This appeal presents several interesting questions growing out of the employment by the Philadelphia Eagles Football Club ('the Eagles') of a former professional player, Don Chuy ('Chuy').")." We do not address the impact of this on the Players' ability to prevail on their DATWA claim against the NFL.

congressional intent under that section to preempt state rules that
proscribe conduct, or establish rights and obligations, independent of a
labor contract.

Lueck, 471 U.S. at 211-12 (footnote omitted) (emphasis added); see Livadas, 512 U.S.
at 123 (cautioning that section 301 "cannot be read broadly to pre-empt nonnegotiable
rights conferred on individual employees as a matter of state law"); see also Karnes,
335 F.3d at 1194 (noting that "the fact that the CBA incorporated Boeing's anti-drug
policy is irrelevant because '§ 301 does not grant the parties to a [CBA] the ability to
contract for what is illegal under state law'" (quoting Lueck, 471 U.S. at 212)).
Therefore, the NFL's national uniformity argument fails.

In sum, the Players' DATWA claim is predicated on Minnesota law, not the
CBA or the Policy, and the claim is not dependent upon an interpretation of the CBA
or the Policy. Thus, the Players' DATWA claim is not preempted by section 301.

B.

We now turn to the CPA claim. The CPA generally prohibits employers from
"disciplin[ing] or discharg[ing] an employee because the . . . employee engages in or
has engaged in the use or enjoyment of lawful consumable products, if the use or
enjoyment takes place off the premises of the employer during nonworking hours."
Minn. Stat. § 181.938 subdiv. 2. "'[L]awful consumable products' means products
whose use or enjoyment is lawful and which are consumed during use or enjoyment,
and includes food, alcoholic or nonalcoholic beverages, and tobacco." Id. However,
employers can restrict employee consumption of "lawful consumable products" if they
"relate[] to a bona fide occupational requirement and [are] reasonably related to
employment activities or responsibilities of a particular employee or group of
employees," id. § 181.938 subdiv. 3(a)(1), or are "necessary to avoid a conflict of
interest or the appearance of a conflict of interest with any responsibilities owed by
the employee to the employer[,]" id. § 181.938 subdiv. 3(a)(2).

-20-

The NFL asserts that the CPA claim is subject to section 301 preemption because: (1) whether the Policy's ban on bumetanide violates the CPA requires interpretation of the Policy in order to determine whether the ban is a bona fide occupational requirement or necessary to avoid a conflict of interest, (2) the CPA only applies to the use of substances "off the premises of the employer" and "during nonworking hours" such that a court would have to analyze the CBA and the Policy in order to determine whether the CPA applies here, and (3) the Players waived their rights under the CPA when the Union, their bargaining agent, became a party to the Policy.

First, the NFL contends that the Players' CPA claim is preempted by section 301 because, without interpreting the CBA and the Policy, a court cannot determine whether the ban on bumetanide is a bona fide occupational requirement, or necessary to avoid a conflict of interest such that the ban does not violate the CPA. However, the NFL's defenses to liability under the CPA are not relevant to our section 301 analysis.[13]   See Bogan, 500 F.3d at 833; see also Meyer v. Schnucks Markets,

_____

[13]This court has previously addressed the conflict in our precedent with regard to the section 301 preemption with some of our cases failing to apply section 301 preemption "in an appropriately narrow way." See Meyer v. Schnucks Markets, Inc., 163 F.3d 1048, 1050 (8th Cir. 1998). The Meyer Court stated:

> When faced with conflicting precedents of this kind, we are free to choose which line of cases to follow. We think that the narrower approach to LMRA preemption, which asks only whether the claim itself is necessarily grounded in rights established by a CBA, is more faithful to the Supreme Court's [precedent] . . . .

Id. at 1051 (citation omitted). Specifically, with respect to defenses to liability as a basis for section 301 preemption, our precedent is conflicted. See Bogan, 500 F.3d at 833. For example, in Johnson v. Anheuser Busch, Inc., 876 F.2d 620 (8th Cir. 1989), this court stated that an employer's "defenses, as well as [the employee's] claims, must be considered in determining whether resolution of the state law claim requires construing the [CBA]." Id. at 623 (quotation omitted). However, the Bogan

-21-

Inc., 163 F.3d 1048, 1051 (8th Cir. 1998). Therefore, neither of the NFL's potential defenses to the Players' CPA claim, i.e. the bona-fide-requirement exception, see Minn. Stat § 181.938 subdiv. 3(a)(1), or the conflict-of-interest exception, see id. § 181.938 subdiv. 3(a)(2), can serve as a basis for subjecting the CPA claim to section 301 preemption.

Second, the NFL asserts that the CPA claim is subject to preemption because the CPA applies to the use of substances "off the premises of the employer" and

--------

Court noted, "[W]e have on other occasions rejected this broader approach to LMRA preemption, that is, an approach where the employer's defenses are relevant." 500 F.3d at 833. The Bogan Court applied the narrower approach in which an employer's defenses to liability are irrelevant to the question of section 301 preemption as "more faithful to [Supreme Court precedent]" and reversed the district court's determination that the plaintiff's intentional infliction of emotional distress claim was preempted." Id. (quotation omitted); see Dunn v. Astaris, LLC, 292 F. App'x 525, 527 (unpublished per curiam) (8th Cir. 2007). Dunn explained,

> Some of our cases have applied [Supreme Court precedent with regard to section 301 preemption] in a rather broad way. Nevertheless, we find the line of cases that has taken a narrower approach to LMRA preemption—asking only whether the claim itself, *regardless of probable defenses*, is necessarily grounded in rights established by the CBA—is the better approach.

Id. (citation omitted) (emphasis added).

We agree with Bogan and Meyer that the narrower approach to section 301 is more faithful to Supreme Court precedent and consider only the Players' CPA claim itself, and not the NFL's defenses to liability, in determining whether the claim is preempted. See Bogan, 500 F.3d at 833; Meyer, 163 F.3d at 1051; see also Caterpillar Inc. v. Williams, 482 U.S. 386, 398-99 (1987) (holding that a defendant cannot subject a state law claim to federal preemption by raising a defense that requires analysis of a CBA); Cramer, 255 F.3d at 691 (holding that "[i]f the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense") (citing Caterpillar, 482 U.S. at 398-99)).

"during nonworking hours," Minn. Stat. § 181.938 subdiv. 2, such that a court could not resolve whether the CPA applies here without interpreting the CBA and the Policy. We note that once again the NFL has failed to direct us to a specific provision of the CBA or the Policy that must be construed. The NFL asserts that the relevant time period is training camp since that is when the Players tested positive for bumetanide and suggests that, during that time, NFL players are never "off the premises of the employer" and have no "nonworking hours." (Nos. 09-2247/2492, Defs.-Appellants' Br. 30.)

Without any direction from the NFL, we have reviewed the 361-page document, provision-by-provision, for references to "training camp." Article XXXVII of the CBA is entitled "PRE-SEASON TRAINING CAMPS" and has eight sections: Definition, Room and Board, Rookie Per Diem, Veteran Per Diem, Reporting, Number of Pre-Season Games, Telephones, and Expenses. CBA, art. XXXVII. However, we see nothing in this section relevant to the terms "off the premises of the employer" or "nonworking hours." We have also looked to the CBA's other mentions of training camp but again found nothing relevant to the question of what constitutes "off the premises of the employer" and "during nonworking hours" while an NFL player is attending training camp. Furthermore, we find no mention of training camp in the Policy. We are unaware of exactly what document would resolve this issue; perhaps a team's schedule for training camp? But this is not our riddle to solve, as it is the NFL's burden to establish preemption of the Players' CPA claim. See Barnes ex rel. Estate of Barnes v. Koppers, Inc., 534 F.3d 357, 362 (5th Cir. 2008) ("[T]he party asserting federal preemption of state law . . . bears the burden of persuasion."). Thus, we reject the NFL's argument that preemption is necessary because resolving the meaning of the terms "off the premises of the employer" or "nonworking hours" while an NFL player is at training camp requires interpretation of the CBA and the Policy.

-23-

The NFL's final argument for preemption is that the Players have waived their rights under the CPA because their bargaining representative, the Union, agreed to the drug testing procedures and discipline provided for by the Policy. However, neither of the cases that the NFL relies on, Lueck and A.J. Lights, LLC v. Synergy Design Group, Inc., 690 N.W.2d 567 (Minn. Ct. App. 2005), supports such a proposition. First, the NFL quotes Lueck in part to state that "in the absence of any affirmative legislative direction, the presumption is that the [CPA's] rights 'can be waived or altered by agreement of private parties[.]'" (Nos. 09-2247/2492, Defs.-Appellants' Br. 31 (quoting Lueck, 471 U.S. at 213)) However, the entire quote from Lueck states something completely different: "[S]tate-law rights and obligations *that do not exist independently* of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempted by those agreements." Lueck, 471 U.S. at 213 (emphasis added). Because the CPA undisputedly creates rights independent of the CBA or the Policy, they cannot be waived or altered by the Union's agreement to the CBA and the Policy. Second, A.J. Lights examined whether "the [Minnesota Termination of Sales Representatives Act] supercede[s] a contractual arbitration agreement by allowing a sales representative to file a claim in a court of law prior to arbitration." 690 N.W.2d at 568. Therefore, A.J. Lights is wholly inapplicable here and the NFL has not demonstrated that, by agreeing to be bound by the CBA, the Players waived their rights under the CPA. Because each of the NFL's arguments for subjecting the Players' CPA claim to section 301 preemption fails, we hold that the CPA claim is not preempted.

C.

Finally, we consider the Players' common law claims: breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, violations of public policy, fraud, constructive fraud, negligent misrepresentation, negligence, gross negligence, intentional infliction of emotional distress, and vicarious liability. The Players argue that the claims are not preempted because they involve purely factual questions about

-24-

the NFL's conduct and do not require interpretation of any provision of the CBA or the Policy. Again, we consider issues of preemption de novo. Bogan, 500 F.3d at 832.

As with the Players' state statutory claims, "a state-law tort action against an employer may be pre-empted by [section] 301 . . . ." Rawson, 495 U.S. at 369 (citing Lueck, 471 U.S. at 211). We apply the same test here to determine whether such claims are preempted, examining whether the tort claims: (1) are premised on duties created by the relevant CBA such that they are "based on" the agreement, or (2) require interpretation of the CBA such that they are "dependent upon an analysis" of the agreement. See Bogan, 500 F.3d at 832.

According to the Players, their breach of fiduciary duty, negligence, and gross negligence claims are each "premised on the fact that the NFL had a common duty to the Williamses once it sought and found out the dangerous fact that StarCaps contained Bumetanide." (Nos. 09-2247/2462, Pls.-Appellees-Cross-Appellants' Br. 58) Thus, each tort claim is seeking recovery for the NFL's and the individual defendants' failure to disclose to the Players that StarCaps contained bumetanide, despite the defendants' undisputed awareness of that fact. The Players assert that this duty to provide an ingredient-specific warning for StarCaps does not arise from the Policy but from a duty that Minnesota law imposes on the NFL as a fiduciary, an employer, and as one who voluntarily undertook to act or speak. However, whether the NFL or the individual defendants owed the Players a duty to provide such a warning cannot be determined without examining the parties' legal relationship and expectations as established by the CBA and the Policy. Thus, the breach of fiduciary duty, negligence, and gross negligence claims are "inextricably intertwined with consideration of the terms of the [Policy]." See Bogan, 500 F.3d at 833 (quoting Lueck, 471 U.S. at 220). Because the claims "relating to what the parties to a labor agreement agreed . . . must be resolved by reference to uniform federal law," Lueck, 471 U.S. at 211, they are preempted by section 301.

-25-