The Players' misrepresentation claims (fraud, constructive fraud, and negligent misrepresentation)[14] are also preempted because the Players cannot demonstrate the requisite reasonable reliance to prevail on their claims without resorting to the CBA and the Policy. In Trustees, a Minnesota corporation brought a third-party complaint against a union, of which a number of the corporation's employees were members, claiming fraudulent and negligent misrepresentation, and fraudulent concealment. 450 F.3d at 326, 328. This court concluded that the plaintiff had not adequately pled fraudulent concealment under Minnesota law. Id. at 331. With respect to fraudulent and negligent misrepresentation, this court observed:

> Under Minnesota law both require proof that the plaintiff justifiably relied on the defendant's misleading statements. Whether a plaintiff's reliance was justifiable is determined in light of the specific information and experience it had. One can only justifiably rely on a statement which conflicts with the provisions of a written agreement it has signed if the agreement is couched in ambiguous legal language which a layman could reasonably believe supported the representation.

Id. at 331 (quotation omitted). The court concluded,

> To determine whether Superior justifiably relied on the oral assurances allegedly made by the Union, the trier of fact would have to determine whether the contractual language in the CBA was ambiguous enough for a layman reasonably to believe that it was not contrary to the representations on which Superior claims it relied. This would require the trier of fact to examine the provisions in [the CBA] . . . . Since

---

[14]Each of these claims require the Players to show they reasonably relied on the lack of an ingredient-specific warning with regard to StarCaps to establish that StarCaps did not contain a banned substance. See Smith v. Brutger Cos., 569 N.W.2d 408, 413 (Minn. 1997) (negligent misrepresentation); Perl v. St. Paul Fire & Marine Ins. Co., 345 N.W.2d 209, 213 (Minn. 1984) (constructive fraud); Midland Nat'l Bank of Minneapolis v. Perranoski, 299 N.W.2d 404, 411 (Minn. 1980) (fraudulent misrepresentation).

-26-

Dockets.Justia.com

> Superior has the burden under Minnesota law to establish justifiable
> reliance, it would have to show that all of the cited provisions [of the
> CBA] could plausibly be read together to be consistent with its alleged
> understanding of its fringe benefit obligations. Adjudication of the
> dispute and resolution of the third party claims will necessarily involve
> interpretation of the CBA.

Id. at 332 (citations omitted). Similarly here, the question of whether the Players can
show that they reasonably relied on the lack of a warning that StarCaps contained
bumetanide cannot be ascertained apart from the terms of the Policy, specifically
section eight, entitled "Masking Agents and Supplements" and Appendix G, entitled
"Supplements." Because resolving the Players' misrepresentation claims will require
interpretation of the Policy, they are preempted by section 301.

The Players' intentional infliction of emotional distress claim based on the
NFL's failure to warn them that StarCaps contained bumetanide is also preempted.
Under Minnesota law, "[t]o prove the intentional infliction of emotional distress,
respondent must show appellant's conduct (1) was extreme and outrageous; (2) was
intentional or reckless; (3) caused emotional distress; and that the emotional distress
caused by appellant (4) was severe." Wenigar v. Johnson, 712 N.W.2d 190, 207
(Minn. Ct. App. 2006). However, one can only evaluate the outrageousness of the
NFL's conduct, not disclosing to the Players that StarCaps contained bumetanide, in
light of what the parties have agreed to in the Policy. Because the claim hinges on
interpretation of the Policy, it is subject to preemption under section 301.

As to the Players' "Vicarious Liability/Respondeat Superior" claim, they allege:

> [a]t all times relevant to this litigation, Defendants Lombardo, Finkle,
> and Birch were agents or employees of the NFL acting within the scope
> of their employment by, or responsibilities to, Defendant NFL and in
> furtherance of Defendants' business. As Defendants Lombardo, Finkle
> and Birch's employer or nominal employer, Defendant NFL is
> responsible for the individual Defendants' actions and responsibilities

-27-

> within the scope of their employment and/or responsibilities. As a result
> of Defendants Lombardo, Finkle and Birch's torts within the scope of
> their employment with, or responsibilities to, Defendant NFL as alleged
> above . . . .

(Am. Compl. ¶ 93-94.)   Here, the Players are not seeking to impose separate tort
liability on the NFL.   Rather, they are premising liability on the torts of its
employees—the individual defendants—based on their employment with the NFL.
See Urban v. Am. Legion Dep't of Minn., 723 N.W.2d 1, 8 (Minn. 2006)
("[V]icarious liability is a principle whereby responsibility is imposed on the master
who is not directly at fault." (quotation omitted)).   Because we have concluded that
each of the underlying tort claims is preempted by section 301, we need not further
address vicarious liability.

## III.

The Union seeks to vacate the arbitration awards, affirming the NFL's
suspension of the five players who tested positive for bumetanide, pursuant to section
301.   In reviewing a district court's order confirming arbitration awards, we review
conclusions of law de novo and findings of fact for clear error.   Winfrey v. Simmons
Foods, Inc., 495 F.3d 549, 551 (8th Cir. 2007).   However, "[o]ur review is restricted
by the great deference accorded arbitration awards.   The award must be confirmed so
long as the arbitrator is even arguably construing or applying the [agreement] even if
the court thinks that his interpretation of the agreement is in error." Id. (quotations
omitted).

We have noted that, "[a]lthough an arbitrator has broad authority, the arbitrator
is not wholly free from judicial review.   An arbitrator's award can be vacated for the
reasons provided in the Federal Arbitration Act (FAA)." Schoch v. InfoUSA, Inc.,
341 F.3d 785, 788 (8th Cir. 2003) (citing 9 U.S.C. § 10(a) (listing several reasons to
vacate including: corruption, fraud, undue means, evident partiality, misconduct, or
ultra vires acts)).

In addition to the statutory reasons for vacating arbitration awards, our court has recognized two extremely narrow judicially created standards for vacating an arbitration award. First, an arbitrator's award can be vacated if it is completely irrational, meaning it fails to draw its essence from the agreement. . . . The second judicially created standard for vacating an arbitration award is when the award evidence[s] a manifest disregard for the law.

Id. (quotations omitted).

The Union asserts three bases for vacating the arbitration awards: (1) the awards ignore the Policy provision requiring that Dr. Lombardo independently determine whether to recommend players for discipline which was violated as a result of the NFL's interference, (2) the awards violate public policy requiring both the NFL and Dr. Lombardo to disclose a specific, potentially lethal health risk otherwise unknown to NFL players, and (3) the awards were issued by a biased arbitrator in light of Pash's undisclosed legal advice to the Vikings and the NFL with regard to the Players. We address each in turn.

First, the Union argues that the awards fail to draw their essence from the Policy. Specifically, the Union asserts that the arbitrator ignored the provision in the Policy providing Dr. Lombardo with the discretion to determine whether a positive test result for a banned diuretic (like bumetanide) should be referred for discipline. The Union argues that Dr. Lombardo did not possess the requisite discretion to determine whether to refer the five players for discipline because Birch had previously instructed Dr. Lombardo to do so. "An arbitrator's award draws its essence from the [parties' agreement] as long as it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." Schoch, 341 F.3d at 788 (quotation omitted). However, "[a]n arbitrator is not free to ignore or abandon the plain language of the parties' agreement." Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC, 319 F.3d 1060, 1065 (8th Cir. 2003); see Keebler Co. v. Milk Drivers & Dairy Employees Union, Local No. 471, 80 F.3d 284, 288 n.4 (8th Cir. 1996).

Under the 2006 Policy, Dr. Lombardo served as the "Advisor," and "ha[d] the sole discretion to make determinations regarding steroid-related matters, including medical evaluations and testing." NFL Players Association, National Football League Policy on Anabolic Steroids and Related Substances § 2 (2006). Dr. Lombardo testified that, in 2006, he did not refer any of the players who tested positive for bumetanide for discipline. (No. 09-2249, Appellant App. 209.) Sometime between December 2006 and the start of the 2007-08 NFL season, Birch directed Dr. Lombardo to forward for discipline all positive test results for diuretics. (Id. at 224-26, 256.) Dr. Lombardo complied with Birch's request. (Id. at 224-25.) The Policy was subsequently amended. Under the 2008 Policy, which was in effect at the time that the five players tested positive for bumetanide and Dr. Lombardo referred them for discipline, Dr. Lombardo's title was Independent Administrator. Policy, § 2. The Policy provides: "Neither the NFL, the [Union], nor any NFL Member Club directs the specific testing schedule, decides which players will be tested, or influences the Independent Administrator's determination whether a potential violation has occurred and should be referred for further action." Id. Dr. Lombardo testified that, absent Birch's directive prior to the 2007-08 season, Dr. Lombardo would not have referred any of the five players involved in this case for discipline as a result of their positive test results for bumetanide. (No. 09-2249, Appellant App. 233-34.)

The Union argues that Birch's directive violated both the provisions of the 2006 Policy and the 2008 Policy which vested Dr. Lombardo with the discretion to determine which positive results were referred for discipline. The Union further asserts that the arbitrator's failure to recognize these violations means that he ignored the policies in issuing the arbitration awards. However, the Union's allegations constitute a challenge to the actions of Birch and the NFL, not those of the arbitrator. The Union admits that it did not learn of Birch's directive until discovery in this case, which took place after the arbitration hearing and decision. There is no indication that the arbitrator knew of Birch's direction when he issued the awards. Thus, it is clear

-30-

that the arbitrator did not "ignore" the provisions of either the 2006 or 2008 Policies when he issued the awards. Therefore, Birch's directive is not a reason to vacate the arbitrator's award in this case.

Second, the Union argues that upholding the awards must be vacated because the awards approve of the NFL's and Dr. Lombardo's failure to warn NFL players that StarCaps, an over-the-counter supplement, contained bumetanide, a potentially seriously harmful substance, in violation of public policy. "If the [Policy] as interpreted by [the arbitrator] violates some explicit public policy, [courts] are obliged to refrain from enforcing it." W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum, & Plastic Workers, 461 U.S. 757, 766 (1983). However, "[s]uch a public policy . . . must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" Id. (quoting Muschany v. United States, 324 U.S. 49, 66 (1945)); see United Food & Commercial Workers' Union Local 655 v. St. John's Mercy Health Sys., 448 F.3d 1030, 1032 (8th Cir. 2006) ("An award should of course not be enforced if it would violate some explicit public policy."). The Supreme Court has further instructed that "the public policy exception is narrow . . . ." E. Associated Coal Corp. v. United Mine Workers, 531 U.S. 57, 63 (2000); see MidAm. Energy Co. v. Int'l Bhd. of Elec. Workers Local 499, 345 F.3d 616, 619 (8th Cir. 2003).

The Union argues that the awards violated the public policy of governing New York law which imposes a duty on the NFL as a fiduciary in connection with the Policy and as an employer to disclose the presence of bumetanide, a prescription diuretic, in StarCaps.[15] The Union further asserts that Dr. Lombardo had a duty to

---

[15]The CBA provides that "[t]o the extent that federal law does not govern the implementation of this Agreement, this Agreement shall be construed and interpreted under, and shall be governed by, the laws applicable to contracts made and performed in the State of New York." CBA, art. LIX. The NFL does not dispute that New York

issue the same disclosure as a fiduciary in connection with his role as Independent Administrator of the Policy and as a physician. However, the Union has offered no authority clearly articulating such a public policy under New York law. Because the Union has failed to demonstrate an explicit, well defined, and dominant public policy requiring such a disclosure, see W.R. Grace & Co., 461 U.S. at 766; Ace Elec. Contractors, 414 F.3d at 900, this narrow ground does not provide a basis for vacating the awards.

Finally, the Union argues that the awards must be vacated because they are tainted by the arbitrator's evident partiality. Specifically the Union asserts that it first learned that the arbitrator gave both the Vikings and the Commissioner legal advice on the subject matter of the arbitrations, during discovery in this case.

The FAA allows a court to vacate an award for an arbitrator's "evident partiality." 9 U.S.C. § 10(a)(2). Evident partiality exists where the non-disclosure at issue "*objectively* demonstrate[s] such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives." Dow Corning Corp. v. Safety Nat'l Cas. Corp., 335 F.3d 742, 750 (8th Cir. 2003) (quotation omitted).   This is a "heavy burden." Choice Hotels Int'l, Inc. v. SM Prop. Mgmt., LLC, 519 F.3d 200, 212 (4th Cir. 2008) (quoting Three S. Del., Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007)).   This standard "is not made out by the mere appearance of bias." 3 Fed. Proc. § 4:119 (Lawyers ed. 2009).

First, "the parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen." Winfrey, 495 F.3d at 551 (quotation omitted).   The Union agreed in the Policy that "the Commissioner or his designee will preside as Hearing Officer."   Policy, § 10. Here, the designee was Jeffrey Pash, the NFL's general counsel, and it is undisputed

---

law governs this issue.

-32-

that there was no objection to him serving as arbitrator prior to this lawsuit. The Union explains this failure as a result of the fact that they did not learn of the basis for Pash's alleged evident partiality until discovery in this case. During discovery, the Union learned that Pash met with the Vikings three times between October 23, 2008, and early November 2008, and, at some point, discussed the Players. Specifically, Pash described his statements to the Vikings as

> in the context of what I understood to be and was aware of threats of litigation that could arise out of this proceeding. And so I was framing my advice in that context . . . . I can't say that . . . I knew . . . at the very first that the Williams players . . . were involved. But I believe that at some point I knew that they were involved.

(No. 09-2249, Defs.-Appellees' Supp. App. 234.) Pash became aware of the Players' litigation threats from their attorney, Mr. Ginsberg. (Id.) Even if prior to discovery in this case the Union was not specifically aware of Pash's communication of the information he received from the Players' counsel to the Vikings and Commissioner, the Union cannot reasonably claim to be surprised that such discussion occurred given Pash's position as general counsel for the NFL. Thus, the Union waived any objection as to Pash's evident partiality premised on his communication of litigation threats to the NFL and the Vikings, which he learned of from the Players' counsel, by failing to object to the general counsel for the NFL serving as arbitrator.

Second, even if the Union has not waived this issue, the Union has failed to carry the "heavy burden," Choice Hotels Int'l, 519 F.3d at 212, of demonstrating that Pash's actions show evident partiality as the Union has not even alleged that Pash's actions were motivated by "improper motives." Dow Corning, 335 F.3d at 750. Either the Union has: (1) waived its objection to Pash serving as arbitrator by agreeing in the CBA that the Commissioner's designee (which is what Pash was) could serve as arbitrator or (2) failed to demonstrate evident partiality on Pash's part. Therefore, we decline to vacate the awards on this basis. In sum, we reject each of the Union's

arguments for vacating the awards.  Accordingly, we affirm the district court's order confirming the awards.

## IV.

For the foregoing reasons, we affirm the judgment of the district court in all respects.

-----------------------------------

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

No:  09-2247

---

Kevin Williams; Pat Williams,

Plaintiffs - Appellees

v.

National Football League; John Lombardo, M.D.,

Defendants - Appellants

Brian Finkle,

Defendant

Adolpho Birch,

Defendant - Appellant

-------------------------------

National Basketball Association; National Hockey League; United States Anti-Doping Agency; Major League Baseball,

Amici on behalf of Appellant

---

No:  09-2249

---

National Football League Players Association,

Plaintiff - Appellant

v.

National Football League;
National Football League Management Council,

Defendants – Appellees

No: 09-2462

Kevin Williams; Pat Williams,

Plaintiffs - Appellants

v.

National Football League; John Lombardo, M.D.,

Defendants - Appellees

Brian Finkle,

Defendant

Adolpho Birch,

Defendant - Appellee

------------------------------

Major League Baseball; National Basketball Association; National Hockey League; United States Anti-Doping Agency,

Amici on behalf of Appellant

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06255-PAM)
(0:08-cv-06254-PAM)
(0:08-cv-06255-PAM)

## JUDGMENT

These appeals from the United States District Court were submitted on the record of the district court, briefs of the parties and were argued by counsel.

After consideration, it is hereby ordered and adjudged that the judgments of the district court in these causes are affirmed in accordance with the opinion of this Court.

September 11, 2009

Order Entered in Accordance with Opinion:
Clerk, U.S. Court of Appeals, Eighth Circuit.

_____
/s/ Michael E. Gans

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 09-2247

Kevin Williams and Pat Williams,

Appellees

v.

National Football League and John Lombardo, M.D.,

Appellants

Brian Finkle,

Adolpho Birch,

Appellant

------------------------------

National Basketball Association, et al.,

Amici on behalf of Appellant

No: 09-2249

National Football League Players Association,

Appellant

v.

National Football League and National Football League Management Council,

Appellees

No: 09-2462

Kevin Williams and Pat Williams,

Appellants

v.

National Football League and John Lombardo, M.D.,

Appellees

Brian Finkle,

Adolpho Birch,

Appellee

-------------------------------

Major League Baseball, et al.,

Amici on behalf of Appellant

---

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06255-PAM)
(0:08-cv-06254-PAM)
(0:08-cv-06255-PAM)

---

## ORDER

The motion of appellants for an extension of time until October 9, 2009, to file a petition for rehearing is granted.

Petitions for rehearing and rehearing en banc must be received in the clerk's office on the due date.  No grace period for mailing is allowed and the date of the postmark is irrelevant.

September 23, 2009

Order Entered Under Rule 27B(a):
Clerk, U.S. Court of Appeals, Eighth Circuit.

---

/s/ Michael E. Gans

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 08-3974

Kevin Williams and Pat Williams,

Appellees

v.

National Football League, et al.,

Appellants

No: 09-1008

National Football League Players Association,

Appellee

v.

National Football League and National Football League Management Council,

Appellants

---

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06255-PAM)

---

### ORDER

The parties are requested to file supplemental letter briefs on the impact the court's September 11, 2009 decision in Nos. 09-2247/2462 Pat Williams, et al. v. NFL, et al. and No. 09-2249 NFLPlayers Association v. NFL may have on the issues in the case. The NFL's letter brief is due October 14, 2009 and the Players Association's and Kevin and Pat Williams's response is due October 28, 2009. The NFL may file reply by November 3, 2009.

October 02, 2009

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

---

/s/ Michael E. Gans

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

Michael E. Gans
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

October 27, 2009

Mr. Peter R. Ginsberg
CROWELL & MORING
590 Madison Avenue
20th Floor
New York, NY  10022-2524

Mr. Ronn B. Kreps
FULBRIGHT & JAWORSKI
80 S. Eighth Street
2100 IDS Center
Minneapolis, MN  55402-2112

Mr. Patrick S. Williams
BRIGGS & MORGAN
80 S. Eighth Street
2200 IDS Center
Minneapolis, MN  55402-0000

RE:  09-2247  Kevin Williams, et al v. National Football League, et al

Dear Counsel:

A petition for rehearing with petition for rehearing en banc has been filed by the appellants in the above case. I have been instructed by the court to request you to respond to the petition.

Please electronically file your response, limited to ten pages, by November 6, 2009.  If you have any questions concerning the court's request, please contact this office.

Michael E. Gans
Clerk of Court

DMH

cc:     Mr. Neil Abramson
        Ms. Marla S. Axelrod
        Daniel J. Dunn
        Howard L. Ganz
        Mr. Peter D. Gray
        Mr. Patrick John Lamparello III

Honorable Paul A. Magnuson
Ms. Patricia Ann Millett
Mr. Daniel L. Nash
Mr. Brent E. Rychener
Mr. Joseph George Schmitt
Ms. Monica Sekhon
Mr. Richard Sletten
Mr. Michael C. Small
Mr. Duncan Stevens
Mr. David Hilton Wright
Mr. Richard R. Young


District Court/Agency Case Number(s):   0:08-cv-06255-PAM

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 08-3974

Kevin Williams and Pat Williams,

Appellees

v.

National Football League, et al.,

Appellants

---

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06255-PAM)

---

## ORDER

It being apparent from the parties' submissions in this matter that the substance of the appeal is related to case No. 09-2247 <u>Kevin Williams, et al. v. National Football League, et al.</u> (decided September 11, 2009), in which a petition for rehearing en banc is pending. A response to the petition in 09-2247 is due on November 6, after which the judges of this court will have fourteen days in which to decide whether to rehear that matter. Accordingly, it is hereby ordered that No. 08-3974 is removed from the oral argument calendar set for November 17, 2009.

November 05, 2009

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

---

/s/ Michael E. Gans

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

Nos. 09-2247/2462

---

| | | |
|---|---|---|
| Kevin Williams; Pat Williams, | * | |
| | * | |
| Plaintiffs - Appellees/ | * | |
| Cross Appellants, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the District |
| National Football League; | * | of Minnesota. |
| John Lombardo, M.D., | * | |
| | * | |
| Defendants - Appellants/ | * | |
| Cross Appellees, | * | |
| | * | |
| Brian Finkle, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Adolpho Birch, | * | |
| | * | |
| Defendant - Appellant/ | * | |
| Cross Appellee. | * | |
| | * | |
| | * | |
| National Basketball Association; | * | |
| National Hockey League; | * | |
| United States Anti-Doping Agency; | * | |
| Major League Baseball, | * | |
| | * | |
| Amici on behalf of | * | |
| Appellant. | * | |

_____

No. 09-2249

_____

| National Football League Players | * |
| Association, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * |
| | * |
| National Football League; National | * |
| Football League Management Counsel, | * |
| | * |
| Defendants - Appellees. | * |
| | * |

_____

ORDER

The petition for rehearing en banc is denied. The petition for rehearing by the panel is also denied.

LOKEN, Chief Judge, dissenting from denial of rehearing en banc.

I join Part II of Judge Colloton's dissent. In addition, I conclude that another aspect of the panel's decision warrants rehearing en banc.

The panel explains that the statutory claims under Minnesota's Drug and Alcohol Testing in the Workplace Act and Lawful Consumable Products Act were first asserted by Vikings players Kevin Williams and Pat Williams after the NFL removed their case to federal court. After dismissing the players' common law and federal claims, and the NFLPA's § 301 claim, the district court declined to exercise

-2-

supplemental jurisdiction over these statutory claims, leaving the injunction against the NFL's suspension of the players in place while those claims are litigated in state court. In my view, this was an abuse of discretion that seriously jeopardizes important interests protected by the federal labor laws.

Even if § 301 complete preemption would not apply to removal of these Minnesota statutory claims to federal court, "when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives." Caterpillar Inc. v. Williams, 482 U.S. 386, 398 (1987). The Minnesota statutes in question afford an employee remedies against his "employer." See MINN. STAT. §§ 181.938, 181.956. Thus, one defense to these claims is that the NFL is not an "employer" subject to the statutory duties and remedies. As the panel recognized, the question whether, for these purposes, the employer of Kevin Williams and Pat Williams is the NFL or the Minnesota Vikings is complex. A proper answer requires analysis of the Collective Bargaining Agreement between the NFL and the NFLPA, the NFL Constitution and Bylaws, and the Standard Player Contract between the players and the Vikings. See Clarett v. NFL, 369 F.3d 124, 127-28 (2d Cir. 2004); Mackey v. NFL, 543 F.2d 606, 610-11 (8th Cir. 1976). Thus, the defense requires a sophisticated understanding of the collectively bargained relationships -- the "law of the shop" as the Supreme Court has called it -- not mere reference to the bare terms of the CBA.

The NFL as a joint venture of individual professional sports teams has collectively bargained a regime in which players bargain some terms and conditions of employ individually with their teams while other terms "are reserved to the NFL and the players union's selected representative to negotiate." Clarett, 369 F.3d at 139. Preserving this regime is important to the federal labor laws:

> Multiemployer bargaining itself is a well-established, important, pervasive method of collective bargaining, offering advantages to both management and labor. . . . The upshot is that the practice at issue here plays a significant role in a collective-bargaining process that itself constitutes an important part of the Nation's industrial relations system.

Brown v. Pro Football, Inc., 518 U.S. 231, 240 (1996).

Moreover, § 301 preemption is not the only issue of federal law lurking here. If the NFL is not properly considered the players' employer, the result will be a state law injunction against a non-employer that seriously undermines the collectively bargained competitive parity between NFL teams. This calls into play another facet of federal labor law preemption, "whether the exercise of plenary state authority to curtail or entirely prohibit self-help would frustrate effective implementation of the [Nation Labor Relations] Act's processes." Lodge 76, IAM v. Wisc. Employment Relations Comm'n, 427 U.S. 132, 147-48 (1976) (quotation omitted).

In these circumstances, even if the district court and the panel correctly concluded that these Minnesota statutory claims are not completely preempted by § 301, it was an abuse of discretion to decline jurisdiction over these claims, which were first asserted in federal court and raise important questions of federal law. Accordingly, I respectfully dissent from the denial of rehearing en banc.

COLLOTON, Circuit Judge, with whom RILEY and GRUENDER, Circuit Judges, join, and with whom LOKEN, Chief Judge, joins as to Part II, dissenting from denial of rehearing en banc.

The appeal of the National Football League, Dr. John Lombardo, and Adolpho Birch (collectively, "the NFL") argues that Minnesota state-law claims

-4-

asserted by Kevin Williams and Pat Williams of the Minnesota Vikings are preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In holding that the claims are not preempted, the panel reasoned that the NFL's defenses to liability under Minnesota law must not be considered in determining whether the state-law claims are "substantially dependent upon analysis" of a collective bargaining agreement, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985), and thus preempted by § 301. *Williams v. National Football League*, 582 F.3d 863, 879 n.13 (8th Cir. 2009). The panel observed that there is a "conflict in our precedent" regarding whether defenses to state-law claims should be considered in the preemption analysis, but concluded that it was "'free to choose which line of cases to follow,'" *id.* (quoting *Meyer v. Schnucks Mkts., Inc.*, 163 F.3d 1048, 1050 (8th Cir. 1998)), and elected to rule in this case that the employer's defenses are irrelevant.

I.

This circuit has a peculiar approach to conflicting prior panel opinions. The prior panel rule emphatically holds that "[o]ne panel of this Court is not at liberty to disregard a precedent handed down by another panel," *Drake v. Scott*, 812 F.2d 395, 400 (8th Cir. 1987), but if a second panel violates this rule and deviates from circuit precedent, then subsequent panels are free to follow suit, and to disregard the original circuit precedent in favor of the second decision. *See Williams*, 582 F.3d at 879 n.13. This notion is often attributed to a decision in which the panel actually recognized that the first decision properly controls, as it should have controlled the second and subsequent panels. *Kostelec v. State Farm Fire and Cas. Co.*, 64 F.3d 1220, 1228 n.8 (8th Cir. 1995); *see also T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006) ("When we are confronted with conflicting circuit precedent, the better practice normally is to follow the earliest opinion, as it should have controlled the subsequent panels that created the conflict.") (citing *Kostelec*, 64 F.3d at 1228 n.8). Later decisions, however, have

-5-

simply asserted authority to choose either precedent, without regard to sequence, *e.g., Graham v. Contract Transp., Inc.*, 220 F.3d 910, 914 (8th Cir. 2000) (citing *Kostelec*, 64 F.3d at 1228 n.8), thus making this court an outlier among the circuits. *See McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (holding that "as to conflicts between panel opinions, application of the basic rule that one panel cannot overrule another requires a panel to follow the earlier of the conflicting opinions," and collecting authority to demonstrate that "[m]ost of the other circuits agree").

If this court is going to follow such an unusual rule (a question that may deserve en banc treatment in and of itself), then the court should be more receptive to petitions for rehearing en banc that seek resolution of conflicting circuit precedents. A principal purpose of en banc review is "to secure and maintain uniformity of the court's decisions." Fed. R. App. P. 35(b)(1)(A). If future panels are "free to choose" each time among conflicting rules of law, articulated by different prior panels, then the law is not predictable. One case may hold that state-law defenses are irrelevant to preemption analysis under § 301; the next case may hold that defenses are dispositive; the third case may revert to the rule of irrelevance, and so on. Parties cannot know in advance what rule will govern their case; district courts may waste valuable time by picking the wrong side of an intra-circuit conflict. The conflict cited by the petition for rehearing in this case involves an important question of federal law that should be settled, one way or the other.

II.

This case also warrants further review because it appears, on the merits, that the panel has chosen to follow the wrong line of circuit precedent. As the petition for rehearing explains, our cases seem to have confused "ordinary preemption" with "complete preemption." The doctrine of complete preemption is a corollary

to the "well-pleaded complaint" rule, both of which concern the proper *forum* – federal or state – in which a claim should be litigated. The well-pleaded complaint rule establishes that a case "may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (emphasis omitted). The doctrine of complete preemption, however, provides that even a complaint that purports to plead only a state-law claim may be "completely preempted" by § 301, and thus removable to federal court, if *the claim pleaded by the plaintiff* is "founded directly on rights created by collective-bargaining agreements" or "substantially dependent on analysis of a collective-bargaining agreement." *Id.* at 394 (internal quotation omitted). With respect to an employer's defenses to state-law claims, the Supreme Court in *Caterpillar* explained that *complete preemption* and *removal to federal court* may not be premised on "the presence of a federal question, even a § 301 question, in a defensive argument." *Id.* at 398.

Ordinary preemption, by contrast, provides a substantive defense to a state law action on the basis of federal law, in whatever forum the case it is litigated. *See Firstcom, Inc. v. Qwest Corp.*, 555 F.3d 669, 677 & n.6 (8th Cir. 2009); *Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 329 n.3 (8th Cir. 2006). The NFL in this case invoked an ordinary preemption defense, based on § 301, against state-law claims that the plaintiffs filed in federal court. There was no dispute about complete preemption or removal jurisdiction.

The *Williams* panel suggested that its decision was "more faithful to Supreme Court precedent," 582 F.3d at 879 n.13, but the *Caterpillar* decision on which it relied did not establish that an employer's defenses are irrelevant to whether a plaintiff's state-law claim is defeated by principles of ordinary

-7-

preemption.  To the contrary, while the employer in *Caterpillar* argued that its
defense to the plaintiffs' state-law claim required interpretation of a collective-
bargaining agreement, such that § 301 preempted the claim, the Court *intimated no
view* on the merits of that preemption argument, leaving it to be addressed in the
first instance by the state court in which the plaintiffs filed their claims.  482 U.S.
at 398 & n.13.  Of course, if the employer's defense were irrelevant to ordinary
preemption, as the *Williams* panel concluded, then there would have been no
reason for the Court in *Caterpillar* to reserve judgment on the merits of the
preemption defense.  Similarly, in deciding whether a state-law retaliatory
discharge claim was preempted by § 301 under principles of ordinary preemption,
the Supreme Court in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399
(1988), considered whether the employer's defense to the state-law claim turned on
the meaning of a provision of a collective-bargaining agreement.  *Id.* at 407.
Again, if the employer's defenses were irrelevant to the ordinary preemption
analysis, then there would have been no reason for the Court to consider them.

Our earliest cases concerning preemption and § 301 understood the Supreme
Court to mean that defenses were relevant to ordinary preemption.  *See Hanks v.
General Motors Corp.*, 859 F.2d 67, 70 (8th Cir. 1988) ("*Lingle* makes plain . . .
that the defenses, as well as claims, must be considered in determining whether
resolution of the state law claims requires construing the collective bargaining
agreement."); *see also Luecke v. Schnucks Mkts., Inc.*, 85 F.3d 356, 360 n.4 (8th
Cir. 1996); *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620, 623 (8th Cir. 1989).
The later decision in *Meyer*, 163 F.3d 1048, which concerned complete preemption
and removal jurisdiction, *id.* at 1050, declared that our precedents on § 301
preemption were "conflicting," but correctly explained that defenses to a state-law
claim did not create a basis for LMRA preemption in a case involving complete
preemption and removal jurisdiction.  *Id.* at 1051 (citing *Humphrey v. Sequentia,
Inc.*, 58 F.3d 1238, 1244 (8th Cir. 1995)).  A subsequent decision in *Bogan v.
General Motors Corp.*, 500 F.3d 828 (8th Cir. 2007), however, interpreted *Meyer*

to mean that an employer's defenses are irrelevant to *ordinary* preemption analysis, and elected to follow this dubious interpretation of *Meyer* rather than the earlier precedents of *Hanks* and *Johnson*. *Id.* at 833. *Williams* followed *Bogan*, deepening the intra-circuit conflict.

*     *     *

These inconsistent precedents, together with our cases allowing each future panel to follow the precedent that it prefers, leave the law of the circuit confused and uncertain on a significant issue of federal law. The procedural distinction between cases involving complete preemption and ordinary preemption, ably explained with reference to *Caterpillar* by the Seventh Circuit in *Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 769-71 (7th Cir. 1991), suggests that the *Williams* panel incorrectly declared the NFL's defenses to the state-law claims irrelevant to the question of ordinary preemption under § 301. For these reasons, I would grant the NFL's petition for rehearing en banc.

December 14, 2009

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

---

/s/ Michael E. Gans

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 08-3974

Kevin Williams and Pat Williams,

Appellees

v.

National Football League, et al.,

Appellants

---

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06255-PAM)

---

### ORDER

On December 14, 2009, the petition for rehearing en banc in No. 09-2247/2462, <u>Kevin Williams, et al. v. NFL, et al.,</u> and No. 09-2249, <u>NFL Players Association v. NFL,</u> was denied. The petition for rehearing by the panel was also denied. In appellants' November 3, 2009 letter addressing No. 08-3974, <u>Kevin Williams et al. v. NFL, et al.,</u> appellants represented that: "dismissal of the preliminary injunction appeal as moot would be inappropriate and premature at least until final disposition of the preemption argument raised in…the pending rehearing petition." The appellants are requested to show cause by December 30, 2009, why No. 08-3974, <u>Kevin Williams et al. v. NFL, et al.,</u> should not be dismissed as moot in light of the December 14, 2009 order.

December 18, 2009

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

---

/s/ Michael E. Gans

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 09-2247

Kevin Williams and Pat Williams,

Appellees

v.

National Football League and John Lombardo, M.D.,

Appellants

Brian Finkle,

Adolpho Birch,

Appellant

-------------------------------

National Basketball Association, et al.,

Amici on behalf of Appellant

No: 09-2249

National Football League Players Association,

Appellant

v.

National Football League and National Football League Management Council,

Appellees

No: 09-2462

Kevin Williams and Pat Williams,

Appellants

v.

National Football League and John Lombardo, M.D.,

Appellees

Brian Finkle,

Adolpho Birch,

Appellee

-------------------------------

Major League Baseball, et al.,

Amici on behalf of Appellant

---

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-06255-PAM)
(0:08-cv-06254-PAM)
(0:08-cv-06255-PAM)

---

## MANDATE

In accordance with the opinion and judgment of 09/11/2009, and pursuant to the

provisions of Federal Rule of Appellate Procedure 41(a), the formal mandate is hereby issued in

the above-styled matter.

December 22, 2009

Clerk, U.S. Court of Appeals, Eighth Circuit

DEC-04-2008  13:28          )leland                              )   6123387858    P.02/02

Dec-04-08  02:03pm  From-                                      T-534   P.002/002   F-405

STATE OF MINNESOTA                          **DISTRICT COURT**

COUNTY OF HENNEPIN                    **FOURTH JUDICIAL DISTRICT**

---

Kevin Williams and Pat Williams,                     Court File No. 27CV 08-29778

          Plaintiffs,

     v.

The National Football League, John          **PROPOSED ORDER**
Lombardo, M.D., Brian Finkle, and Adolpho
Birch,

         Defendants.

---

    This matter is before the Court on Plaintiffs' Motion for a Temporary Restraining Order.

Based on all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

    1. Plaintiffs' Motion is **GRANTED**; and

    2. Defendant the National Football League is **ENJOINED** from suspending the
       Plaintiffs on the grounds set forth in the December 2, 2008 appeals decision. *until further order of the court*

              Dated: December 3, 2008

           By: _____

                Judge of District Court

2265368v2

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

Judge Gary Larson

Court File No. 27-CV-08-29778

Kevin Williams, Pat Williams,

Plaintiffs,

v.

The National Football League, John
Lombardo, M.D., Brian Finkle, and Adolpho
Birch,

Defendants.

**ORDER GRANTING DEFENDANTS'
REQUEST FOR A STAY OF
PROCEEDINGS PENDING FURTHER
ORDER OF THIS COURT**

The above-entitled matter came before the Honorable Gary Larson, Judge of Hennepin

County District Court, on July 22, 2009. Ronn Kreps, Esq., Peter Ginsberg, Esq., and Christina

Burgos, Esq., appeared for and on behalf of Plaintiffs, Kevin and Pat Williams. Joseph Schmitt,

Esq., and Daniel Nash, Esq., appeared for and on behalf of Defendants, The National Football

League, John Lombardo, M.D., Brian Finkle, and Adolpho Birch. Based upon all files, records,

and proceedings herein, together with the arguments of counsel,

### IT IS HEREBY ORDERED:

1.     That Defendants' Motion to Stay Proceedings is **GRANTED** pending further order of

this Court.

2.     The attached memorandum is incorporated herein.

BY THE COURT:

Dated: August 5, 2009

_____

Gary Larson
Judge of District Court
C-1655 Government Center
300 South Sixth Street
Minneapolis, MN 55487
(612) 348-6102

## MEMORANDUM

### I.    Introduction

This matter first came before the Court on December 3, 2008, upon Pat and Kevin Williams' ("Plaintiffs") request for a temporary restraining order to prevent the National Football League ("NFL") from suspending them after they tested positive for a banned substance. Plaintiffs alleged common-law causes of action and sought injunctive relief. The following day, Defendants removed the action to the United States District Court for the District of Minnesota. Once there, Plaintiffs amended their complaint to add state statutory claims. Both parties moved for summary judgment. The Honorable Paul Magnuson, Judge of the United States District Court, dismissed Plaintiffs' common law claims on the ground of preemption, and remanded Plaintiffs' Drug & Alcohol Testing in the Workplace Act ("DATWA") and Lawful Consumable Products Act ("LCPA") claims back to this Court.

On May 26, 2009, Defendants filed a Notice of Appeal with the Unites States Court of Appeals for the Eighth Circuit. The NFL's appeal directly challenges this Court's jurisdiction over Plaintiffs' state statutory claims based on federal labor law preemption. The National Football League Players Association ("NFLPA") appealed the dismissal of its complaint on May 27, 2009. On June 9, 2009, the NFLPA requested expedited review of its appeal on behalf of Plaintiffs and an injunction pending appeal. On June 22, 2009, Plaintiff filed a Notice of Appeal, appealing Judge Magnuson's order denying their motion for summary judgment and granting Defendants' motion for summary judgment. The Eighth Circuit ruled that all the appeals be expedited, briefing be completed by August 2, 2009, and set a hearing date for August 18, 2009.

The NFL seeks a stay of proceedings during the pendency of these appeals.

## II.     LEGAL ANALYSIS

### A.     Standard of review.

The power to stay proceedings pending appeal is inherent in the courts. *State v. N. Pac. Ry. Co.*, 22 N.W.2d 569, 575 (Minn. 1946). The party seeking the stay has the burden of showing the necessity and justice of a stay, and the court's discretion must be exercised with moderation. *Landis v. N. Am. Co.*, 299 U.S. 248 (1936). Since a stay is a matter of discretion, courts may attach appropriate conditions. *Graves v. Backus*, 72 N.W. 811 (1897); *Dennis v. Nelson*, 56 N.W. 589 (1893); Minn. R. Civ. P. 62.01.

### B.     Stay of proceedings.

Courts will consider a number of factors in determining whether to defer to another court, such as comity, the need for a comprehensive solution, judicial economy, cost and convenience to the litigants, and the possibility of overlapping multiple determinations of the same dispute. *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 449 (Minn. Ct. App. 2001); *Green Tree Acceptance, Inc. v. Midwest Fed. Sav. & Loan Ass'n*, 433 N.W.2d 140 (Minn. Ct. App. 1988); *Minn. Mut. Life Ins. v. Anderson*, 410 N.W.2d 80, 82 (Minn. Ct. App. 1987). Each of those factors are analyzed below.

#### 1.     Comity.

Judicial comity is "[t]he respect a court of one state or jurisdiction shows to another state or jurisdiction in giving effect to the other's laws and judicial decisions." *Medtronic*, 630 N.W.2d at 449 (quoting Black's Law Dictionary 262 (7th ed. 1999)). When two actions in courts of concurrent jurisdiction are substantially similar, comity requires that "the first court to acquire jurisdiction has priority in considering the case." *Anderson*, 410 N.W.2d at 82.

Multiple appeals in this case are already before the Eighth Circuit Court of Appeals. Oral arguments will be held within a matter of weeks. Defendants have appealed the portion of Judge Magnuson's decision holding that the LCPA and DATWA claims were not preempted. If Defendants prevail in the Eighth Circuit, then this Court will have no jurisdiction over this case. The principles of comity weigh in favor of granting a stay in this case.

        2.     *Comprehensive determination.*

The desirability of avoiding piecemeal litigation is a factor in deciding whether to defer to a concurrent court proceeding. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 818 (1976). In this case, proceeding on Plaintiffs' two state law claims, when there are multiple appeals pending on the exact same issues, albeit under common law claims, would lead to piecemeal litigation and would severely complicate an already complex case. The desirability of a comprehensive determination weighs heavily in favor of staying this action.

        3.     *Judicial economy.*

Judicial economy is a consideration in deciding whether to grant a stay of proceedings. To proceed to trial would require considerable judicial resources. Plaintiffs stated in their Supplemental Memorandum in Further Opposition to Defendants' Motion to Stay Proceedings that, "despite the NFL's efforts to delay this litigation, this case is in its final stages and this Court has an opportunity to resolve this matter prior to the start of the 2009-2010 Season." Contrary to Plaintiffs' assertion, however, the Court believes that, if the past is any indication, this case is far from being in its final stages and Plaintiffs underestimate the complexity and length of the discovery process and the need for judicial supervision.

The parties in this case and the federal appeal are the same, the issues are the same, the facts are the same, and the federal court's resolution of the action could dispose of this Court's

jurisdiction altogether. Should the Eighth Circuit find that Plaintiffs' state law claims are preempted by federal labor law and relieve this Court of jurisdiction, it would be a waste of judicial resources, time, and money for both actions to continue in the Eighth Circuit and Minnesota courts, simultaneously. *See Green Tree Acceptance*, 433 N.W.2d at 142. To proceed in both the Eighth Circuit and this Court on such similar issues at the exact same time and then to reach conflicting results would be a colossal waste of limited resources, both at the state and federal levels.

        *4.    Cost and convenience to the litigants.*

Plaintiffs claim that the cost and convenience to the litigants weighs heavily in favor of not staying these proceedings. Plaintiffs claim that it would be unfair to have the threat of discipline hanging over their heads throughout the upcoming football season, and that they should proceed immediately to trial on their state law claims. However, this Court believes that the remaining discovery and preparation needed to proceed to trial on Plaintiffs' state law claims will not be quick, easy, or inexpensive.

Plaintiffs further claim that moving forward now with this case, is the only way to make certain that it is resolved before the beginning of the season on September 10, 2009, and that to force Plaintiffs to litigate during the NFL season would be highly inconvenient and prejudicial. However, as counsel is experienced enough to surmise, the Court's trial calendar cannot possibly accommodate a full trial within 30 days' time. Moreover, the Court routinely accommodates parties' work and family obligations. Should Plaintiffs' state law claims remain before this Court after a decision is made by the Eighth Circuit, it is not likely that the Court would, or could, force Plaintiffs into trial during the middle of the playing season, based on the Court's schedule. Therefore, it will save both parties money and convenience to stay proceedings

pending a decision by the Eighth Circuit, and then proceed on these claims, in the ordinary course of court business.

      5.     *Overlapping multiple determinations.*

"By itself, the possibility of multiple determinations is not enough to establish that the district court abused its discretion by not staying the proceedings." *Bjorklund v. Bjorklund Trucking, Inc.*, 753 N.W.2d 312, 318 (Minn. Ct. App. 2008) (citing *Medtronic*, 630 N.W.2d at 449-50). However, it is an important factor in determining whether to grant a stay. In this case, there is a serious risk of conflicting rulings. As discussed in previous sections, there is a very real possibility that, should this Court proceed with Plaintiffs' state law claims, it could reach a decision contrary to the Eighth Circuit. This risk will be avoided if the Court stays this case pending resolution of the appellate proceedings.

## III.   CONCLUSION

The adverse effect of inconsistent adjudications leaving issues unresolved and the need to achieve economy, clarity, practicality, and a reasonably expeditious resolution of all issues weigh in favor of granting a stay of proceedings pending further order of this Court.

STATE OF MINNESOTA               FILED              DISTRICT COURT

COUNTY OF HENNEPIN          2009 OCT 12  AM 8:F9URTH JUDICIAL DISTRICT

                        BY_____DEPUTY
                            HENN CO. DISTRICT         Judge Gary Larson
Kevin Williams, Pat Williams,   COURT ADMINISTRATOR

                Plaintiffs,                    Court File No. 27-CV-08-29778

v.

The National Football League, John              **SCHEDULING ORDER**
Lombardo, M.D., Brian Finkle, and Adolpho
Birch,

                Defendants.

---

**IT IS HEREBY ORDERED:**

1.   A motion hearing for a protective order is set for **October 26, 2009, at 7:30 a.m. in
     Courtroom 1655, Hennepin County Courthouse.** The parties shall submit simultaneous
     briefs by October 19, 2009. Reply briefs are Due October 22, 2009.

2.   Discovery shall be completed in full on or before **December 15, 2009.** If discovery
     disputes arise, counsel must contact Judge Larson's staff at 612-348-6102 to schedule a
     conference call with the Court. No filings on discovery matters will be considered by the
     Court until the Court has first considered the matter via conference call.

3.   All pleadings, memoranda, and other papers filed with this Court shall include "Judge
     Larson" in the uppermost right corner of the document. *ALL SUBMISSIONS SHALL BE
     TWO-HOLD PUNCHED AT THE TOP OF THE DOCUMENT.*

4.   All motions, whether dispositive or non-dispositive, shall be noticed and heard on or before
     January 15, 2010. COURTESY COPIES OF ALL MOTIONS AND MEMORANDA
     SHALL BE SENT DIRECTLY TO JUDGE LARSON'S CHAMBERS (NOT
     FAXED), and shall include "Judge Larson" in the upper-right corner.

5.   Cross-motions for Summary Judgment shall be heard on **January 14, 2010, at 7:00 a.m.
     in Courtroom 1655, Hennepin County Courthouse.** Initial briefs are due December 7,
     2009, Responsive briefs are due December 31, 2009. Reply briefs are due January 6, 2010.

6.   A **PRETRIAL SETTLEMENT CONFERENCE** is scheduled for **March 1, 2010, at
     8:00 a.m., in Courtroom 1655, Hennepin County Courthouse.** This is a mandatory
     conference and shall be attended by the attorneys who will try the case, the parties
     involved, claims adjustors, and any other persons who have authority to settle the case.

7.   Counsel shall immediately notify Judge Larson's staff by telephone and in writing of any
     final disposition of this matter prior to the pretrial/settlement conference.

8.    The above-entitled matter is scheduled for **TRIAL** before the Honorable Gary Larson, on **March 8, 2010, at 9:00 a.m., in Courtroom C-1655, Hennepin County Government Center.**

## COUNSEL AND/OR THE PARTIES SHALL ACCOMPLISH THE FOLLOWING PRIOR TO TRIAL:

1.    Exchange lists of names and addresses for all prospective witnesses. Counsel for each party shall submit to the Court a complete list of all witnesses on the first day of trial.

2.    Exchange copies of all exhibits to be offered into evidence at trial. There will be no opportunity for counsel to examine exhibits when they are offered into evidence at trial.

3.    Determine jointly the marking of all exhibits, eliminate duplicates, and pre-mark all exhibits. Plaintiff shall start with exhibit number 1 and Defendant shall start with exhibit number 101. Counsel for each party shall submit to the Court a complete index of exhibits on the first day of trial.

4.    As to any exhibit that the parties cannot agree shall be received in evidence, counsel shall be prepared to specify the grounds for objection with the supporting authorities.

5.    Serve and file motions in limine, and deliver a copy to chambers one week before trial, to ensure review of submissions prior to the first day of trial. Any other type of motion the parties wish to bring between the date of this Order and trial will not be heard until the Court has had an opportunity to speak with counsel via telephone conference call.

6.    Stipulate as to all uncontested facts and matters not in controversy.

7.    Trial memoranda are optional. Serve and file any trial memoranda, and deliver a copy to Judge Larson's chambers, at least one week before trial to ensure review of submissions prior to the first day of trial.

8.    Be prepared to offer evidence in a timely manner. The Court will not grant continuances to produce witnesses or evidence except in the most extraordinary circumstances. If witnesses may be unavailable to testify, depositions shall be taken for use at trial.

9.    All pleadings filed with this Court shall include the "Judge Larson" in the uppermost right corner of the document. Additionally, all such submissions must be two-hole punched at the top of the document.

10.   Absent written objection filed with this Court within 30 days of the date of this Order, counsel on behalf of their respective clients, or the parties if not represented by counsel, agree that entry of judgment on a general verdict or an order for judgment based on a special verdict may be stayed for 30 days from and after the date of the verdict.

11. Counsel and/or the parties shall report to court on the day of trial ready to try this case. Commencement of trial will not be unduly delayed to negotiate a settlement. The Court will make every effort to facilitate settlement prior to the first day of trial. Any party may request a settlement conference and counsel may schedule a settlement conference by calling Judge Larson's staff.

12. Failure to comply with the provisions of this Order may result in the imposition of sanctions including but not limited to striking of pleadings, refusal to allow support or opposition to certain designated claims or defenses, dismissal of the action, or default judgment. Questions regarding the provisions of this Order or other trial procedures should be directed to Judge Larson's staff prior to the first day of trial.

BY THE COURT

Dated: October 12, 2009

Gary Larson
Judge of Fourth Judicial District Court
C-1655 Hennepin County Government Center
300 South Sixth Street
Minneapolis, MN 55487
612-348-6102
gary.larson@courts.state.mn.us

STATE OF MINNESOTA        FILED        DISTRICT COURT

COUNTY OF HENNEPIN     2009 OCT 30  PM 1: 28    FOURTH JUDICIAL DISTRICT

                         BY _____DEPUTY

                         HENN CO DISTRICT         Judge Gary Larson

Kevin Williams, Pat Williams,    COURT ADMINISTRATOR

              Plaintiffs,                Court File No. 27-CV-08-29778

v.

                          **ORDER GRANTING DEFENDANTS'**

The National Football League, John        **MOTION FOR A PROTECTIVE ORDER**

Lombardo, M.D., Brian Finkle, and Adolpho

Birch,

              Defendants.

---

      The above-entitled matter came before the Honorable Gary Larson, Judge of Hennepin

County District Court, on October 26, 2009, on Defendants' Motion for a Protective Order.

Peter Ginsberg, Esq., and Ronn Kreps, Esq., appeared for and on behalf of Plaintiffs.   Joseph

Schmitt, Esq., Daniel Nash, Esq., and Marla Axelrod, Esq., appeared for and on behalf of

Defendants.  Based upon all files, records, and proceedings herein, together with the arguments

of counsel,

<u>IT IS HEREBY ORDERED</u>:

1.     That Defendants' Motion for a Protective Order prohibiting Plaintiffs from re-opening

      discovery to obtain additional written discovery and deposition testimony is **GRANTED**.

2.     The attached memorandum is incorporated herein.

                                     BY THE COURT:

Dated: October 29, 2009

                                    Gary Larson

                                    Judge of District Court

                                    C-1655 Government Center

                                    Minneapolis, MN 55487

                                    (612) 348-6102

## MEMORANDUM

That the Court finds that the parties have already participated in extensive discovery that was closely supervised by Magistrate Judge Jeanne Graham and Judge Paul Magnuson. This discovery period was highly contentious and the parties required constant, close supervision. Plaintiffs have already had the opportunity to obtain substantial discovery on the two counts remaining in this case. Plaintiffs' previously represented to Judge Magnuson that discovery was complete and they were ready to go to trial. Plaintiffs were two weeks away from trial in federal court, which would have included their state law claims. Plaintiffs told this Court in August that they were ready for trial immediately. Based on the parties' history, the Court is not convinced that re-opening discovery would result in any meaningful newly discovered evidence. The Court is convinced, however, that re-opening discovery would result in contentious disputes, creating a substantial burden on the Court, and be contrary to the interests of justice and a speedy resolution to this case.

**STATE OF MINNESOTA**             FILED                    **DISTRICT COURT**

**COUNTY OF HENNEPIN**   2010 JAN 21  AM 10: 29 **FOURTH JUDICIAL DISTRICT**

BY_____DEPUTY
HENN CO. DISTRICT
COURT ADMINISTRATOR                 Judge:  Gary Larson

KEVIN WILLIAMS and PAT WILLIAMS, )    COURT FILE NO. 27-CV-08-29778
                                 )
         Plaintiffs,             )
                                 )
         -versus-                )
                                 )            **PROPOSED ORDER**
THE NATIONAL FOOTBALL LEAGUE,    )
JOHN LOMBARDO, M.D., BRYAN       )
FINKLE, and ADOLPHO BIRCH,       )
                                 )
         Defendants.             )
_____)

Upon motion, Plaintiffs Kevin Williams and Pat Williams ("Plaintiffs") requested that the

Court file under seal documents which contain confidential and non-public information

submitted contemporaneously with the Plaintiffs motion for summary judgment.  On March 20,

2009, United States Magistrate Judge Jeanne J. Graham entered a protective order in the federal

case.  That Protective Order provides, *inter alia*, that information marked "confidential" by any

producing party or third party would not be made publicly available, and if used in court filings

would be filed under seal.

Many of the documents to be filed by the parties to this action fall under the Federal

Protective Order and contain confidential and sensitive personal information which should not be

subject to public access.

Accordingly,   Plaintiffs' motion to file documents under seal pursuant to Minn. R. Pub. Access 4(1)(g)(2) is GRANTED.

This Protective Order shall apply to any future filings to this Court.

Dated: _____, 2010

BY THE COURT:

_____
DISTRICT COURT JUDGE
JUDGE GARY LARSON

2

## STATE OF MINNESOTA

## IN COURT OF APPEALS

---

Kevin Williams, et al.,

      Respondents,

vs.

National Football League, et al.,

      Appellants.

**O R D E R**

**A09-1645**

---

## BASED ON THE FILE, RECORD, AND PROCEEDINGS, AND BECAUSE:

1.    Appellants filed their brief on November 2, 2009. Appellants move for acceptance of a separate confidential appendix.

2.    Although case records are presumed to be accessible to the public, records made inaccessible by a protective order or other court order are not accessible. Minn. R. Pub. Access to Recs. of Jud. Branch 4, subd. 1(g)(2). Appellants' counsel indicates that a protective order was issued by the district court and that the materials contained in the confidential appendix are covered by that order.

### IT IS HEREBY ORDERED:

1.    Appellants' motion for acceptance of a confidential appendix is granted.

2.    The clerk of the appellate courts shall not permit public access to the confidential appendix.

3.      If respondents file a confidential appendix, it shall be limited to documents specifically covered by the protective order issued in the district court.

Dated:  November 10, 2009

**BY THE COURT**


/s/ _____
Chief Judge

2

RECEIVED

NOV 2 4 2009

Per ⟍⟍⟍

OFFICE OF
APPELLATE COURTS

NOV 2 0 2009

FILED

**STATE OF MINNESOTA**

**IN COURT OF APPEALS**

---

Kevin Williams, et al.,

      Respondents,

vs.

National Football League, et al.,

      Appellants.

**O R D E R**

**A09-1645**

---

### BASED ON THE FILE, RECORD, AND PROCEEDINGS, AND BECAUSE:

1.     This appeal was filed by mail on September 8, 2009.

2.     On October 30, appellants' brief was field by mail.

3.     Respondents' brief is due on Monday, November 30, which is 30 days after appellants' brief was served personally on October 30. *See* Minn. R. Civ. App. P. 131.01, subd. 2.

4.     Respondents move for an extension until December 7 to file the brief. Respondents indicate that additional time is needed to file the brief because respondents' lead counsel began an arbitration on November 16 that is expected to last more than one week and as an accommodation for the Thanksgiving holiday. The motion indicates that appellants do not oppose the requested extension.

### IT IS HEREBY ORDERED:

1.     Respondents' motion for an extension to file the brief is granted.

2.      Respondents' brief shall be served and filed by December 7, 2009.

Dated:  November 20, 2009

**BY THE COURT**

_Edward Toussaint_
Chief Judge

## STATE OF MINNESOTA

## IN COURT OF APPEALS

Kevin Williams, et al.,

          Respondents,

vs.

National Football League, et al.,

          Appellants.

**O R D E R**

#A09-1645

## BASED ON THE FILE, RECORD, AND PROCEEDINGS, AND BECAUSE:

1.    Respondents filed their brief on December 7, 2009, together with a separate confidential appendix.

2.    Respondents move for acceptance of the confidential appendix. Respondents' motion also included a mistaken reference to filing the brief under seal, but counsel has confirmed that respondents do not seek to restrict public access to the brief.

3.    Court records made inaccessible by a protective order remain inaccessible on appeal. *See* Minn. R. Pub. Access to Recs. of Jud. Branch 4, subd. 1(g)(2).

4.    Substantial portions of the confidential appendix comprise transcript excerpts. These excerpts are not properly included in an appendix, as defined by Minn. R. Civ. App. P. 130.01, subd. 1. But transcript excerpts and relevant portions of the record not contained in the appendix may be included in a supplemental record. Minn. R. Civ. App. P. 130.03. The cost of producing a supplemental record is not taxable. *Id.*

**IT IS HEREBY ORDERED:**

1.    Respondents' motion to accept a confidential appendix is granted.

2.    The Clerk of the Appellate Courts shall not permit public access to respondents' confidential appendix.

3.    The cost of preparing respondents' confidential appendix shall not be taxable.

**Dated:** December 14, 2009

**BY THE COURT**

                                                             /s/

                                                           Chief Judge